Mark D. Northrup, WSBA #16947
MILLER NASH GRAHAM & DUNN LLP
2801 Alaskan Way, Suite 300
Seattle, Washington 98121-1128
Telephone: (206) 624-8300
Facsimile: (206) 340-9599
Email: mark.northrup@millernash.com

William W. Kannel (*Pro Hac* Application to be Filed)
Ian A. Hammel (*Pro Hac* Application to be Filed)
Timothy J. McKeon (*Pro Hac* Application to be Filed)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Email:    bkannel@mintz.com
          iahammel@mintz.com
          tjmckeon@mintz.com

Honorable Frank L. Kurtz
Chapter 11
Hearing Date: May 8, 2019
Hearing Time: 10:00 a.m.

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>ASTRIA HEALTH, *et al.*,<br><br>Debtor. | Case No. 19-01189-FLK11<br><br>PRELIMINARY OBJECTIONS TO DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING POST-PETITION FINANCING, USE OF CASH COLLATERAL AND RELATED RELIEF |

UMB Bank, N.A., as indenture trustee under the Bond Indenture and related documents described herein (the "Bond Trustee"), and Lapis Advisers, LP, as agent under the Credit Agreement and related documents described herein ("Term Loan Agent" and together with the Bond Trustee, the "Lenders") hereby submit preliminary objections to certain relief requested and otherwise contemplated by the

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

"*Emergency Motion of Debtors for Interim and Final Orders (i) Authorizing the Debtors to Obtain Postpetition Financing; (ii) Granting Security Interests and Superpriority Administrative Expense Status; (iii) Granting Adequate Protection to Certain Prepetition Secured Credit Parties; (iv) Modifying the Automatic Stay; (v) Authorizing the Debtors to Enter into Agreements with JMB Capital Partners Lending, LLC; (vi) Authorizing use of Cash Collateral; (vii) Scheduling a Final Hearing; and (viii) Granting Related Relief*" [Docket No. 15] (the "<u>Financing Motion</u>").

The Debtors' proposed Financing Motion and the loan terms set forth therein (the "<u>Proposed Loan</u>") cannot be approved on either an interim or final basis without significant changes. To be clear, the Lenders support the Debtors' efforts to remain a going concern, pending a disposition of their assets, and support the Debtors' efforts to ensure liquidity for post-filing operating costs. The Lenders also acknowledge those efforts may require a borrowing in these cases as part of an orderly transition into the chapter 11 process, though on terms other than the Proposed Loan. Further, the Lenders are willing to consent to interim relief on the Financing Motion, with the limitations reflected below, and on terms that reserve, and defer for later resolution, certain disputed features of the Proposed Loan. It should be equally clear under all circumstances that the Financing Motion, a

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPENTITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

cornerstone pleading in the Debtors' risky standalone restructuring plans, is not credible and not supportable on its present terms given, among other problems, the Debtors' longstanding financial distress, the Debtors' current and anticipated cash flow projections, the resources available to the Debtors' rented management team, and the Debtors' history of system integration issues.

## **PRELIMINARY STATEMENT**

The Lenders comprise more than two-thirds of the Debtors' nearly $75 million of secured funded debt in these proceedings (the "Chapter 11 Cases"). The Lenders do not consent to the Financing Motion, the Proposed Loan or the relief contemplated thereby.

As described more fully below, the Debtors have through their "first day" pleadings presented the Chapter 11 Cases as a routine business restructuring. The Debtors' storyline depicts an upstart hospital system victimized by the botched roll out of a critical hospital billing and collection system in the second year of its integration process. Under the Debtors' storyline, a quick detour into chapter 11 is all they need; they assert that the Debtors will quickly oust the vendor that supplied the defective billing and collection system, "right the ship" by installing a replacement, and continue forward as a standalone business. *See Financing Motion at p. 35-36.* There is no dispute that the current billing and collection system does

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 3

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1   not work and has caused material financial harm.  But it is hard to overstate the
2   extraordinary and unacceptable risks the Debtors' strategy would impose on the
3   Lenders and other stakeholders in these cases.
4

5          There should be significant concern by the Court and all stakeholders whether
6   the Debtors possess the needed resources to implement the Debtors' standalone
7   turnaround strategy.  The Debtors and their rented managers (who stand to lose a
8
9   lucrative management deal and opportunities to sell other services to the Debtors if
10  the Chapter 11 Cases are not resolved through a standalone plan) would pin all of
11
12  the enterprise risks of these cases on the Lenders and other creditors.  The Debtors
13  have already spent ten months and significant resources implementing their current
14
15  billing and collection system.  This experience alone raises significant doubt over
16  the Debtors' promises of a timely, successful correction.  More concerning, the
17  Debtors' financial and other issues are longstanding; the Debtors have been in a non-
18
19  stop turnaround mode for two years and the Chapter 11 Cases are only the latest in
20  a series of challenges, many of them ongoing, that have hampered the Debtors'
21  business during their entire tenure as a hospital system.
22
23         The Debtors' Yakima and Toppenish facilities were already losing millions
24  on an annual basis when the Debtors' system was created by Sunnyside Community
25  Hospital's 2017 acquisition of Yakima-based Yakima Regional Medical and Cardiac
26

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

Center and Toppenish-based Toppenish Community Hospital.  The Debtors' entire

history as a health care system since that acquisition has been plagued by integration

challenges, persistent financial losses at the Yakima and Toppenish facilities, failed

revenue enhancement and business initiatives, turnover at senior management,

material deviations between management financial projections and actual financial

results, and accounting snafus.  The Debtors' track record belies the Debtors'

storyline as to their prospects for recovery and the timing that will be needed if

recovery is possible.  There are other undercurrents that bear on the path forward

that should be used in these cases.  The Tennessee-based supplier of the Debtors'

rental management team will lose a lucrative management deal if the Debtors pursue

a sale strategy in the Chapter 11 Cases.  That management team has selected the

Tennessee-vendor's own billing and collection product as the proposed replacement

vendor for the Debtors' billing and collection system.  As announced in the

Financing Motion, management intends to hire still others from the Tennessee

organization to collect outstanding old accounts receivable. *Financing Motion at p.*

*36.*

Given all of the forgoing the Debtors must pursue an "all options" strategy

that explores the sale of their assets, a business combination with a partner with

deeper resources, and the refinancing of the Lenders' debt, in addition to the

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 5

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

19-01189-FLK11     Doc 48     Filed 05/07/19     Entered 05/07/19 16:15:52     Pg 5 of 42

Debtors' standalone preference. It is of course plausible the Debtors' health system can be viable with proper management, proper resources, proper integration, a proper roll out of revenue enhancement initiatives, and patience. But the Debtors' current plans to pursue only one of the available strategies is prejudicial to the Lenders and other stakeholders in view of the scale and scope of the process entailed, the significant evidence that the Debtors' path forward will be punctuated by many challenges and may not be successful, and the appearance of if not actual conflicts of interest.

While it is evident the Financing Motion is flawed based on its central role in implementing the Debtors' perilous endgame strategy for these cases, the Financing Motion is also deficient for numerous other reasons. In addition to mandating an "all options" strategy now, any relief on the Financing Motion must be further conditioned to mitigate the following problems:

- The Debtors want to supersize the Proposed Loan so they can immediately cash out $22 million of other secured funded debt using expensive, debtor in possession financing;

- The Debtors have not established the Lenders' interests can be adequately protected if the Financing Motion is allowed;

- The adequate protection the Debtors have offered omits numerous typical, customary forms of adequate protection relief. Even if the Lenders' interests can be adequately protected under the Financing Motion, those offered terms do not satisfy the Debtors' adequate protection obligations; and

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 6

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1

2    •    The Debtors have not established that they conducted any meaningful
3         search for debtor-in-possession financing and not established that the
         proposed relief sought in the Financing Motion is in the best interests
4         of the Debtors, their estates, the Lenders, or other stakeholders.

5    In short, the Financing Motion goes far beyond what is necessary, what is
6
7    appropriate, or what is permitted by the federal Bankruptcy Code and other
8    applicable law in support of the Debtors' intended plans.

9         For now, the Lenders are willing to consent to tailored interim relief on the
10
11   Financing Motion that maintains the *status quo*, and that permits the parties time to
12   evaluate the issues that surround the Financing Motion in advance of any further
13   interim hearing or any final hearing.  For purposes of an initial hearing on the
14
15   Financing Motion, the Lenders are specifically willing to consent to relief with the
16   following attributes:

17   •    Limited borrowing under an agreed short term budget to support
18        postpetition ordinary course operating costs pending a further interim
         or final hearing;
19

20   •    An agreement (or requirement) to defer any borrowing under the
21        Proposed Loan that would repay any prepetition secured funded debt at
         this time;
22

23   •    Adequate protection terms that are customary in hospital chapter 11
         cases and are necessary given the Debtors' planned priming of the
24        Lenders and planned use of their collateral, as detailed below;

25

26

PRELIMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

- • A good faith commitment by the Lenders and Debtors to discuss the go-forward process in these cases before the next hearing on the Financing Motion; and

- • A full reservation of all rights of the Lenders and Debtors as to the Financing Motion and the Proposed Loan on any unresolved positions pending a further interim hearing or final hearing on the Financing Motion.

Any other relief on the Financing Motion should be denied at this stage.

## **BACKGROUND**

### ***The Posture of These Cases***

The Chapter 11 Cases follow a severe disruption of the Debtors' "revenue cycle" – the lifeblood process the Debtors (and hospitals generally) use to bill for services and collect revenue from insurance companies, government agencies like Medicare, patients and others. *See Financing Motion at p. 35-36.* The Debtors blame this disruption on the botched 2018 roll out of a new billing and collection system. *Id.* The Debtors assert that the corrective path forward in these cases is clear-cut:

***First,*** the Debtors will dump the vendor that supplied this malfunctioning revenue system in favor of a replacement product. The Debtors' preferred replacement product is offered by the Tennessee company that also manages the Debtors' hospitals;

***Second,*** the Debtors will quickly implement that replacement product, and

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 8

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 8 of 42

will in short order build needed cash-flow; and

      ***Third,*** the Debtors will restructure as a standalone health care enterprise.

*Id. at 35 - 36.* The Debtors assert this fix can be implemented on a schedule that will permit them to propose a standalone restructuring in 120 days or less, and the Debtors promise to pursue an "alternative transaction" only if they are unable to achieve these goals. *Id*

      The Debtors' case storyline is a carbon copy of the same business plan and strategy the Debtors peddled to the Lenders when the Working Capital Loan was advanced in January 2019. The Debtors broke their early 2019 promises to quickly correct their billing and collection process (and their acknowledgement that "alternative transactions" would be required if they continued to struggle). The Debtors' recycled promises to implement the same plan now in the Chapter 11 Cases are not credible.

      The Debtors' conduct in the period running up to these cases demonstrates, if anything, that healthcare revenue cycle management is complex, that new revenue cycle programs are time consuming to implement and fraught with risk, and that these critical operational matters can difficult to manage, and easily broken.

      The Lenders have worked cooperatively with the Debtors and their management team through the prepetition turnaround efforts, as evidenced by the

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 9

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1  Working Capital Loan, which is all of 4 months old.

2  ***The Debtors' Secured Funded Debt***

4      The Bonds and the Working Capital Loan are two of the Debtors' four primary

5  secured funded debt obligations and represent more than two-thirds of the Debtors'

6  secured funded debt.  As of the petition date in these cases, the Debtors' primary

8  secured funded debt obligations are as follows:

| *Obligation:* | *Approximate Claim Amount:* |
|---|---|
| Bonds: | $36,732,417 |
| Working Capital Loan: | $10,477,534 |
| Banner Loans: | $10,600,000[*] |
| MidCap Loans: | $10,700,000[*] |
| Total: | $68,509,951[*] |

22  The Financing Motion also references an equipment financing transaction with GE

23  HFS, LLC in the amount of approximately $5 million.  This boosts total secured

26  [*]    These numbers are based on information reflected in the Financing Motion.

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 10

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

funded debt to nearly $75 million.  *See Financing Motion at* p. 9.

The Bonds were issued pursuant to that certain Bond Indenture dated as of November 1, 2017 (the "Bond Indenture") between the Washington Health Care Facilities Authority (the "Authority") and UMB Bank, N.A., as trustee (the "Trustee").  Under the Bond Indenture, a related Loan and Security Agreement dated as of November 1, 2017 between the Authority and Debtors Astria Health, SHC HoldCo, LLC, SHC Medical Center – Yakima and SHC Medical Center – Toppenish, and other documents that evidence and secure the Bonds (each a "Bond Document"), proceeds from the Bonds were loaned to Debtors Astria Health, SHC HoldCo, LLC, SHC Medical Center – Yakima and SHC Medical Center – Toppenish and those borrowers covenanted to repay those loans to the Trustee for application under the Bond Documents.  The remaining Debtors have guaranteed payment of the Bonds.

The Debtors' obligations under the Bonds and Bond Documents are secured by all of the Debtors' assets, including the real property and improvements that comprise the Debtors' hospital and other facilities, accounts, chattel paper, documents, general intangibles, goods, inventory, equipment, instruments, monies, books, records, and proceeds (collectively, the "Bond Collateral").  The Debtors' obligations on the Bonds secured by the Bond Collateral include, as of the Petition

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 11

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   Date: (i) unpaid principal on the Bonds in the amount of $35,400,000; (ii) accrued

2   but unpaid interest on the Bonds in the amount of $1,332,417; and (iii) accrued and

3   unpaid fees and expenses of the Bond Trustee, including professional fees (the

4   "Bond Claims").

5

6       The Working Capital Loan was issued pursuant to that certain Credit

7   Agreement dated as of January 18, 2019 (the "Credit Agreement"), between certain

8   of the Debtors, Lapis Advisers, LP (the "Agent") and others.  Under the Credit

9   Agreement and other documents that evidence and secure the Working Capital Loan

10  (each a "Working Capital Loan Document"), proceeds from the Working Capital

11  Loan were loaned to Debtors Astria Health, Sunnyside Community Hospital

12  Association, Sunnyside Professional Services, LLC, Sunnyside Community

13  Hospital Home Medical Supply, LLC, Sunnyside Home Health, Kitchen and Bath

14  Furnishings, LLC, Oxbow Summit, LLC, and non-debtors Sunnyside Hospital

15  Service Corp., Sunnyside Medical Center, LLC, Depot Plus, LLC, Bridal Dreams,

16  LLC, Pacific Northwest ASC Management, LLC, Northwest Health, LLC, Kitchen

17  Appliances, LLC, Home Supply, LLC and Wedded Bliss, LLC and those borrowers

18  covenanted to repay those loans to the Agent for application under the Working

19  Capital Loan Documents.  The remaining Debtors have guaranteed payment and

20  performance of the Working Capital Loan.

PRELIMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 12

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

The Working Capital Loan Documents are secured by all of the Debtors' assets, including the real property and improvements that comprise the Debtors' hospital and other facilities, accounts, chattel paper, documents, general intangibles, goods, inventory, equipment, instruments, monies, books, records, and proceeds (collectively, the "Working Capital Loan Collateral"). The Debtors' obligations on the Working Capital Loan secured by the Working Capital Loan Collateral include, as of the Petition Date: (i) unpaid principal on the Working Capital Loan in the amount of $10,000,000; (ii) accrued but unpaid interest on the Working Capital Loan in the amount of $477,534; and (iii) accrued and unpaid fees and expenses of Agent, including professional fees (the "Working Capital Loan Claims").

***The Financing Motion and Proposed Loan***

The Financing Motion, one of the Debtors' "first day pleadings", seeks authority to borrow $36 million under a "*Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement*" (the "DIP Credit Agreement") from JMB Capital Partners Lending, LLC (the "DIP Lender"). The effective cost of the proposed loans exceeds 20 percent interest, including 12 percent interest on the loan balance, a 1.5 percent commitment fee, a 1.5 percent funding fee, and a 5 percent exit fee. The Proposed Loan includes an additional 10 percent penalty if the loan is not paid in full on or before December 31, 2019. In support of the Financing Motion,

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 13

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

the Debtors filed the "*Declaration of Michael Lane in Support of Emergency Motion of Debtors for Interim and Final Orders (i) Authorizing the Debtors to Obtain Postpetition Financing; (ii) Granting Security Interests and Superpriority Administrative Expense Status; (iii) Granting Adequate Protection to Certain Prepetition Secured Credit Parties; (iv) Modifying the Automatic Stay; (v) Authorizing the Debtors to Enter into Agreements with JMB Capital Partners Lending, LLC; (vi) Authorizing use of Cash Collateral; (vii) Scheduling a Final Hearing; and (viii) Granting Related Relief*" [Docket No. 16] (the "<u>Lane Declaration</u>").

The Debtors seek authority to borrow $28 million at the interim, first day hearing on the Financing Motion. The Financing Motion contemplates expansive liens on substantially all of the Debtors' assets, including liens that would prime the Lenders' liens and security interests in certain Bond Collateral and Working Capital Loan Collateral and cause a more than $14 million in diminution in the value of the Bond Collateral and Working Capital Loan Collateral. [†] Nearly two-thirds of the proposed $36 million of borrowing would be used to roll up and cash out Banner and Midcap. The Lenders do not consent to the Financing Motion, do not consent

---

[†] This amount only reflects the increased principal amount. When the higher interest and fees are included, the amount of diminution will be more.

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPENTITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 14

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

to the use or priming of their collateral on the terms proposed, and do not otherwise consent to the current terms thereof.

## ARGUMENT

The compressed nature of the first day hearing process and the overall complexity of the Proposed Loan make a comprehensive list of Financing Motion problems impractical.[‡] With a full reservation of all rights concerning the Financing Motion and related materials, including all rights to supplement the Lenders' preliminary objections herein in advance of or at any interim or final hearings on the Financing Motion, the Financing Motion and related materials are flawed in at least the following ways:

- The Debtors want to supersize the Proposed Loan so they can cash out $22 million of other lenders' secured funded debt using expensive, debtor in possession financing terms;

- The Debtors have not established the Lenders' interests can be adequately protected if the Financing Motion is allowed on its current terms;

- The adequate protection the Debtors have offered omits numerous typical, customary forms of adequate protection relief. Even if the Lenders' interests can be adequately protected under the Financing Motion, the offered terms do not satisfy the Debtors' adequate protection obligations; and

---

[‡]    Absent resolution the Lenders intend to supplement these objections in advance of any further interim hearings or any final hearing on the Financing Motion.

PRELIMINARY OBJECTIONS TO DEBTORS' INTERIM AND FINAL ORDERS AUTHORIZING POSTPETITION FINANCING, USE OF CASH COLLATERAL AND RELATED RELIEF - 15

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

- The Debtors have not established that they conducted any meaningful search for debtor-in-possession financing and not established that the proposed relief sought in the Financing Motion is in the best interests of the Debtors, their estates, the Lenders, or other stakeholders.

A.    **The Court Should Limit Borrowing To Operating Cost Shortfalls And Reasonable Costs Of The Chapter 11 Cases**

Any relief on the Financing Motion should limit borrowing to postpetition operating costs and reasonable costs of the Chapter 11 Cases that cannot be satisfied using cash, investments or earnings otherwise available to the Debtors on or after the Petition Date.  The Court should reject the Debtors' effort to borrow expensive funds for a "no-look" immediate $22 million cash out to Banner Bank and MidCap.

***The Court Should Deny the Request to Repay Banner or MidCap at the "First Day" Hearing***

The Financing Motion reflects that roughly $22 million of the Debtors' requested $28 million initial first-day borrowing would be used to cash out prepetition loans made by Banner and MidCap. *See Financing Motion at p. 37.*  The Debtors have not satisfied and cannot satisfy Bankruptcy Rules 4001(b)(2) and 4001(c)(2) in connection with this request and this relief must be denied.

Bankruptcy Rules 4001(b)(2) and 4001(c)(2) provide that a court shall not issue an order to in connection with a cash collateral of financing motion in the first 14 days of a chapter 11 proceeding. *Id.*  These rules provide one narrow exception.

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 16

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 16 of 42

*Id.* That exception requires a stiff finding that relief is "necessary to avoid immediate and irreparable harm" pending a final hearing. *Id.*

The Debtors have not provided and cannot provide any showing that this no-look cash out is necessary to avoid "immediate and irreparable harm" and is accordingly permitted in the Chapter 11 Cases. The Debtors have instead argued that this Court should ignore these rules and recognize other "helpful to the Debtors" grounds that this relief is appropriate. The Debtors assert in the Financing Motion that this relief would:

   (a)   simplify the Debtors' prepetition borrowing structure;

   (b)   reduce restrictions on the Debtors' borrowing capabilities; and

   (c)   eliminate the need to determine and provide adequate protection to Banner and MidCap.

*Financing Motion at p. 37 - 38.*

None of these is a recognized basis for this relief at any first day hearing. This is particularly so where the Debtors have not established why the automatic stay and other the powers of this Court and the bankruptcy process would not supply other tools to address these issues in a less drastic fashion. While the Lenders dispute the Debtors' adequate protection theories in the Financing Motion as they relate to the Lenders, it is curious how the Debtors can in the same pleading suggest that the Lenders can be readily primed and protected while Banner and MidCap should have

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 17

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1  an entirely different outcome.  The Court should reject the Debtors' efforts to ignore

2  the longstanding limitations imposed by the bankruptcy rules.

3

4  ***The Debtors have not Shown that Paying Banner or MidCap is Otherwise Proper***

5      The Debtors have not shown that paying Banner or MidCap is otherwise

6  proper as part of interim or final relief on the Financing Motion.  The Financing

7  Motion establishes that doing so is financially irresponsible.

8

9      Courts routinely observe that they should only approve debtor in possession

10  financing that is in the best interest of the general creditor body.  *See*, *e.g.*, *In re*

11  *Roblin Industries, Inc.,* 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985) (debtor must

12  demonstrate, among other things, that "[t]he proposed financing is in the best

13  interests of the general creditor body[.]") (quoting *In re Vanguard Diversified, Inc.*,

14  31 B.R. 364, 366 (Bankr. E.D.N.Y. 1983)).  Proposed financing must be fair,

15  reasonable and adequate.  *In re Crouse Group, Inc.,* 71 B.R. 544, 546 (Bankr. E.D.

16  Pa. 1987).  When proposed debtor in possession financing involves the roll-up of

17  prepetition funded debt, further limitations apply.  DIP loan roll ups require special

18  scrutiny. *See* Bankruptcy Rule 4001(c)(1)(B)(ii) (requiring a debtor to highlight roll-

19  ups, if any, in a motion seeking approval of postpetition financing).  They should be

20  rejected when the amount of debt "rolled up" is disproportionate to the "new money"

21  that is provided. 3 COLLIER ON BANKRUPTCY ¶ 364.06 (16th 2019).

22

23

24

25

26

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 18

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 18 of 42

The Debtors' cannot establish that the Proposed Loan is in the best interests of creditors or is otherwise fair or reasonable given their plans to use expensive, debtor in possession financing, to pay off the much less expensive Banner and MidCap debt.

While the Lenders do not have full information concerning the interest rates and other pricing for the Banner and MidCap loans to the Debtors, the Lenders are informed and believe that the cost of those loans to the Debtors is significantly less than the cost of the Proposed Loan.  The Lane Declaration reflects that the cost of the MidCap loans is approximately 13.25 percent, comprised of a base rate (6.35 percent), a default rate (3.00 percent), a management fee (1.2 percent), a float (approximately 2.0 percent), and other fees aggregating to about 0.70 percent).  *See Lane Declaration ¶ 15.*  The Banner relationship is evidenced by several different lending arrangements, but the Lenders believe the main Banner obligation bears non-default interest at 4.3 percent when a related swap agreement is factored in.  Even when default interest is added, the Lenders believe the cost of both loans is materially less than the Proposed Loan.

The Proposed Loan, in contrast, is priced at more than 20 percent annual interest, and perhaps significantly more.  As noted above, the fees, costs and charges associated with the Proposed Loan include the following:

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 19

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

- 12 percent annual interest on all amounts advanced;

- A 1.5 percent commitment fee;

- A 1.5 percent funding fee; and

- A 5 percent exit fee.

These charges total 20 percent. Since the loan matures in December, less than 9 months from now, the exit fee actually runs closer to 7 percent on an annual basis, making the cost closer to 22 percent. Further, if the Proposed Loan is not paid by December 31, 2019, an additional 10 percent "maturity date fee" would be charged. The Lenders are puzzled how the Debtors concluded, in the Financing Motion, that this the DIP Facility is cheaper than the MidCap debt. *See Financing Motion at p. 19 (so asserting).* It is inconceivable that the Debtors' proposed use of 20 percent, 22 percent or 30 percent plus money to pay off the Banner or MidCap loans is in the best interest of any creditor in these cases that is not Banner or MidCap. The Debtors' reference to two unpublished order in the Financing Motion does not establish that this relief is appropriate in the Chapter 11 Cases. *See Financing Motion at p. 38.* Supersizing the Proposed Loan would obviously benefit the proposed DIP Lender too, who stands to earn a generous return on the roughly $22 million increase in the Proposed Loan amount this would cause. That does not translate into a transaction that benefits creditors or other stakeholders.

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 20

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

As noted, nearly two-thirds of the Proposed Financing would be used to roll-up prepetition debt.  The Financing Motion cannot be approved for this additional reason given the significant imbalance between new funds to provide liquidity in these cases versus money that will only benefit two legacy lenders.

**B.**     **The Debtors Have Not Established They Could Adequately Protect The Lenders' Interests**

Any relief on the Financing Motion must be conditioned since the Debtors have not shown they could provide adequate protection for the Lenders' interests in the Bond Collateral and Working Capital Loan Collateral the Debtors are seeking to use nor have the Debtors shown they could provide adequate protection for the diminution in value of the Bond Collateral and Working Capital Loan Collateral that would be caused by the Proposed Loan's priming features.  Without a showing that the Debtors are positioned to supply adequate protection for the Lenders' interests, the Debtors can only proceed with the Lenders' consent.  As indicated elsewhere in these preliminary objections, the Lenders are willing to provide that consent but not on the terms of the Financing Motion and only if relief on the Financing Motion is conditioned to address the issues reflected herein.

The Debtors have an unconditional duty to provide the Lenders adequate protection in the Chapter 11 Cases.  *See* 11 U.S.C. §§ 363(e), 364(d).  Bankruptcy Code Section 363(e) provides that the Court shall prohibit or condition the Debtors'

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 21

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

use, sale, or lease of the Lenders' collateral, including cash collateral, to provide adequate protection of the Lenders' interests. *See* 11 U.S.C. § 363(e). Section 364(d)(1)(B) of the Bankruptcy Code is even plainer: there can be no 'superpriority' lien unless "there is adequate protection of the interest of the holder of the [prior] lien . . . ." *See* 11 U.S.C. § 363(d). Courts have uniformly affirmed that adequate protection is not a discretionary act. *See In re T.M. Sweeney & Sons LTL Servs., Inc.*, 131 B.R. 984, 990 (Bankr. N.D. Ill. 1991); *Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network Servs., Inc.)*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) (adequate protection is not permissive or discretionary).

The Debtors bear the burden to show that adequate protection is present. *See* 11 U.S.C. §§ 363(p), 364(d)(2) (providing that the debtor "has the burden of proof on the issue of adequate protection"); *Wells Fargo Bank, N.A. v. Sonora Desert Dairy, L.L.C. (In re Sonora Desert Dairy, L.L.C.)*, 2015 Bankr. LEXIS 18, at *30-31 (B.A.P. 9th Cir. Jan. 5, 2015); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 899 (Bankr. N.D. Ohio 1992) ("Section 36[4](d)(1)(B) requires the movant to prove that the lender who is subject to being primed will be adequately protected in the face of the loan transaction"). The Debtors can only meet their adequate protection burden by showing on a "firm evidentiary basis" that the Lenders' liens will be adequately protected from the decrease in value that will be

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 22

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 22 of 42

1  caused if the Debtors impose the requested priming liens and use their collateral as

2  requested in the Chapter 11 Cases.  *See In re Windsor Hotel, L.L.C.*, 295 B.R. 307,

3
4  314 (Bankr. C.D. Ill. 2003).

5      Adequate protection in the Chapter 11 Cases must preserve the *status quo* for

6
7  affected secured creditors.  *See In re 354 E. 66th St. Realty Corp., 177 B.R. 776, 781-

8  782 (Bankr. E.D.N.Y. 1995)* (noting that the purpose of adequate protection

9  payments was to preserve the *status quo* for a secured creditor); *see also Associates*

10
11  *Commercial Corp. v. Rash (In re Rash), 90 F.3d 1036, 1050 n. 17 (5th Cir. 1996),*

12  *rev'd on other grounds, 520 U.S. 953 (1997)* ("The adequate protection provisions .

13  . . were included in the Bankruptcy Code in 1978, reflecting a few prior decisions in

14
15  the case law that sought to protect secured creditors from a decline in the value of

16  the collateral during the pendency of the stay").

17      The Debtors' showing must establish verifiable compensation to the Lenders

18
19  to offset the decline in the Lenders' collateral position that would be caused by the

20  use and priming of the Bond Collateral and Working Capital Loan Collateral that is

21  contemplated here.  *See Resolution Tr. Corp. v. Swedeland Dev. Group, Inc. (In re*

22  *Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 567 (3d Cir. 1994); *see also In re St.*

23
24  *Petersburg Hotel Assocs., Ltd*., 44 B.R. 944, 946 (Bankr. M.D. Fla. 1984) (denying

25  motion to incur financing on a priming basis, observing that "to permit the Debtor

26

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 23

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 23 of 42

to saddle this property with an additional encumbrance which is superior to the interest of the Mortgagee would clearly operate to further deteriorate the position of the Mortgagee"); *In re Windsor Hotel, LLC*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003) (denying request to incur financing on a priming basis; "Where the debtor proposes a priming lien, the proposal should provide the prepetition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing"); *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1984) ("The concept of adequate protection was designed to insure that the secured creditor receives the value for which he bargained") (internal quotation marks omitted); *In re Buttermilk Towne Center, LLC*, 442 B.R. 558, 566 (B.A.P. 6th Cir. 2010) (finding no adequate protection for use of cash collateral where "the record does not indicate that Debtor possesses any unencumbered asset with which it can offer … adequate protection") (citations omitted); *Suntrust Bank v. Den-Mark Constr., Inc.*, 406 B.R. 683, 702 (E.D.N.C. 2009) (holding that the pre-petition secured creditor's interest was not adequately protected by the debtor's continued operations).

The only showing the Debtors have made in the Financing Motion in the face of these requirements is that the Debtors' requested priming liens would significantly diminish the Lenders' existing secured property interests. If the Debtors were permitted to borrow the full $36 million described in the Financing

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 24

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

Motion, the Proposed Loan would layer more than $14 million of new secured debt ahead of the Lenders once $22 million of the Proposed Loan was used to retire debt that, subject to a lien and claim review, may already have lien priority over the Lenders' claims.

What the Debtors have not established and what the Financing Motion does not demonstrate is any "firm evidentiary basis" to conclude that the Debtors have the resources to provide the required adequate protection for the Lenders' interests. There is no indication for example that the Debtors have unencumbered assets that can be pledged as additional collateral. There is no indication that available proceeds from any sale or other disposition of the Debtors' assets would clear both the Proposed Loan and the Lenders' claims.

There is no "firm evidentiary basis" to support Debtors' "equity cushion argument". A key feature of the Debtors' adequate protection argument is the Debtors' assertions that there is a sufficient existing equity cushion. *See Financing Motion at p. 47.* This argument rests on unsustainable "book value" and "enterprise value" claims. As an initial matter, the Debtors' assertions are inscrutable. The *Lane Declaration* refers to a "revenue multiplier of .7 times EBIDTA". *Lane Declaration at p. 32.* To the Lenders' knowledge this is not even a recognized method for establishing enterprise value. The Lenders' were unable to ascertain how

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 25

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 25 of 42

the Debtors conclude that the enterprise value of the Sunnyside assets is approximately $84 million even using the other information Mr. Lane describes. The Debtors have not provided sufficient disclosures to even validate the alleged $200 million book value amount. Information previously disclosed to the Lenders suggests a much lower book value amount. Further, the Debtors seemingly use one enterprise valuation method for the Sunnyside assets (.7xs alleged EBITDA) and another for the Yakima and Toppenish assets (40 percent of alleged revenues). The Debtors' pick and choose approach in selecting methods that assigns one valuation method to the Sunnyside assets and another to the Yakima and Toppenish facilities is more a sign that the Debtors have embraced a "win at all costs" strategy on the Financing Motion than good faith attempt to assign value to the Debtors' assets.

There is not otherwise a sufficient evidentiary basis to find that the alleged *book value* of the Debtors' assets establishes the Debtors' capacity to protect the Lenders' interests in these cases. Bankruptcy courts consistently use fair market value or forced liquidation value when valuation issues arise. *See*, *e.g.*, *In re Ralar Distribs., Inc.*, 166 B.R. 3, 7 (Bankr. D. Mass. 1994) ("The value relevant for adequate protection purposes, however, is not book value. It is liquidation value realizable by the creditor")*; United States v. Case (In re Case)*, 115 B.R. 666, 670 (B.A.P. 9th Cir. 1990) ("If we were attempting to value [secured creditor's] interest

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 26

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1   in the property for adequate protection purposes, the possibility of forced liquidation

2   would be assumed and a deduction for selling costs would be logical").  In these

3   cases, any explainable book value is particularly inaccurate since the Debtors are

4
5   relying on interim, not audited, financials.

6        The Debtors' "back of the envelope" enterprise value assertions should fare

7   no better.  The Lenders are informed and therefore believe that hospital valuation is

8   a nuanced process that depends on multiple factors, including payor mix, the

9   condition of the physical assets, the services that are provided, market share and

10
11  numerous other factors.  The Lenders are familiar with other hospital restructuring

12  matters where enterprise values have been pegged at one third or less of net patient

13
14  service revenues, and sometimes less.  The Lenders believe there may well be

15  reasons to believe a stronger outcome is possible if the Debtors' assets are properly

16  marketed in the Chapter 11 Cases by qualified and acceptable investment bankers.

17
18  But a "one third" valuation model would reflect an enterprise value of roughly $80

19  million.  With roughly $77 million of secured funded debt on the Debtors' books

20  already, there is no equity cushion here.

21
22       By the Debtors' own admission, the Debtors' proposed replacement liens and

23  superpriority claims that are the primary alternative form of alleged adequate

24
25  protection cannot not offer the Lenders additional value which might constitute

26

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 27

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

adequate protection.  A key premise behind the Debtors' assertions that they can only get financing that offers the DIP Lender priming liens is the Debtors' assertion that substantially all of their existing assets are already subject to liens.  *See Financing Motion at p. 43*.  The Debtors cannot provide adequate protection by granting "replacement liens" on property that is already encumbered by the Lenders' prepetition security interests.  *See In re Buttermilk Towne Center,* 442 B.R. at 566-57.

There is not an appropriate record to establish that the Lenders would receive verifiable compensation, and thus be adequately protected as is required.  At a minimum, further proceedings, with discovery, expert analysis and fundamental due process is needed before any relief should be granted on the basis of these claims.

**C.** **The Adequate Protection That Has Been Offered Does Not Satisfy The Debtors' Adequate Protection Obligations**

Even if the Debtors could establish that adequate protection of the Lenders' interests is possible in the Chapter 11 Cases, the Debtors have not offered adequate protection terms that do so.  Any relief on the Financing Motion must be conditioned on terms that implement an "all options" strategy and provide the Lenders' customary adequate protection terms that are missing from the Financing Motion.

***The Debtors Must Implement an "All Options" Strategy***

The Debtors must pursue an "all options" strategy now that explores the sale

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 28

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

of their assets, a business combination with a partner with deeper resources, and the refinancing of the Lenders' debt, in addition to the Debtors' standalone preference. An "all options" strategy is necessary to adequately protect the Lenders and relief on the Financing Motion should be conditioned on an obligation to proceed in that manner.

The Debtors' business strategy for these cases is risky and the management team track record does not support their "one option" standalone strategy. As noted, the Debtors can only meet their adequate protection burden by showing on a "firm evidentiary basis" that the Lenders' liens will be adequately protected from the decrease in value that will be caused if the Debtors impose the requested priming liens and use their collateral as requested in the Chapter 11 Cases. *See In re Windsor Hotel, L.L.C.*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003); *see also In re Mosello*, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996) ("[A]dequate protection should be premised on facts, or on projections grounded in a firm evidentiary basis"); *In re First South Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987) ("Given the fact that super priority financing displaces liens on which creditors have relied in extending credit, a court that is asked to authorize such financing must be particularly cautious when assessing whether the creditors so displaced are adequately protected"). The Debtors' storyline of these cases does not meet that standard.

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM AND FINAL ORDERS AUTHORIZING POSTPETITION FINANCING, USE OF CASH COLLATERAL AND RELATED RELIEF - 29

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

The Debtors cannot establish a firm evidentiary basis to move ahead on their requested terms when they have encountered successive challenges that have impeded the system in multiple, and significant ways for years. The Debtors have encountered numerous episodic issues that have caused material economic distress. The Debtors, for example, rolled out a poorly implemented IT system update in 2018. That roll out disrupted the Debtors' business and reduced patient volume by roughly 30 percent for weeks. As a further recent example, in the fall of 2018, the Debtors determined that several months of interim financial statements included massive errors. Many other challenges have been more persistent: The Yakima and Toppenish facilities were losing money when they were acquired to form the system in 2017. Since then, those financial losses have continued. Further, the Debtors have attempted numerous revenue enhancement and cost containment initiatives that have failed. The Debtors have experienced significant turnover in senior management, including at least two CEOs and two CFOs for the Yakima facility, the largest of the Debtors' three acute care hospitals. It is conceivable this revolving door will continues since at least some of the Debtors current management team is "rented" from a third-party vendor, HealthTechS3 based in Brentwood, Tennessee. Even before the Debtors' commenced their ill-fated transition to their present billing and collection program, the Debtors were in covenant default on the Bonds over

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 30

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 30 of 42

multiple fiscal quarters. During this two-year period, management presented successive financial projections but actual results have consistently underperformed.

It is of course plausible the Debtors' health system can be viable with proper management, proper resources, proper integration, a proper roll out of revenue enhancement initiatives, and patience. But the Debtors' insistence that it only one of the available strategies is prejudicial to the Lenders and fails to adequately protect their interests in view of the scale and scope of the reclamation project ahead and the significant evidence that the Debtors' path forward will be punctuated by many challenges and potential inherent conflicts.

### *The Proposed Adequate Protection is Otherwise Deficient*

The Court should otherwise reject the Debtors' adequate protection "package" which is anchored in a hodgepodge of adequate protection arguments that provide not real protections and replacement liens in the same assets that are already pledged to the Lenders.

The Debtors have provided a series of empty assertions in their adequate protection "package". The adequate protection assertions include (i) the suspect equity cushion argument already addressed, (ii) that the Lenders are protected since the priority of their liens will not be materially affected, (iii) that the Lenders will be protected since the Debtors plan to comply with a budget over which the Lenders

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 31

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 31 of 42

have not control, and (iv) that the Lenders will be protected so long as the Debtors remain a going concern. The Debtors then supplement these assertions with proposed:

- Replacement liens in postpetition assets that would otherwise constitute the Lenders' collateral;

- Superpriority claims in some, though not all, of the Debtors' assets; and

- The same financial reporting the Debtors have agreed to provide to the DIP Lender.

*Financing Motion at p. 38-39, 46-48.*

The Debtors' "adequate protection assertions" are incorrect. Adequate protection is the Lenders' "fundamental right" in the Chapter 11 Cases. *In re Waste Conversion Techs., Inc.* 205 B.R. 1004, 1007 (D. Conn. 1997). For the reasons already stated, the Lenders cannot rely on their discredited equity cushion argument. The Debtors' argument that the Lenders are adequately protected since the DIP Lender's proposed liens will not change the priority of the Lenders' liens is insulting when the Financing Motion seeks to increase the Debtors' debt load by more than $14 million and the Proposed Loan calls for a significant increase over the borrowing costs that are associated with the Banner and Midcap loans that would be refinanced under the Debtors' desired result. It is unclear how the Debtors' agreement to comply with a budget that the Lenders do not have rights to control provides any

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 32

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

verifiable protection for the Lenders' interests. The Debtors' suggestion that the continuation of the Debtors' business is sufficient; that is not what the law requires when there is priming debtor in possession financing, as proposed in the Chapter 11 Cases. The law requires verifiable compensation to the Lenders under the proposed adequate protection package to offset the decline in the Lenders' collateral position that would be caused by the priming that is contemplated here. *See Resolution Tr. Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 567 (3d Cir. 1994).

The offered adequate protection terms are also deficient. A postpetition financing proposal "should provide the prepetition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing. *Id.* As noted above, the replacement liens and superpriority claims are illusory. Likewise, the financial reporting the Debtors have offered to provide under the Financing Motion adds nothing to the Lenders' existing rights under the Bond Documents and Working Capital Loan Documents, which already include rights to financial and other information regarding the Facility that the Secured Parties' may reasonably request. *See e.g.* Loan and Security Agreement at Section 7.2.

The Debtors are inviting this Court to ignore the required standards, ignore the"extraordinary" nature of the remedy they are seeking, and ignore the accepted

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 33

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 33 of 42

notion that these features may only be granted under the "most compelling and extraordinary circumstances." *In re Dunckle Assocs., Inc.,* 19 B.R. 481, 485 (Bankr. E.D. Pa. 1982). Adequate protection should not and cannot be illusory and still pass muster. *See In re LTAP US, LLLP,* 2011 Bankr. LEXIS 667 at *9 (Bankr. D. Del. Feb. 18, 2011) (a grant of replacement liens on assets already subject to a secured party's liens is not adequate protection). The Financing Motion should be denied absent the Lenders' consent. *See* 3 COLLIER ON BANKRUPTCY ¶ 364.05 (16th ed., 2018).

As set forth below, the Lenders are willing to consent to tailored interim relief on the Financing Motion that maintains the *status quo*, and that permits the parties time to evaluate the issues that surround the Financing Motion in advance of any further interim hearing or any final hearing. While the Lenders believe that even the terms described below will not meet the technical requirements of the Bankruptcy Code, the Debtors should be required to provide the adequate protection that is possible, while the parties continue to assess the path forward in the Chapter 11 Cases.

**D.     The Debtors Have Not Appropriately Shopped The Proposed Loan**

The Court should limit relief on the Financing Motion beyond what is necessary pay operating costs on an interim basis and pending further proceedings,

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 34

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

since there is no evidence the Proposed Loan is the product of any real effort to obtain appropriate terms.

Before the Court can approve secured debtor in possession borrowing in the Chapter 11 Cases, the Debtors must establish they are unable to obtain financing on less onerous terms. *See* 11 U.S.C. §§ 364(c), (d); *see also In re Los Angeles Dodgers, LLC,* 457 B.R. 308, 312 (Bankr. D. Del. 2011) (denying request to obtain financing, "premised upon Section 364(b) of the Bankruptcy Code, 11 U.S.C. § 364(b), which explicitly precludes the [loan] where, as here, Debtors are unable to prove that they are 'unable to obtain unsecured credit allowable under section 503(b)(1) . . . as an administrative expense'"); *In re Seth Co., Inc.* 281 B.R. 150, 153 (Bankr. D. Conn. 2002) (section 364(d) financing requires that the debtor be unable to otherwise obtain credit); *Aqua Assoc.,* 123 B.R. at 195-196 (financing should not be approved when funds are available from some other source); *Crouse Group,* 71 B.R. at 549.

These standards mean that postpetition financing should not be approved if there was not an adequate effort to obtain alternative financing. *Plabell Rubber Products, Inc.*, 137 B.R. at 990 (contact with one other bank insufficient); *In re Reading Tube Industries*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) (denying approval of DIP financing where debtor put on no evidence of its efforts to seek alternatives;

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 35

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

*In re Crouse*, 71 B.R. at 550 (Section 364(c) requires debtor to demonstrate "combination of clear findings on the necessity of the funds, an absence of alternatives, and a weighing of the wisdom of the funding agreements;" debtors who approached only one lending institution for DIP financing failed to show "the requisite exhaustive unsuccessful efforts to obtain credit").

The Debtors have not carried their burden on these issues in the Financing Motion. The Debtors instead make unsupported assertions that the proposed financing is the result of a "wide ranging market exploration" by the Debtors and their professionals. *See Lane Declaration ¶ 21.* The Debtors concede that this "wide ranging" effort was actually narrow, involving (perhaps) six financial institutions, including the Agent. *Id.*

There is significant reason to question whether there was any meaningful Debtor-outreach beyond the proposed lender under the Financing Motion. The Debtors' outreach to the Agent, for example, was cursory and seemingly designed to fail. The Agent made clear in multiple statements that it was willing to consider financing for the Chapter 11 Cases, but needed updated cash flow projections and similar materials to assess the viability of such a loan and the terms thereof. Despite multiple requests for this information over a month-long effort, if not longer, no information was provided until after the Debtors selected the DIP Lender as their

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 36

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

preferred partner.  The information that was then given was incomplete and did not provide the Agent sufficient information to make an informed investment decision.

Given the extremely costly terms for the Proposed Loan, these concerns are hardly academic.  The Debtors must conduct a truly "wide ranging" effort to obtain financing before anything beyond minimal interim relief is allowed.

**E.      The Lenders Will Consent To Interim Relief On Appropriate Terms**

For now, the Lenders are willing to consent to tailored interim relief on the Financing Motion that maintains the *status quo*, and that permits the parties time to evaluate the issues that surround the Financing Motion in advance of any further interim hearing or any final hearing.  For purposes of the initial hearing on the Financing Motion, the Lenders are specifically willing to consent to relief with the following attributes:

- Limited borrowing under an agreed short term budget to support postpetition ordinary course operating costs pending a further interim or final hearing;

- An agreement (or requirement) to defer any borrowing under the Proposed Loan or other relief to repay any prepetition secured funded debt at this time;

- Adequate protection terms that are customary in hospital chapter 11 cases and are necessary given the Debtors' planned priming of the Lenders liens in and Debtors' use of the Bond Collateral and Working Capital Loan Collateral;

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 37

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 37 of 42

1         •       A good faith commitment by the Lenders and Debtors to discuss the

2                    go-forward process in the Chapter 11 Cases before the next hearing on

3                    the Financing Motion; and

4         •       A full reservation of all rights of the Lenders and Debtors as to the

5                    Financing Motion and the Proposed Loan of any unresolved positions

6                    pending a further interim hearing or final hearing on the Financing
Motion.

7 The proposed terms on which the Lenders are willing to consent to this interim relief

8
9 are reflected in the attached **Schedule A**.  Any other relief on the Financing Motion

10 should be denied at this stage.

11
## RESERVATION OF RIGHTS

12
13      As noted, this is an initial objection to the Financing Motion in the context of

14 the Debtors' anticipated "first day" hearing.  The Lenders continue to evaluate what

15
16 further interim or final relief on the Financing Motion may be appropriate, whether

17 other relief is more appropriate, and reserve all rights in connection with those

18 matters.  For the avoidance of doubt, the Lenders reserve all rights to file further

19
20 objections to the Financing Motion on any matters that may be relevant to the

21 requested relief, whether or not those issues are described in this initial objection.

22 The Lenders similarly reserve all rights to amend or supplement this objection,

23
24 whether in connection with the Debtors' request for any interim or final relief or

25 otherwise.

26

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 38

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

19-01189-FLK11   Doc 48   Filed 05/07/19   Entered 05/07/19 16:15:52   Pg 38 of 42

# **<u>CONCLUSION</u>**

WHEREFORE, the Lenders request that the Court (i) condition and otherwise limit relief on the Financing Motion for the reasons and in the manner set forth above; (ii) deny any aspect of the Financing Motion that forms the basis for the objections stated herein; (iii) modify any proposed order granting any relief on the Financing Motion to conform to the objections stated herein; and (iv) grant such further relief as the Court deems appropriate.

[signatures follow]

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 39

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1

2

3     DATED this 7th day of May, 2019.

4                              MILLER NASH GRAHAM & DUNN LLP

5                              */s/ Mark D. Northrup*
6                              Mark D. Northrup
7                              WSBA No. 16947
                               mark.northrup@millernash.com
8                              (206) 624-8300
9                              *Attorneys for UMB Bank, N.A., as bond*
                               *trustee and Lapis Advisers LP as agent*
10

11                             and

12                             William W. Kannel (*Pro Hac* Application to
                               be Filed)
13                             Ian A. Hammel (*Pro Hac* Application to be
14                             Filed)
15                             Timothy J. McKeon (*Pro Hac* Application
                               to be Filed)
16                             MINTZ LEVIN COHN FERRIS
17                             GLOVSKY AND POPEO, P.C.
                               One Financial Center
18                             Boston, Massachusetts  02111
19                             (617) 542-6000
                               Email:      bkannel@mintz.com
20                                         iahammel@mintz.com
21                                         tjmckeon@mintz.com
                               *Attorneys for UMB Bank, N.A., as bond*
22                             *trustee and Lapis Advisers, L.P. as Agent*

23

24

25

26

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 40

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

19-01189-FLK11    Doc 48    Filed 05/07/19    Entered 05/07/19 16:15:52    Pg 40 of 42

**Schedule A**
**(Interim Order Terms)**

      (a)    A commitment to negotiate an "all options" strategy immediately and with agreed milestones, including efforts to pursue a sale of the Debtors' acute care hospitals or merger, and a refinancing of all amounts owed to the Lenders, in addition to the Debtors' preferred standalone path.

      (b)    A prohibition on any use of the DIP Facility to pay off Banner or MidCap pending a further hearing.

      (c)    A full reservation of all rights of the Lenders and Debtors as to the Financing Motion and the Proposed Loan for any unresolved positions pending a further interim hearing or final hearing on the Financing Motion.

      (d)    Replacement liens (which shall be automatically perfected) and superpriority claims on all assets of the Debtors and their estates, subject only to a reasonable carve out and reasonable post petition DIP facility.

      (e)    Compliance by the Debtors at all times with a budget approved in advance by the Lenders.

      (f)    Allowance of the Lenders' Bond Claims and Working Capital Loan Claims, effective upon a final order and subject to the Committee investigation and challenge period proposed below.  Subject to this same investigation and challenge period, effective upon a final order, typical cash collateral order releases from the Debtors.

      (g)    Reporting in the form of the same reporting contemplated by the DIP Facility and with rights to other information as reasonably requested.

      (h)    Compliance with existing Bond and Working Capital Loan documents relating to the maintenance and insurance of the Debtors' assets and financial reporting, as well as, pursuant to the Bond Documents, the tax exemption for the Bonds.

      (i)    A prohibition on the use of Bond Collateral, Working Capital Loan Collateral, DIP facility proceeds or other cash to challenge the Bond Claims, the Working Capital Loan Claims, the Lenders' collateral or otherwise pursue claims against the Lenders, subject to a customary committee investigation budget.

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPENTITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 41

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

19-01189-FLK11     Doc 48     Filed 05/07/19     Entered 05/07/19 16:15:52     Pg 41 of 42

1    　　　　　(j)　　A customary limited committee challenge period (75 days from
2    the petition date).

3    　　　　　(k)　　A customary limited carve out acceptable to the Lenders.

4    　　　　　(l)　　Customary 506(c) and 552 waivers effective upon a final order.

5    　　　　　(m)　　Customary termination events if there is a material adverse
6    change or non compliance by the Debtors.

7    　　　　　(n)　　Customary good faith protections for the Lenders in case any
8    order providing the Lenders' relief on the foregoing matters is later modified or
     revoked.
9
10   　　　　　(o)　　Customary rights recognizing the Lenders' rights to credit bid in
     any sale of the Debtors' assets.
11
     　　　　　(p)　　Customary relief from stay to permit the Lenders to take action
12   authorized by the order.
13
     　　　　　(q)　　Customary provisions making the relief binding on successors,
14   including any bankruptcy trustee.
15
     　　　　　(r)　　A customary reservation of Lenders' rights to seek further relief.
16
     　　　　　(s)　　Monthly adequate protection payments in the amount of
17   monthly interest accrued on the principal amount of the Bonds and the
18   Working Capital Loan at non-default rates.

19

20

21

22

23

24

25

26

PRELMINARY OBJECTIONS TO DEBTORS' INTERIM
AND FINAL ORDERS AUTHORIZING POSTPETITION
FINANCING, USE OF CASH COLLATERAL AND
RELATED RELIEF - 42

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121