1  JAMES L. DAY (WSBA #20474)
2  THOMAS A. BUFORD (WSBA #52969)    HONORABLE WHITMAN L. HOLT
   BUSH KORNFELD LLP
3  601 Union Street, Suite 5000
   Seattle, WA 98101
4  Tel: (206) 292-2110
   Email: jday@bskd.com
5           tbuford@bskd.com

6  SAMUEL R. MAIZEL (Admitted *Pro
   Hac Vice*)
7  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
8  Los Angeles, California 90017-5704
   Tel: (213) 623-9300
9  Fax: (213) 623-9924
   Email: samuel.maizel@dentons.com

10 SAM J. ALBERTS (WSBA #22255)
   DENTONS US LLP
11 1900 K. Street, NW
   Washington, DC 20006
12 Tel: (202) 496-7500
   Fax: (202) 496-7756
13 Email: sam.alberts@dentons.com

14 *Attorneys for the Chapter 11 Debtors and
   Debtors In Possession*

15
16              **UNITED STATES BANKRUPTCY COURT**
                 **EASTERN DISTRICT OF WASHINGTON**
17
18                              | Chapter 11
    In re:                      | Lead Case No. 19-01189-11
19                              | Jointly Administered
    ASTRIA HEALTH, *et al.*,    |
20                              | **NOTICE OF SUBMISSION OF REVISED**
        Debtors and            | **EXHIBITS WITH RESPECT TO MOTION**
21      Debtors in             | **OF THE DEBTORS AND DEBTORS IN**
        Possession.[1]          | **POSSESSION FOR AN ORDER (I)(A)**
22                             | **APPROVING PROCEDURES IN**

23  [1] The Debtors, along with their case numbers, are as follows: Astria Health (19-
    01189-11), Glacier Canyon, LLC (19-01193-11), Kitchen and Bath Furnishings,
24  LLC (19-01194-11), Oxbow Summit, LLC (19-01195-11), SHS Holdco, LLC (19-
    01196-11), SHC Medical Center - Toppenish (19-01190-11), SHC Medical Center -
25  Yakima (19-01192-11), Sunnyside Community Hospital Association (19-01191-11),
    Sunnyside Community Hospital Home Medical Supply, LLC (19-01197-11),
26  Sunnyside Home Health (19-01198-11), Sunnyside Professional Services, LLC (19-
    01199-11), Yakima Home Care Holdings, LLC (19-01201-11), and Yakima HMA
27  Home Health, LLC (19-01200-11).

28  **NOTICE OF REVISED EXHIBITS IN**
    **CONNECTION WITH BID PROCEDURES**          DENTONS US LLP              BUSH KORNFELD LLP
    **MOTION**                              601 South Figueroa Street, Suite 2500      LAW OFFICES
                                            Los Angeles, CA 90017-5704       601 Union St., Suite 5000
    113756986\V-4                            Phone: (213) 623-9300      Seattle, Washington 98101-2373
                                            Fax: (213) 623-9924        Telephone (206) 292-2110

CONNECTION WITH THE SALE OF ASSETS; (B) SCHEDULING THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED RELIEF; AND (II)(A) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

**HEARING:**

**Date/Time:** December 5, 2019/11:00 a.m.

**Location:** U.S. Bankruptcy Court,

402 E. Yakima Avenue,

Second Floor Courtroom

Yakima, WA

**Telephone Conference:** (888) 273-3658; Access Code: 5423885

Related Document No. 0765

**PLEASE TAKE NOTICE** that Astria Health and the above-referenced affiliated debtors (collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Chapter 11 Cases"), by and through the undersigned counsel, in conjunction with its filed and pending *Motion Of The Debtors And Debtors In Possession For An Order (I)(A) Approving Procedures In Connection With The Sale Of Assets; (B) Scheduling The*

NOTICE OF REVISED EXHIBITS IN CONNECTION WITH BID PROCEDURES MOTION

113756986\V-4

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Phone: (213) 623-9300
Fax: (213) 623-9924

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110

19-01189-WLH11    Doc 794    Filed 12/03/19    Entered 12/03/19 15:57:44    Pg 2 of 75

*Related Auction And Hearing To Consider Approval Of Sale; (C) Approving Procedures Related To The Assumption Of Certain Executory Contracts And Unexpired Leases; (D) Approving The Form And Manner Of Notice Thereof; And (E) Granting Related Relief; And (II)(A) Authorizing The Sale Of Assets Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (B) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And; And (C) Granting Related Relief* (Docket No. 0765) (the "Motion"), files the attached revised exhibits (the "Exhibits") under the cover sheets labeled "Clean" and "Redline" that incorporate comments received from 1) Counsel for JMB Capital Partners Lending, LLC ("JMB" or the "DIP Lender"); (2) Counsel for Lapis Advisors, LP ("Lapis") and UMB Bank, N.A. ("UMB"), prepetition secured creditors (together, the "Secured Creditors"); (3) Counsel for the Official Committee of Unsecured Creditors (the "Committee," and referred to together with JMB, Lapis and UMB as the "Consultation Parties"), as well as comments provided to one or more of the Consultation Parties by the Office of the United States Trustee. Specifically, the Exhibits are as follows:

Exhibit A (the "Bidding Procedures Order");

Exhibit 1 to the Bidding Procedures Order (the "Bidding Procedures"),

Exhibit 2 to the Bidding Procedures Order ("Significant Dates"),

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Phone: (213) 623-9300
Fax: (213) 623-9924

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110

**Exhibit 3** to the Bidding Procedure Order (the "Procedures Notice," formally titled *Notice of Sale Procuedures, Auction Date, and Sale Hearing* ),

**Exhibit 4** to the Bidding Procedures Order (the "Cure Notice," formally titled *Notice to Counterparties to Certain Executory Contracts and Unexpired Leases of the Debtors That May Be Assumed and Assigned Pursuant to § 365 of the Bankruptcy Code*).

**Exhibit B** (the "Sale Order," formally titled *Order (A) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Encumberances, and Other Interests (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (c) Granting Related Relief*);[2]

**Exhibit 1** "Successful Bidder's Purchase Agreement" (blank); and

**Exhibit C** ("Form Purchase Agreement").

PLEASE TAKE FURTHER NOTICE that the Debtors reserve the right to file or present additional modified Exhibits prior to, at or after the hearing on the Motion.

PLEASE TAKE FURTHER NOTICE that a copy of this Notice and Exhibits have been served on (1) the Consultation Parties, (2) the Attorney General of the United States and the United States Attorney's Office for the Eastern District of Washington, (3) the Attorney General for the State of Washington and (4) parties that

---

[2] The Consultation Parties have not provided comments to the form of the Sale Order and each reserves all rights with respect thereto.

NOTICE OF REVISED EXHIBITS IN
CONNECTION WITH BID PROCEDURES
MOTION

113756986\V-4

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Phone: (213) 623-9300
Fax: (213) 623-9924

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110

file with the Court and served upon the Debtors Request for Notice of all matters in accordance with Rule 2002.

Dated: December 3, 2019

DENTONS US LLP
SAMUEL R. MAIZEL
SAM J. ALBERTS

By  /s/ Samuel R. Maizel
       SAMUEL R. MAIZEL

*Attorneys for the Chapter 11 Debtors and Debtors In Possession*

**NOTICE OF REVISED EXHIBITS IN CONNECTION WITH BID PROCEDURES MOTION**

113756986\V-4

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Phone: (213) 623-9300
Fax: (213) 623-9924

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110

# EXHIBITS (CLEAN)

# EXHIBIT A

**(Bid Procedures Order)**

US_Active\113755785\V-1

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

In re:

ASTRIA HEALTH, *et al.*,

Debtors and
Debtors in
Possession.[1]

Chapter 11
Lead Case No. 19-01189-11
Jointly Administered

**ORDER (A) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS; (B) SCHEDULING THE RELATED AUCTION AND HEARING TO**

[1] The Debtors, along with their case numbers, are as follows: Astria Health (19-01189-11), Glacier Canyon, LLC (19-01193-11), Kitchen and Bath Furnishings, LLC (19-01194-11), Oxbow Summit, LLC (19-01195-11), SHS Holdco, LLC (19-01196-11), SHC Medical Center - Toppenish (19-01190-11), SHC Medical Center - Yakima (19-01192-11), Sunnyside Community Hospital Association (19-01191-11), Sunnyside Community Hospital Home Medical Supply, LLC (19-01197-11),

US_Active\113755785\V-1

CONSIDER APPROVAL OF SALE;
(C) APPROVING PROCEDURES
RELATED TO THE ASSUMPTION OF
CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES;
(D) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF

This matter coming before the Court on the motion (the "Motion")² of Astria Health ("Astria") and the above-referenced affiliated debtors (collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Chapter 11 Cases"), by and through the undersigned counsel, pursuant to §§ 105(a), 363(b) and 365 of title 11 of the United States Code (the "Bankruptcy Code"),³ Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 5005-1, 6004-1, 6006-1, 9013-1, and 9029-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Washington (the "LBR") for: (i) an order substantially in the proposed form attached thereto as

---

Sunnyside Home Health (19-01198-11), Sunnyside Professional Services, LLC (19-01199-11), Yakima Home Care Holdings, LLC (19-01201-11), and Yakima HMA Home Health, LLC (19-01200-11).

² Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

³ All references to "§" herein are to sections of the Bankruptcy Code.

US_Active\113755785\V-1

**Exhibit A** (the "<u>Bidding Procedures Order</u>") (a) approving procedures (the "<u>Bidding Procedures</u>," which are attached as **Exhibit 1** to the proposed Bidding Procedures Order) in connection with one or more sales of, or other acquisition transactions for, (each a "Sale"), substantially all of the Debtors' assets (the "Assets"); (b) scheduling the related auction and hearing to consider approval of such sale; (c) approving procedures related to the assumption of certain executory contracts and unexpired leases; (d) approving the form and manner of notice thereof; and (ii) an order, substantially in the proposed form attached thereto as **Exhibit B** (the "<u>Sale Order</u>") (a) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and other interests, except as otherwise may be provided in a purchase agreement memorializing such a sale (a "<u>Purchase Agreement</u>") and (b) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto; and, in each case, (iii) granting such other and further relief as is just and proper under the circumstances; the Court having reviewed the Motion and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (iv) notice of the Motion was sufficient under the circumstances and properly given, and it appearing that no other or further notice need be provided; and a hearing on the proposed bid and sale procedures as detailed

3

US_Active\113755785\V-1

in the Motion having been held; and after due deliberation the Court having determined that the relief requested in the Motion with respect to proposed bid and sale procedures is in the best interests of the Debtors, their estates, and their creditors; and good and sufficient cause having been shown;

**AND IT IS FURTHER FOUND AND DETERMINED THAT:** [4]

A.     The statutory and legal predicates for the relief requested in the Motion and provided for herein are §§ 105(a), 363(b), and 365 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and LBR 2002-1, 5005-1, 6004-1, 6006-1, 9013-1, and 9029-1.

B.     In the Motion and at the hearing on the Motion, the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or

---

[4]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

4

US_Active\113755785\V-1

be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

C.     The Debtors' proposed notice of the Bidding Procedures, the Cure Procedures, the Auction and the hearing to approve the sale of the Assets (the "Sale Hearing") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

D.     The Bidding Procedures substantially in the form attached hereto as **Exhibit 1** are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Assets.

E.     The Assumption and Assignment Procedures provided for herein and the Cure Notice are reasonable and appropriate and consistent with the provisions of § 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures and the Cure Notice have been narrowly tailored to provide an adequate opportunity for all non-Debtor counterparties to the Assumed Agreements to assert any Assumption Objection.

F.     Entry of this Order is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is **GRANTED** as set forth herein.

5

US_Active\113755785\V-1

2.    All objections to the relief requested in the Motion that have not been withdrawn, waived or settled are overruled.

3.    The Bidding Procedures attached hereto as **Exhibit 1** are **APPROVED**.[5]

4.    The Bid Deadline shall be **January 30, 2020, at 4:00 p.m. (prevailing Pacific Time)**.

5.    The Debtors, after consultation with counsel for JMB Capital Partners Lending, LLC ("JMB" or the "DIP Lender"); counsel for Lapis Advisers, LP ("Lapis") and UMB Bank, N.A. ("UMB"); and counsel for the Committee of Unsecured Creditors (the "Committee," and referred to together with JMB, Lapis and UMB as the "Consultation Parties"), shall have the exclusive right to determine whether a bid is a Qualified Bid and shall notify Qualified Bidders whether their bids have been recognized as such as promptly as practicable after a Qualified Bidder delivers all of the materials required by the Bidding Procedures.

6.    The Debtors, after consultation with the Consultation Parties, on or before the date that is one week prior to the Bid Deadline (the "Stalking Horse Bid Deadline") may (a) select one or more parties to act as a stalking horse purchaser (each a "Stalking Horse Purchaser") for some or all of the Debtors' Assets, (b) negotiate the terms of and enter into one or more purchase agreements with any Stalking Horse Purchaser (a "Stalking Horse Agreement") (subject to higher or better bids as contemplated herein), and (c) agree to provide certain bid protections to such Stalking Horse Purchaser, subject to approval of the Court after notice and an opportunity to object, as set forth below.

---

[5]   For the convenience of parties in interest, a chart listing important dates set forth in this Order is attached hereto as **Exhibit 2**.

US_Active\113755785\V-1

7.    If the Debtors seek to provide bid protections to any Stalking Horse Purchaser, the Debtors shall file a supplement to the Motion (a "Supplemental Motion") seeking approval of such protections on or before the date that is one week prior to the Bid Deadline and serve such Supplemental Motion on the Procedures Notice Parties (defined below). . To the extent the Debtors seek to enter into a Stalking Horse Agreement but do not seek approval of any bid protections for a Stalking Horse Purchaser, the Debtors shall file a notice of entry into a Stalking Horse Agreement(s) (a "Stalking Horse Notice") with the Court on or before the Bid Deadline and serve such notice on the Procedures Notice Parties.

8.    Such Supplemental Motion or Stalking Horse Notice shall include a summary of the material terms of any Stalking Horse Agreement(s) and, in the case of the Supplemental Motion, the proposed bid protections, and attach the Stalking Horse Agreement(s). If no objections to the motion or notice are filed and served on the Debtors by the date that is one day prior to the Bid Deadline at 10:00 a.m. (prevailing Pacific Time), the Debtors shall be entitled to immediately file a certificate of no objection with the Court, after which the Court may enter an order approving the Debtors' selection of a Stalking Horse Purchaser and, if applicable, any bid protections requested, without the need for a hearing. If a timely objection is filed, an expedited hearing to consider approval of the Stalking Horse Agreement(s) and any objections thereto will be held as soon as practicable, but not later than **January 29, 2020 at 4:00 p.m**. For the avoidance of doubt, nothing in this Order or the Bidding Procedures authorizes bid protections for any Stalking Horse Purchaser(s) or other bidders.

9.    The Debtors shall further have the right, after consultation with the Consultation Parties, to extend or waive the Stalking Horse Bid Deadline and the Stalking Horse Notice Deadline or conduct the Auction without any Stalking Horse Purchaser.

US_Active\113755785\V-1

10.     The Auction, if necessary, shall be held on **February 5, 2020, at 10:00 a.m. (prevailing Pacific Time)** at the Hilton Garden Inn, Yakima, Washington, 401 E. Yakima Avenue, Yakima, WA 98901, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction.

11.     At such Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, and the Auction shall be conducted openly and transcribed.  Within twenty-four (24) hours following the conclusion of the Auction, the Debtors, after consultation with the Consultation Parties, shall file a notice identifying the Successful Bidder and Back-up Bidder (if any) with the Court and shall serve such notice by fax, email, or if neither is available, by overnight mail to all counterparties whose Contracts or Leases are to be assumed and assigned.

12.     The Debtors, after consultation with the Consultation Parties, shall determine which offer is the highest and otherwise best offer for the Assets, giving effect to any additional liabilities or Cure Amounts to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors.

13.     The Sale Hearing shall be held on **February 7, 2020, at 10:00 a.m. (prevailing Pacific Time)** before the Honorable Whitman Holt, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of Washington, 402 East Yakima Avenue, Second Floor Courtroom, Yakima, WA 98901.  Any objections to the Sale (other than an Assumption Objection (defined herein) which shall be governed by the procedures set forth below) (a "Sale Objection"), including any objections by contract counterparties to a Successful Bidder's ability to provide adequate assurance of future performance under an Assumed Agreement, must (i) be in writing; (ii) comply with the Bankruptcy Rules and the LBR; (iii) set forth the specific basis for the Sale Objection; (iv) be filed with

8

the Court at 402 E Yakima Avenue, Suite 200, Yakima, WA 98901, together with proof of service, on or before **4:00 p.m. (prevailing Pacific Time) on February 6, 2020** (the "Sale Objection Deadline") and (v) be served, so as to be actually received on or before the Sale Objection Deadline, upon (i) Counsel to the Debtors: Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017, Attn: Samuel R. Maizel (samuel.maizel@dentons.com) and Sam J. Alberts (sam.alberts@dentons.com); (ii) the Debtors' Investment Banker: Piper Jaffray & Co., Teri Stratton, Attn: teri.l.stratton@pjc.com; (iii) Counsel to JMB Capital Partners Lending, LLC: Arent Fox, LLP, 1301 Avenue of the Americas, NY 10019, Attn: Robert Hirsh (robert.hirsh@arentfox.com) and Jordana Renert (jordana.renert@arentfox.com); (iv) Counsel to UMB Bank, N.A. and Lapis Advisers, LP: Mintz Levin, One Financial Center, Boston, MA 02111, Attn: William Kannel (wkannel@mintz.com) and Ian Hammel (iahammel@mintz.com); (v) Counsel to Lapis Advisors, LP: Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019-6079, Attn: Michael D. Sirota (msirota@coleschotz.com) and Ryan Jareck (rjareck@coleschotz.com); (vi) the Office of the United States Trustee: 920 West Riverside, Room 593, Spokane, WA 99201, Attn: Gary Dyer (Gary.W.Dyer@doj.gov); and (vii) Counsel to the Official Committee of Unsecured Creditors: Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, Attn: Andrew Sherman (asherman@sillscummis.com) and Boris Mankovetskiy (bmankovetskiy@sillscummis.com) (collectively, the "Notice Parties"). If a Sale Objection is not filed and served on or before the Sale Objection Deadline, the objecting party shall be barred from objecting to the Sale and shall not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

14. The Sale Hearing may be adjourned from time to time, after consultation with the Consultation Parties, without further notice to creditors or

9

parties in interest, including by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, and the Debtors shall have the exclusive right, in the exercise of their fiduciary obligations and business judgment, and after consultation with the Consultation Parties, to cancel the Sale at any time subject to the terms of this Order.

15.    The following forms of notice are approved:  (a) the Procedures Notice, in the form substantially similar to that attached hereto as **Exhibit 3** and (b) the Cure Notice, in the form substantially similar to that attached hereto as **Exhibit 4**.

16.    The Debtors shall, within one (1) business day after the entry of this Order, file with the Court and serve a copy of this Order and the Procedures Notice by first class mail, postage prepaid on:  (i) the Notice Parties, (ii) any parties requesting notices in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002, (iii) all Potential Bidders, (iv) all parties known by the Debtors to assert a lien on any of the Assets, (v) all persons known or reasonably believed to have asserted an interest in any of the Assets, (vi) all non-Debtor parties to any Contracts and Leases to be assumed, (vii) the Office of the United States Attorney for the Eastern District of Washington, (viii) the Office of the Washington Attorney General, (ix) the Office of the Washington Secretary of State, (x) all taxing authorities having jurisdiction over any of the Assets, including the US Internal Revenue Service, and (xi) all environmental authorities having jurisdiction over any of the Assets (collectively with the parties specified in this paragraph, the "Procedures Notice Parties").

17.    The Debtors shall file with the Court and serve the Cure Notice (along with a copy of this Motion) upon each counterparty to the Assumed Agreements by no later than **January 3, 2020**.  The Cure Notice will identify the amounts, if any, that the Debtors believe are owed to each counterparty to an Assumed Agreement in order to cure any defaults that exist under such Contract or Lease (the "Cure Amounts").  The Cure Notice shall also state the date, time and place of the Sale

10

US_Active\113755785\V-1

Hearing as well as the date by which any objection to the Cure Amount (an "Assumption Objection") must be filed and served.

18.     To the extent there is a Contract or Lease added to the list of Contracts or Leases to be assumed by the Successful Bidder pursuant to the Successful Bidder's Purchase Agreement selected at the Auction, the Motion constitutes a separate motion to assume and assign that Contract or Lease to the Successful Bidder pursuant to § 365 of the Bankruptcy Code; each such Contract or Lease will be listed on an exhibit to the Successful Bidder's Purchase Agreement, and shall be given a separate Cure Notice filed and served by overnight delivery by the Debtors within five (5) business days of the conclusion of the Auction and announcement of the Successful Bidder(s).

19.     The inclusion of a Contract, Lease, or other agreement on the Cure Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such Contract, Lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

20.     If any counterparty to an Assumed Agreement wishes to file an Assumption Objection, such counterparty must file and serve it so as to be actually received by the Debtors' Counsel and the Notice Parties by no later than: (i) **4:00 p.m. (prevailing Pacific Time) on January 24, 2020,** (ii) such later date otherwise specified in the Cure Notice, or (iii) solely with respect to those counterparties to Assumed Agreements who are not served with a Cure Notice until a date after January 24, 2020, seven (7) days after service by overnight mail of such Cure Notice (the "Assumption Objection Deadline.

21.     To the extent an Assumed Agreement counterparty wishes to object to the Cure Amount, if any, set forth in the Cure Notice, its Assumption Objection must set forth with specificity each and every asserted default in any Contract or Lease

11

and the monetary cure amount asserted by such counterparty to the extent it differs from the amount, if any, specified by the Debtors in the Cure Notice.

22.     Any counterparty to an Assumed Agreement that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of that set forth in the Cure Notice.

23.     If a Contract or Lease is assumed and assigned pursuant to Court order, then except for Disputed Cure Amounts (as defined herein), the Assumed Agreement counterparty shall receive no later than three (3) business days following the closing of the Sale, the Cure Amount, if any, as set forth in the Cure Notice. All Cure Amounts will be funded in accordance with the terms and conditions of the Stalking Horse APA and/or the Purchase Agreement(s), as applicable.

24.     Sale Objections will be resolved by the Court at the Sale Hearing. Assumption Objections will be resolved at the Sale Hearing or such later date as may be agreed to or ordered by the Court. The Debtors shall segregate from the sale proceeds any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties.

25.     The Successful Bidder(s) shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under § 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Agreements, and the failure to provide adequate assurance of future performance to any counterparty to any Assumed Agreements shall not excuse the Successful Bidder(s) from performance of any and all of its obligations pursuant to the Successful Bidder's Purchase Agreement.

26.     Except to the extent otherwise provided in a Successful Bidder's Purchase Agreement, the Debtors and its estate shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Agreements pursuant to § 365(k) of the Bankruptcy Code.

12

US_Active\113755785\V-1

27.     To the extent the provisions of this Order are inconsistent with the provisions of any Exhibit referenced herein or with the Motion, the provisions of this Order shall control.

28.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

29.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

///End of Order///

US_Active\113755785\V-1

PRESENTED BY:

*/s/ Sam J. Alberts*
SAM J. ALBERTS (WSBA #22255)
SAMUEL R. MAIZEL (Admitted *Pro Hac Vice*)
DENTONS US LLP

JAMES L. DAY (WSBA #20474)
THOMAS A. BUFORD (WSBA #52969)
BUSH KORNFELD LLP

*Attorneys for the Chapter 11*
*Debtors and Debtors In Possession*

14

## Exhibit 1

### (Bidding Procedures)

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") (i) to be employed in connection with the sale or sales of, or other acquisition transactions for (each a "Sale"), substantially all of the Debtors' assets (the "Assets"), in connection with these Chapter 11 bankruptcy cases (the "Cases") pending in the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court") jointly administered as Case No. 19-01189-11; (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined herein); (iii) the process for negotiating the bids received; (iv) the process by which the Debtors are authorized to conduct the auction ("Auction") for the Sale of Purchased Assets (as defined herein), after consultation with the Consultation Parties (as defined herein); (v) the procedure for the ultimate selection of any Successful Bidder and Back-Up Bidder (each as defined herein); and (vi) the process for approval of a potential Sale at a Sale Hearing (each as defined herein).

On December ___, 2019, the Bankruptcy Court entered an order [Docket No. ___] (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to solicit bids and approved Bidding Procedures. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

If the Debtors receive one or more acceptable offers that seek stalking horse status (as determined by the Debtors after consultation with the Consultation Parties), the Debtors reserve the right to seek Bankruptcy Court approval, with notice and an opportunity for objections, and a hearing, if necessary, of one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser") to acquire some or all of the Assets pursuant to a purchase agreement between the Debtors and the Stalking Horse Purchaser (each a "Stalking Horse Agreement") in accordance with the procedures set forth in the Bidding Procedures Order. Notwithstanding the selection of any Stalking Horse Purchaser, the Debtors will continue to solicit bids through the Bid Deadline (as defined herein).

# I.    <u>ASSETS TO BE SOLD</u>

The Debtors shall offer for sale any or all of the Assets. Potential bidders may bid on any combination of the Assets, including all of the Assets.

# II.    <u>THE BID PROCEDURES</u>

In order to ensure that the Debtors receive the highest and best value for the Assets, they intend to hold a sale process for the Assets pursuant to the procedures and on the timeline proposed herein.

## A.    Provisions Governing Qualifications of Bidders

1.    Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, prior to the Bid Deadline (as defined herein), each person who wishes to participate in the bidding process (a "<u>Potential Bidder</u>") must deliver the following to Counsel to the Debtors (as defined in paragraph II.D.10 herein), which will then deliver the same to the Consultation Parties, referred to as a "<u>Potential Bid</u>:"[1]

     a.   a written disclosure of the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid; and

     b.   an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtors, the Investment Banker (as defined herein) or any other agent authorized by the Debtors to a Potential Bidder) in form and substance satisfactory to the Debtors, after consultation with the Consultation Parties and, which may inure to the benefit of any purchaser of the Assets; without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions.

2.    A Potential Bidder that (a) delivers the documents and information described below, (b) submits a Qualified Bid and (c) the Debtors determine in their

---

[1] The Consultation Parties means 1) JMB, the DIP Lender, 2) UMB Bank, N.A., as indenture trustee, 3) Lapis Advisers, LP, as agent, and 4) the Committee (each a "<u>Consultation Party</u>"). Each Consultation Party retains the right to object to any decisions of the Debtors, without regard to whether or not the Debtors consulted with that Consultation Party pursuant to these bid procedures.

2

US_Active\113755645\V-2

reasonable business judgment, after consultation with their advisors and the Consultation Parties, is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale, will be deemed a "Qualified Bidder." The Debtors will limit access to due diligence to those parties they believe, after consultation with the Consultation Parties, in the exercise of their reasonable judgment, are pursuing the transaction in good faith.

3. As promptly as practicable after a Potential Bidder delivers all of the materials required below, and the required documents governing Qualified Bids set forth below, the Debtors will determine, after consultation with the Consultation Parties, whether the Potential Bidder is a Qualified Bidder and notify such bidder of same.

4. In the event that any Consultation Party or a member of the Official Committee of Unsecured Creditors appointed in these Cases (the "Committee") or an affiliate of any of the foregoing participates as a potential purchaser in the sales process, any obligation of the Debtors to consult with that party is released and such party shall cease to be a Consultation Party unless and until any such party withdraws as a potential purchaser. If a member of the Committee participates as a potential purchaser in the Sale process, the Committee shall exclude that member from any discussions related to or participation in the Committee's participation in the Sale process, unless and until the Committee member irrevocably withdraws from the Sale process.

## B. Due Diligence

5. The Debtors will afford any Potential Bidder such due diligence access or additional information as the Debtors, after consultation with their advisors and the Consultation Parties, deem appropriate in their reasonable discretion. The due diligence period shall extend through and including the Bid Deadline; provided, however, that any Qualified Bid (defined herein) submitted shall be irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or the Back-Up Bidder (both as defined herein) in which case such offer is formal, binding and unconditional and, in the case of the Back-Up Bidder, is irrevocable until the earlier of (i) the closing of the Sale with the Successful Bidder, or (ii) the date that is thirty (30) days after entry of the Sale Order.

US_Active\113755645\V-2

## C.  Provisions Governing Qualified Bids

6.  Except as otherwise agreed by the Debtors after consultation with the Consultation Parties, a bid submitted will be considered a Qualified Bid only if the bid submitted by a Potential Bidder and complies with all of the following (a "Qualified Bid"):

a. it states (i) the purchase price (the "Purchase Price") to be paid by such Potential Bidder for the Purchased Assets, including what amount is to be paid in cash and what amount, if any, constitutes a credit bid, (ii) identifies the liabilities proposed to be paid or assumed by the Potential Bidder, (iii) allocates the Purchase Price among the proposed Purchased Assets[2], (iv) whether the bid is contingent upon the bidder acquiring all of the Purchased Assets listed in the bid or if the allocated Purchase Price can be treated as a stand-alone bid for the appropriate assets, and (v) that the Potential Bidder shall close the purchase within five (5) business days following the satisfaction or waiver of the conditions to closing set forth in the Potential Bidder's Purchase Agreement (as defined herein);

b. it identifies with particularity the portion of the Assets that the Potential Bidder is offering to purchase and shall specify the following items to be included in a sale transaction (collectively the "Purchased Assets"):

i. the Assets to be acquired including, but not limited to, real estate, plant, property and equipment, inventory, and accounts receivable;

ii. if the bidder intends to acquire the Medicare and Medicaid provider agreements; and

iii. any contracts or leases the bidder intends to assume, including provider agreements, payor contracts and any material vendor contracts along with any associated cure costs;

c. it includes a signed writing that the Potential Bidder's offer is formal, binding and unconditional and is irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or the Back-Up Bidder in which case such offer is formal, binding and unconditional and, in the case of the

---

[2]  Any allocations set forth in any bid submitted under these Bidding Procedures shall not be binding the the Consultation Parties for any purpose in the Chapter 11 Cases.

4

Back-Up Bidder, is irrevocable until the earlier of (i) the closing of the Sale with the Successful Bidder, or (ii) the date that is thirty (30) days after entry of the Sale Order;

d. it includes confirmation that there are no conditions precedent to the Potential Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

e. it sets forth each regulatory and third-party approval required for the Potential Bidder to consummate the transaction and the time period within which the Potential Bidder expects to receive such approvals and establishes a substantial likelihood that the Potential Bidder will obtain such approvals by the stated time period (including, to the extent practicable, by submitting copies of draft or filed applications, as applicable, for all such approvals, provided however, that the time periods to obtain each such approval must be reasonable). A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel (who will, in turn, consult with counsel to the Consultation Parties) to discuss and explain such Potential Bidder's analysis, strategy, and timeline for securing any such approvals as soon as reasonably practicable;

f. it includes a duly authorized and executed copy of a purchase or acquisition agreement ("Purchase Agreement"), which should use the "Form Purchase Agreement" (defined as Exhibit [ ] attached hereto) as a template and should provide a redline against the Form Purchase Agreement, and which purchase or acquisition agreement should include the Purchase Price for some or all of the Assets expressed in U.S. Dollars, together with all exhibits and schedules thereto;

g. to the extent a Potential Bidder proposes to acquire any asset(s) currently listed as an "Excluded Asset" in section 1.8 of the Form Purchase Agreement, it states with particularity which previously Excluded Asset(s) such Potential Bidder proposes to acquire and provides a separate allocation of the Purchase Price for each such previously Excluded Asset;

h. it includes written evidence of a firm, irrevocable commitment for financing or other evidence of ability to consummate the proposed transaction, that will allow the Debtors, after consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transaction contemplated by the Potential Bidder's Purchase Agreement, including evidence of availability in cash, or a

5

binding commitment for availability in cash, of an amount sufficient to complete the proposed purchase of the Purchased Assets;

i. it identifies with particularity all contracts and leases the Potential Bidder wishes to have assumed and assigned to it, and whether any cure costs required to be paid to assume and assign such contracts and leases will be the responsibility of the Potential Bidder;

j. it includes written evidence that the Debtors may reasonably conclude, after consultation with their advisors and the Consultation Parties, demonstrates that the Potential Bidder has the necessary financial wherewithal to timely consummate a Sale. Such information must include the following:

i. contact names and numbers for verification of financing sources;

ii. written evidence of the Potential Bidder's internal resources and proof of any debt funding commitments from a recognized banking institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Potential Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Potential Bid, in each case, as are needed to close the Sale;

iii. the Potential Bidder's most current audited (if any) and latest unaudited financial statements or, if the Potential Bidder is an entity formed for the purpose of making a Potential Bid, the current audited (if any) and latest unaudited financial statements of the equity holder(s) of the Potential Bidder or such other form of financial disclosure, and a guaranty from such equity holder(s);

iv. a description of the Potential Bidder's *pro forma* capital structure; and

v. any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, after consultation with the Consultation Parties, demonstrating that such Potential Bidder has the ability to promptly close the Sale;

k. it contains sufficient information that can be publicly filed providing adequate assurance of future of future performance with respect to all executory contracts and unexpired leases to be assumed and assigned contracts and leases; in such Sale;

US_Active\113755645\V-2

l.  to the extent the Potential Bidder is a newly formed or special purpose entity, include a form of credit support reasonably acceptable to the Debtors, after consultation with the Consultation Parties, of the Potential Bidder's obligations under the Purchase Agreement by a creditworthy affiliate of the Potential Bidder;

m.  it includes an acknowledgement and representation that the Potential Bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Debtors' Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Potential Bidder's Purchase Agreement; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid, or any claim under § 503(b)(3)(D) of the Bankruptcy Code, unless such expense reimbursement, break-up fee or similar type of payment has previously been approved by the Bankruptcy Court in the context of the Debtors' selection of a Stalking Horse Bid;

n.  it includes evidence, in form and substance reasonably satisfactory to the Debtors, after consultation with the Consultation Parties, of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Potential Bidder's Purchase Agreement;

o.  it is accompanied by a good faith deposit, in the form of a wire transfer (to a bank account specified by the Debtors), certified check or such other form acceptable to the Debtors, after consultation with the Consultation Parties, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to the lesser of $5,000,000 or ten percent (10%) of the cash portion of the Purchase Price (the "Deposit"), which Deposit shall be forfeited if such bidder is the Successful Bidder and breaches its obligation to close or is a Back-Up Bidder and breaches its obligation to close;

p.  it contains a detailed description of how the Potential Bidder intends to treat current employees of the Debtors, if applicable;

US_Active\113755645\V-2

q. it is for cash or credit bid, or a combination thereof, and not subject to any contingencies, including without limitation, contingencies related to financing, due diligence or approvals by third parties, and if the Potential Bidder is a secured creditor of the Debtors with any portion of the Purchase Price constituting a credit bid such credit bid must contain evidence of the amount, priority and basis for such creditor's secured claim against the Debtors;

r. it must fully disclose any connections or agreements with the Debtors or their affiliates, any other known Qualified Bidder and/or any officer or director of the Debtors or their affiliates;

s. in the event that there is a Stalking Horse Purchaser, and the Potential Bidder wishes to bid on the same Assets that are included in the Stalking Horse Agreement, the aggregate consideration proposed by the Potential Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, plus (B) any break-up fee, expense reimbursement, or other bid protection provided under the Stalking Horse Agreement, plus (C) the lesser of five percent (5%) of the purchase price contained in the Stalking Horse Agreement and $250,000, subject to any modification of this subsection based on the net sale proceeds available to the Debtors' estates from the Stalking Horse Purchaser's bid or the applicable Potential Bidder's bid, as determined by the Debtors, after consultation with the Consultation Parties;

t. it contains such other information reasonably requested by the Debtors;

u. it is received prior to the Bid Deadline; and

v. it provides for the Potential Bidder to serve as the Back-Up Bidder if the Potential Bidder's bid is the next highest and best bid after the Successful Bid, in accordance with the terms of the Bidding Procedures.

7. Each Qualified Bidder must (i) submit to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, the Bidding Procedures, the Auction, any Purchase Agreement, or the construction and enforcement of documents relating to any Sale, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtor, the Bidding Procedures, the Auction, any Purchase Agreement, or the construction and enforcement of documents relating to any Sale, and (iii) commit to the entry of a final order or judgment in any way related to the Debtors, the Bidding

8

Procedures, the Auction, any Purchase Agreement, or the construction and enforcement of documents relating to any Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

8.     The Debtors, after consultation with the Consultation Parties, may qualify any bid as a Qualified Bid that meets the requirements set forth in these Bid Procedures.

9.     No later than one day following the expiration of the Bid Deadline, the Debtors, after consultation with the Consultation Parties, shall notify all Potential Bidders in writing (i) whether any bids constitute Qualified Bids, (ii) with respect to each Potential Bidder that submitted a bid, whether such Potential Bidder's bid constitutes a Qualified Bid, and (iii) with respect to each Potential Bidder that submitted a bid, whether such Potential Bidder is deemed a Qualified Bidder.

## D.    Bid Deadline

10.    A Potential Bidder, other than a Stalking Horse Purchaser, that desires to make a bid will deliver written copies of its bid to Counsel to the Debtors: Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017, Attn: Samuel R. Maizel (samuel.maizel@dentons.com) and Sam J. Alberts (sam.alberts@dentons.com), so as to be received by the same not later than **January 30, 2020, at 4:00 p.m. (prevailing Pacific Time)** (the "Bid Deadline"). The Debtors will then distribute those bids to the following parties (collectively, the "Notice Parties"): (i) the Debtors' "Investment Banker": Piper Jaffray, Teri Stratton, Attn: teri.l.stratton@pjc.com; (ii) Counsel to JMB, the DIP Lender: Arent Fox, LLP, 1301 Avenue of the Americas, NY 10019, Attn: Robert Hirsh (robert.hirsh@arentfox.com) and Jordana Renert (jordana.renert@arentfox.com); (iii) Counsel to UMB and Lapis: Mintz Levin, One Financial Center, Boston, MA 02111, Attn: William Kannel (wkannel@mintz.com) and Ian Hammel (iahammel@mintz.com); (iv) Counsel to Lapis: Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019-6079, Attn: Michael D. Sirota (msirota@coleschotz.com) and Ryan Jareck (rjareck@coleschotz.com); (v) the U.S. Trustee: 920 West Riverside, Room 593, Spokane, WA 99201, Attn: Gary Dyer (Gary.W.Dyer@doj.gov); and (vi) Counsel to the Committee: Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, Attn: Andrew Sherman

US_Active\113755645\V-2

(asherman@sillscummis.com) and Boris Mankovetskiy (bmankovetskiy@sillscummis.com).

## E.    Credit Bidding

11.    Any party with a valid, properly perfected security interest in any of the Assets may credit bid for the Assets in connection with the Sale pursuant to § 363(k).

12.    JMB, the DIP Lender, shall be deemed a Qualified Bidder for purposes of participation in the Auction and if JMB elects to submit a credit bid, such credit bid shall not be subject to a Challenge (as defined herein).  For the avoidance of doubt, such credit bid shall not be subject to a Challenge or compliance with the requirements outlined in paragraphs 14, 15, 16 or 17.

13.    UMB Bank, N.A. as indenture trustee (the "Bond Trustee") and Lapis Advisors, L.P. as agent ("Term Loan Agent," and together with the Bond Trustee, the "Lenders") shall be deemed a Qualified Bidder for purposes of the participation in the Auction, subject to the Lenders' compliance with paragraphs 14 and 15 herein, *provided, however*, that the credit bid portion of their bid, if any, shall be subject to the Lender Challenge provisions set forth herein.

14.    Any party that wishes to submit a credit bid (a "Credit Bid Party", and collectively, "Credit Bid Parties") either as a component or as the entirety of the consideration for its bid shall identify the amount of the secured claim and the nature, extent and priority of the lien upon which its credit bid is premised. Each Credit Bid Party agrees to provide the Debtors (which will then provide that information to the Consultation Parties) with documentation to evidence the amount, nature, extent, validity and perfection of such claim and lien to the extent it has not already done so.

15.    Each Credit Bid Party must include in its bid either (i) provisions for the satisfaction of any secured claims that are senior to the secured claim that forms the basis of the credit bid (a "Senior Secured Claim") or (ii) evidence that the holder of any Senior Secured Claim has affirmatively consented to any other treatment of its Senior Secured Claim.

US_Active\113755645\V-2

16.   All credit bids must comply with § 363(k), and, except with respect to JMB and the Lenders, all liens upon which any credit bids are based shall be subject to objection and challenge by the Committee (a "Challenge") prior to the Auction; *provided, however*, that the credit bid portion of any bid submitted by the Lenders shall be subject to paragraph 17 below.

17.   Notwithstanding anything contained herein or in the Bidding Procedures Order, with respect to the Lenders (a "Lender Challenge"), the attachment, perfection and/or amount of the Lenders' asserted liens and/or security interests shall be subject to objection and challenge by the Committee prior to the Bid Deadline (a "Lien Challenge") and shall not otherwise be subject to later challenge by the Committee. Except as set forth above with respect to a Lien Challenge, nothing in these Bidding Procedures or the Bidding Procedures Order shall in any way limit the rights of the Committee to assert any other challenges, claims or causes of action against the Lenders, including those arising under chapter 5 of the Bankruptcy Code to the extent not constituting a Lien Challenge, and all such other claims and causes of action are expressly reserved and preserved (each an "Additional Challenge"). To the extent the Lenders are a Successful Bidder, any Sale to the Lenders shall be without prejudice to and have no effect on any Additional Challenge.

## F.   Evaluation of Competing Bids

18.   A Qualified Bid will be valued based upon several factors including, without limitation, (1) the amount of such bid, (2) the risks and timing associated with consummating such bid, (3) the Qualified Bidder's plans and commitment as to continuation of the operation of the healthcare facilities subject to the Qualified Bid, (4) the Qualified Bidder's plans and commitments as to retention and treatment of Debtors' employees, and (5) any other factors deemed relevant by the Debtors in their reasonable discretion, after consultation with the Consultation Parties.

## G.   No Qualified Bids

19.   If the Debtors receive one or less Qualified Bid for any or all Assets, the Debtors will not hold an Auction as to such Assets.

## H.   Auction Process

US_Active\113755645\V-2

20.    If the Debtors receive more than one Qualified Bid for the same Assets, the Debtors will conduct an Auction of Purchased Assets, which shall be transcribed, at the Hilton Garden Inn, Yakima, Washington, on **February 5, 2020, at 10:00 a.m. (prevailing Pacific Time)**, or at such other location as shall be timely communicated to all entities entitled to attend the Auction.  Except as otherwise provided in these Bidding Procedures, the Auction shall run in accordance with the following procedures:

a. only the Debtors, Qualified Bidders, and the Notice Parties, and their respective attorneys and advisors may attend the Auction;

b. only the Qualified Bidders will be entitled to make any Subsequent Bids (defined herein) at the Auction;

c. each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

d. at least one (1) business day prior to the Auction, each Qualified Bidder must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the conclusion of the Sale Hearing, unless such Qualified Bid is selected as a Successful Bid or Back Up Bid, which shall remain binding as provide for herein;

e. at least one (1) day prior to the Auction, Debtors will provide copies of the Qualified Bid or combination of Qualified Bids that the Debtors believe in their reasonable discretion, after consultation with the Consultation Parties, is the highest or best bid (the "Starting Bid")[3] to Qualified Bidders and the Consultation Parties;

f. all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

---

[3] The Consultation Parties will be consulted on the Starting Bid.

US_Active\113755645\V-2

g. the Debtors, after consultation with their advisors and the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code or Bankruptcy Rules, and (ii) disclosed to each other Qualified Bidder at the Auction;

h. bidding at the Auction will begin with the Starting Bid and the Qualified Bidders may submit subsequent bids (each a "Subsequent Bid") in increments of at least (i) $50,000 above the Starting Bid or Leading Bid (as defined below), as applicable, in the event such Starting Bid or Leading Bid is less than $1,000,000, (ii) $250,000 above the Starting Bid or Leading Bid, as applicable, in the event such Starting Bid or Leading Bid is between $1,000,000 and $5,000,000, or (iii) $500,000 above the Starting Bid or Leading Bid, as applicable, in the event such Starting Bid or Leading Bid is greater than $5,000,000, considering that any bid by a Stalking Horse Purchaser shall be deemed to include the sum of the amount of any break-up fees, expense reimbursement, or other bid protections available to such Stalking Horse Purchaser. The Debtors retain the right to adjust the incremental bid amount during the Auction, as appropriate, in their discretion, after consultation with the Consultation Parties; and

i. after the first round of bidding and between each subsequent round of bidding, the Debtors, after consultation with the Consultation Parties, shall announce the bid that it believes to be the highest or otherwise better offer with respect to the Assets subject thereto (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

## I. Selection of Successful Bid

21. After bidding has ceased, the Debtors, after consultation with its advisors and the Consultation Parties, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer or offers are the highest or otherwise best from among the Qualified Bidders submitted at the Auction (one or more such bids, collectively the "Successful Bid" and the bidder(s) making such bid, collectively, the "Successful Bidder"), and communicate to the Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. The Successful Bid may consist of a single Qualified Bid or multiple Qualified Bids. The determination of the Successful Bid by the Debtors, after

consultation with the Consultation Parties, shall be subject to approval by the Bankruptcy Court.

22. Within one (1) business day following the conclusion of the Auction, the Debtors shall file a notice identifying the Successful Bidder with the Bankruptcy Court and shall serve such notice by fax, email, or overnight mail to all counterparties whose contracts or leases are to be assumed and assigned.

23. Unless otherwise agreed to by the Debtors, after consultation with the Consultation Parties, and the Successful Bidder, within two (2) business days after the conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

24. The Debtors will sell the Purchased Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing, approval of the Washington Attorney General, if necessary, and satisfaction of any other closing conditions set forth in the Successful Bidder's Purchase Agreement.[4]

## J.    Deposits

25. All deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder no later than three (3) business days following the conclusion of the Sale Hearing. The deposit of the Back-up Bidder

---

[4] Pursuant to the agreement between Piper Jaffray and the Debtors, Piper Jaffray is entitled to a restructuring fee (the "Restructuring Fee") or a financing fee (the "Financing Fee") equal to $1,500,000, payable promptly upon consummation of a Restructuring or Financing, plus a bond issuance fee ("Bond Issuance Fee") equal to an underwriting discount of two percent (2%) of the gross proceeds received by the Debtors on all sales of the Securities payable at closing, as appropriate. *See Debtors' Application for Entry of an Order Authorizing Employment of Piper Jaffray & Co., as Investment Banker to the Debtors Nunc Pro Tunc to July 2, 2019* [Docket No. 394 at ¶ 16]. This fee cannot be paid absent Bankruptcy Court approval, but the Debtors intend to escrow the funds after payment by the Successful Bidder until approval is obtained.

14

shall be returned on the earlier of (i) the closing of the Sale with the Successful Bidder, or (ii) the date that is thirty (30) days after entry of the Sale Order.

26. Within one business day after the conclusion of the Auction, the Successful Bidder(s) and any Back-Up Bidder(s) shall deliver an additional deposit payment so that each such bidder's total deposit amount is equal to ten percent (10%) of the cash amount of the Successful Bidder's bid or Back-Up Bidder's bid as applicable. The deposit of the Successful Bidder or, if appropriate, the Back-up Bidder, shall be applied to the Purchase Price for the Sale.

27. In the case of a breach or failure to perform on the part of the Successful Bidder (including any Back-up Bidder designated as a Successful Bidder), the Debtors' remedies include but are not limited to the forfeiture of the defaulting Successful Bidder's deposit.

## K. Back-Up Bidder

28. If an Auction is conducted, the Qualified Bidder or Qualified Bidders with the next highest or otherwise best Qualified Bid, as determined by the Debtors in the exercise of their business judgment and after consultation with the Consultation Parties, at the Auction shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until the earlier of (i) the closing of the Sale with the Successful Bidder, or (ii) the date that is thirty (30) days after entry of the Sale Order. If the Successful Bidder fails to consummate the approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, after consultation with the Consultation Parties, to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court.

## L. Sale Hearing

29. The Debtors will seek entry of the Sale Order from the Bankruptcy Court at the Sale Hearing to begin on **February 7, 2020, at 10:00 a.m. (prevailing Pacific Time)** (or at another date and time convenient to the Bankruptcy Court) to approve and authorize the sale transaction to the Successful Bidder(s) on terms and conditions determined in accordance with the Bidding Procedures (the "Sale Hearing").

US_Active\113755645\V-2

## III.  Reservation

The Debtors reserve the right, as they may determine in their discretion and in accordance with their business judgment to be in the best interest of their estates, after consultation with their advisors and the Consultation Parties, to: (i) modify the Bidding Procedures to discontinue incremental bidding and then require that any and all bidders or potential purchasers must submit their sealed, highest and best offer for the Assets; (ii) determine which Qualified Bid is the highest or otherwise best bid and which is the next highest or otherwise best bid; (iii) waive terms and conditions set forth herein with respect to all Potential Bidders; (iv) impose additional terms and conditions with respect to all Potential Bidders; (v) extend the deadlines set forth herein; (vi) continue or cancel the Auction and/or Sale Hearing in open Bankruptcy Court without further notice; and (vii) implement additional procedural rules that the Debtors determine, in their reasonable business judgment and after consultation with their advisors and the Consultation Parties, will better promote the goals of the bidding process; provided that such modifications are (a) not inconsistent with the Bankruptcy Code and Bankruptcy Rules; and (b) disclosed to each Qualified Bidder participating in the Auction.

US_Active\113755645\V-2

# Exhibit 2

## (Significant Dates)

### SIGNIFICANT DATES

- **Service of Notice of Sale Procedures, Auction and Sale Hearing:**
  December 11, 2019
- **Service of Assumption/Cure Notice:** January 3, 2020
- **Assumption/Cure Objection Deadline:** January 24, 2020, at 4:00 p.m.
  (prevailing Pacific Time)
- **Stalking Horse Agreement Objection Deadline:**
  January 29, 2020, at 10:00 a.m.
  (prevailing Pacific Time)
- **Stalking Horse Agreement Hearing:** January 29, 2020, at 4:00 p.m.
  (prevailing Pacific Time)
- **Bid Deadline:** January 30, 2020, at 4:00 p.m.
  (prevailing Pacific Time)
- **Auction:** February 5, 2020, at 10:00 a.m.
  (prevailing Pacific Time)
- **Sale Objection Deadline:** February 6, 2020, at 4:00 p.m.
  (prevailing Pacific Time)
- **Sale Hearing:** February 7, 2020, at 10:00 a.m.
  (prevailing Pacific Time)

# Exhibit 3

## (Procedures Notice)

US_Active\113756317\V-1

JAMES L. DAY (WSBA #20474)
THOMAS A. BUFORD (WSBA #52969)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel: (206) 292-2110
Email: jday@bskd.com
tbuford@bskd.com

SAMUEL R. MAIZEL (Admitted *Pro Hac Vice*)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300
Fax: (213) 623-9924
Email: samuel.maizel@dentons.com

SAM J. ALBERTS (WSBA #22255)
DENTONS US LLP
1900 K. Street, NW
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756
Email: sam.alberts@dentons.com

HONORABLE WHITMAN HOLT

*Attorneys for the Chapter 11 Debtors and Debtors In Possession*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>ASTRIA HEALTH, *et al.*,<br><br>Debtors and Debtors in Possession.[1] | Chapter 11<br>Lead Case No. 19-01189-11<br>Jointly Administered<br><br>**NOTICE OF SALE PROCEDURES, AUCTION DATE, AND SALE HEARING** |

---

[1] The Debtors, along with their case numbers, are as follows: Astria Health (19-01189-11), Glacier Canyon, LLC (19-01193-11), Kitchen and Bath Furnishings, LLC (19-01194-11), Oxbow Summit, LLC (19-01195-11), SHS Holdco, LLC (19-01196-11), SHC Medical Center - Toppenish (19-01190-11), SHC Medical Center - Yakima (19-01192-11), Sunnyside Community Hospital Association (19-01191-11), Sunnyside Community Hospital Home Medical Supply, LLC (19-01197-11), Sunnyside Home Health (19-01198-11), Sunnyside Professional Services, LLC (19-01199-11), Yakima Home Care Holdings, LLC (19-01201-11), and Yakima HMA Home Health, LLC (19-01200-11).

**PLEASE TAKE NOTICE** that Astria Health ("Astria") and the above-referenced affiliated debtors (collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Chapter 11 Cases"), by and through the undersigned counsel, moved (the "Motion") the Court for entry of an order pursuant to §§ 105(a), 363(b) and 365 of title 11 of the United States Code (the "Bankruptcy Code"),[2] Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 5005-1, 6004-1, 6006-1, 9013-1, and 9029-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Washington (the "LBR") for: (i) an order substantially in the proposed form attached to the Motion as **Exhibit A** (the "Bidding Procedures Order") (a) approving procedures in connection with the sale of any or all of the Assets (the "Bidding Procedures," which are attached as **Exhibit 1** to the proposed Bidding Procedures Order); (b) scheduling the related auction and hearing to consider approval of such sale; (c) approving procedures related to the assumption of certain executory contracts and unexpired leases; (d) approving the form and manner of notice thereof; and (ii) an order, substantially in the proposed form attached to the Motion as **Exhibit B** (the "Sale Order") (a) authorizing the sale of

---

[2] All references to "§" herein are to sections of the Bankruptcy Code.

US_Active\113756317\V-1

such assets free and clear of liens, claims, encumbrances, and other interests, except as otherwise may be provided in a purchase agreement memorializing such a sale (a "Purchase Agreement") and (b) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto; and, in each case, (iii) granting such other and further relief as is just and proper under the circumstances.[3] The Debtors seek, among other things, to sell some or substantially all of the Debtors' assets (the "Assets") to the successful bidder(s) (the "Successful Bidder"), at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to §§ 363 and 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, on December ___, 2019, the Bankruptcy Court entered an order [Docket No. ___] (the "Bidding Procedures Order") approving the Motion and the bidding procedures (the "Bidding Procedures"), which set the key dates and times related to the Sale of the Assets. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures. To the extent that there are any inconsistencies between the Bidding Procedures Order (including the Bidding Procedures) and the summary

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

US_Active\113756317\V-1

description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, an auction (the "Auction") to sell the Assets will be conducted on **February 5, 2020, at 10:00 a.m. (prevailing Pacific Time)** at the Hilton Garden Inn, Yakima, Washington, 401 E. Yakima Avenue, Yakima, WA 98901 or at such other place, date, and time as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction. Within twenty four (24) hours of the conclusion of the Auction, the Debtors shall file a notice with the Bankruptcy Court identifying the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Assets to the Successful Bidder (the "Sale Hearing") before the Honorable Whitman Holt, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of Washington, 402 East Yakima Avenue, Second Floor Courtroom, Yakima, WA 98901, on **February 7, 2019, at 10:00 a.m. (prevailing Pacific Time),** or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing. Objections to the Sale shall be filed with the Bankruptcy Court

US_Active\113756317\V-1

and served so as to be received no later than **4:00 p.m. (prevailing Pacific Time) on February 6, 2020** by i) Counsel to the Debtors:  Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017, Attn:  Samuel R. Maizel (samuel.maizel@dentons.com) and Sam J. Alberts (sam.alberts@dentons.com); ii) the Debtors' Investment Banker:  Piper Jaffray, Teri Stratton, Attn: teri.l.stratton@pjc.com; (iii) Counsel to JMB Capital Partners Lending, LLC:  Arent Fox, LLP, 1301 Avenue of the Americas, NY 10019, Attn:  Robert Hirsh (robert.hirsh@arentfox.com) and Jordana Renert (jordana.renert@arentfox.com); (iv) Counsel to UMB Bank, N.A. and Lapis Advisors, LP:  Mintz Levin, One Financial Center, Boston, MA 02111, Attn:  William Kannel (wkannel@mintz.com) and Ian Hammel (iahammel@mintz.com); (v) Counsel to Lapis Advisors, LP:  Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019-6079, Attn:  Michael D. Sirota (msirota@coleschotz.com) and Ryan Jareck (rjareck@coleschotz.com); (vi) Office of the United States Trustee:  920 West Riverside, Room 593, Spokane, WA 99201, Attn:  Gary Dyer (Gary.W.Dyer@doj.gov); and (vii) Counsel to the Official Committee of Unsecured Creditors:  Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, Attn:  Andrew Sherman (asherman@sillscummis.com) and Boris Mankovetskiy (bmankovetskiy@sillscummis.com) (collectively, the "Notice Parties").

**PLEASE TAKE FURTHER NOTICE** that this Notice of the Auction and Sale Hearing is subject to the full terms and conditions of the Motion, Bidding Procedures Order and Bidding Procedures, which Bidding Procedures Order shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Any party that has not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy of the Motion, the Bidding Procedures Order (including all exhibits thereto), and the Bidding Procedures, may make such a request in writing to Dentons US LLP, Attn: Samuel R. Maizel, 601 S. Figueroa St., Suite 2500, Los Angeles, CA 90017 or by emailing samuel.maizel@dentons.com or calling (301) 892-2910, or Sam J. Alberts, 1900 K Street, NW, Washington, DC 20036 or by emailing sam.alberts@dentons.com or calling (202) 408-7004.

Dated:

                                         DENTONS US LLP
                                         SAMUEL R. MAIZEL
                                         SAM J. ALBERTS

                                         By   */s/ Samuel R. Maizel*
                                              SAMUEL R. MAIZEL

                                         Attorneys for Astria Health

# Exhibit 4

## (Cure Notice)

US_Active\113755970\V-1

JAMES L. DAY (WSBA #20474)
THOMAS A. BUFORD (WSBA #52969)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel: (206) 292-2110
Email: jday@bskd.com
tbuford@bskd.com

SAMUEL R. MAIZEL (Admitted *Pro Hac Vice*)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300
Fax: (213) 623-9924
Email: samuel.maizel@dentons.com

SAM J. ALBERTS (WSBA #22255)
DENTONS US LLP
1900 K. Street, NW
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756
Email: sam.alberts@dentons.com

*Attorneys for the Chapter 11 Debtors and
Debtors In Possession*

HONORABLE WHITMAN HOLT

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>ASTRIA HEALTH, *et al.*,<br><br>Debtors and Debtors in Possession.[1] | Chapter 11<br>Lead Case No. 19-01189-11<br>Jointly Administered<br><br>**NOTICE TO COUNTERPARTIES TO CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS THAT MAY BE ASSUMED AND ASSIGNED PURSUANT TO § 365 OF THE BANKRUPTCY CODE** |

---

[1] The Debtors, along with their case numbers, are as follows: Astria Health (19-01189-11), Glacier Canyon, LLC (19-01193-11), Kitchen and Bath Furnishings, LLC (19-01194-11), Oxbow Summit, LLC (19-01195-11), SHS Holdco, LLC (19-01196-11), SHC Medical Center - Toppenish (19-01190-11), SHC Medical Center - Yakima (19-01192-11), Sunnyside Community Hospital Association (19-01191-11), Sunnyside Community Hospital Home Medical Supply, LLC (19-01197-11), Sunnyside Home Health (19-01198-11), Sunnyside Professional Services, LLC (19-01199-11), Yakima Home Care Holdings, LLC (19-01201-11), and Yakima HMA Home Health, LLC (19-01200-11).

2

**PLEASE TAKE NOTICE** that Astria Health ("Astria") and the above-referenced affiliated debtors (collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Chapter 11 Cases"), by and through the undersigned counsel, moved (the "Motion")[2] the Court for entry of an order pursuant to §§ 105(a), 363(b) and 365 of title 11 of the United States Code (the "Bankruptcy Code"),[3] Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 5005-1, 6004-1, 6006-1, 9013-1, and 9029-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Washington (the "LBR") for: (i) an order substantially in the proposed form attached to the Motion as **Exhibit A** (the "Bidding Procedures Order") (a) approving procedures in connection with the sale of any or all of the Debtors' assets (the "Bidding Procedures," which are attached as **Exhibit 1** to the proposed Bidding Procedures Order); (b) scheduling the related auction and hearing to consider approval of such sale; (c) approving procedures related to the assumption of certain executory contracts and unexpired leases; (d) approving the form and

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3] All references to "§" herein are to sections of the Bankruptcy Code.

US_Active\113755970\V-1

manner of notice thereof; and (ii) an order, substantially in the proposed form attached to the Motion as **Exhibit B** (the "Sale Order") (a) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and other interests, except as otherwise may be provided in a purchase agreement memorializing such a sale (a "Purchase Agreement") and (b) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto; and, in each case, (iii) granting such other and further relief as is just and proper under the circumstances.

PLEASE TAKE FURTHER NOTICE that, on December __, 2019, the Court entered an Order (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures requested in the Motion, which Bidding Procedures Order governs (i) the bidding process for the sale of substantially all of the Debtors' assets (the "Assets") and (ii) procedures for the assumption and assignment of certain of the Debtors' Contracts and Leases.

PLEASE TAKE FURTHER NOTICE that the Motion also seeks Court approval of the sale (the "Sale") of the Assets to the Successful Bidder(s), free and clear of all liens, claims, interests and encumbrances pursuant to § 363 of the Bankruptcy Code, including the assumption by the Debtors and assignment to the buyer(s) of certain Contracts and Leases pursuant to § 365 of the Bankruptcy Code (the "Assumed Agreements"), with such liens, claims, interests and encumbrances

4

to attach to the proceeds of the Sale with the same priority, validity and enforceability as they had prior to such Sale. Within twenty four (24) hours following the conclusion of the Auction, the Debtors shall file a notice identifying the Successful Bidder(s) with the Bankruptcy Court and serve such notice by fax, email or overnight mail to all counterparties whose Contracts and Leases are to be assumed and assigned. Any counterparty to an Assumed Agreement that wishes to receive such notice by email or fax, must provide their email address or fax number to Dentons US LLP, Attn: Samuel R. Maizel, 601 S. Figueroa St., Suite 2500, Los Angeles, CA 90017 or by emailing samuel.maizel@dentons.com or calling (301) 892-2910, or Sam J. Alberts, 1900 K Street, NW, Washington, DC 20036 or by emailing sam.alberts@dentons.com or calling (202) 408-7004 before the Auction.

**PLEASE TAKE FURTHER NOTICE** that an evidentiary hearing (the "Sale Hearing") to approve the Sale and authorize the assumption and assignment of the Assumed Agreements will be held on **February 7, 2020, at 10:00 a.m. (prevailing Pacific Time)**, before the Honorable Whitman Holt, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of Washington, 402 East Yakima Avenue, Second Floor Courtroom, Yakima, WA 98901. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

US_Active\113755970\V-1

**PLEASE TAKE FURTHER NOTICE** that, consistent with the Bidding Procedures Order, the Debtors may seek to assume a Contract or Lease to which <u>you may be a party</u>. The Assumed Agreements are described on **Schedule A** attached to this Notice. The amount shown on **Schedule A** attached hereto as the "<u>Cure Amount</u>" is the amount, if any, which the Debtors assert is owed to cure any defaults existing under the Assumed Agreement.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Amount shown for the Assumed Agreements on **Schedule A** to which you are a party, you must file in writing with the United States Bankruptcy Court for the Eastern District of Washington, 402 East Yakima Avenue Suite 200, Yakima, WA 98901, an objection on or before **January 24, 2020, at 4:00 p.m. (prevailing Pacific Time)**. Any objection must set forth the specific default or defaults alleged and set forth any cure amount as alleged by you. If a Contract or Lease is assumed and assigned pursuant to a Court order approving the same, then unless you properly file and serve an objection to the Cure Amount contained in this Notice, you will receive at the time of the closing of the sale (or as soon as reasonably practicable thereafter), the Cure Amount set forth herein, if any. Any counterparty to an Assumed Agreement that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of the amount, if any, set forth in the attached **Schedule A**.

US_Active\113755970\V-1

**PLEASE TAKE FURTHER NOTICE** that if you have any other objection to the Debtors' assumption and assignment of the Assumed Agreements to which you may be a party, you also must file that objection in writing no later than **4:00 p.m. (prevailing Pacific Time) on January 21, 2020** provided, however, that if any Successful Bidder is <u>not</u> the Stalking Horse Bidder, any counterparty to an Assumed Agreement may raise an objection to the assumption and assignment of the Assumed Agreement solely with respect to such Successful Bidder's ability to provide adequate assurance of future performance under the Assumed Agreement at the Sale Hearing, or any time before the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that any objection you may file must be served so as to be received by the following parties by the applicable objection deadline date and time: i) Counsel to the Debtors: Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017, Attn: Samuel R. Maizel (samuel.maizel@dentons.com) and Sam J. Alberts (sam.alberts@dentons.com); ii) the Debtors' Investment Banker: Piper Jaffray, Teri Stratton, Attn: teri.l.stratton@pjc.com; (iii) Counsel to JMB Capital Partners Lending, LLC: Arent Fox, LLP, 1301 Avenue of the Americas, NY 10019, Attn: Robert Hirsh (robert.hirsh@arentfox.com) and Jordana Renert (jordana.renert@arentfox.com); (iv) Counsel to UMB Bank, N.A. and Lapis Advisors, LP: Mintz Levin, One Financial Center, Boston, MA 02111, Attn: William Kannel (wkannel@mintz.com)

US_Active\113755970\V-1

and Ian Hammel (iahammel@mintz.com); (v) Counsel to Lapis Advisors, LP: Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor, New York, NY 10019-6079, Attn: Michael D. Sirota (msirota@coleschotz.com) and Ryan Jareck (rjareck@coleschotz.com); (vi) Office of the United States Trustee: 920 West Riverside, Room 593, Spokane, WA 99201, Attn: Gary Dyer (Gary.W.Dyer@doj.gov); and (vii) Counsel to the Official Committee of Unsecured Creditors: Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, Attn: Andrew Sherman (asherman@sillscummis.com) and Boris Mankovetskiy (bmankovetskiy@sillscummis.com) (collectively, the "Notice Parties").

**PLEASE TAKE FURTHER NOTICE** that the Successful Bidder shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under § 365(b) and (f) of the Bankruptcy Code, in connection with the proposed assignment of any Assumed Agreement. The Court shall make its determinations concerning adequate assurance of future performance under the Assumed Agreements pursuant to 11 U.S.C. § 365(b) and (f) at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, in the event that the Debtors and the counterparty cannot resolve the Cure Amount, the Debtors shall segregate from the proceeds of sale any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the

8

parties. Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, except to the extent otherwise provided in the Purchase Agreement with the Successful Bidder(s), pursuant to § 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved of all liability accruing or arising after the effective date of assumption and assignment of the Assumed Agreements.

**PLEASE TAKE FURTHER NOTICE** that nothing contained herein shall obligate the Debtors to assume any Assumed Agreements or to pay any Cure Amount.[4]

PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITH NO FURTHER NOTICE.

---

[4] "Assumed Agreements" are those Contracts and Leases that the Debtors believe may be assumed and assigned as part of the orderly transfer of the Assets; however, the Successful Bidder may choose to exclude certain of the Debtors' Contracts or Leases from the list of Assumed Agreements as part of its Qualifying Bid, causing such Contracts and Leases not to be assumed by the Debtors.

US_Active\113755970\V-1

ANY COUNTERPARTY TO ANY ASSUMED AGREEMENT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE AMOUNT FOR SUCH ASSUMED AGREEMENT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT.

Dated:                                    DENTONS US LLP
                                          SAMUEL R. MAIZEL
                                          SAM J. ALBERTS


                                          By    /s/ Samuel R. Maizel
                                                SAMUEL R. MAIZEL

                                          Attorneys for Astria Health

US_Active\113755970\V-1

**Exhibit A**

**(Assumed Agreements)**

**ASSUMED AGREEMENTS**

**BID PROCEDURES MOTION**

11

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Phone: (213) 623-9300
Fax: (213) 623-9924

BUSH KORNFELD L.L.P
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110

19-01189-WLH11    Doc 794    Filed 12/03/19    Entered 12/03/19 15:57:44    Pg 56 of 75

# EXHIBIT B

**(Sale Order)**

US_Active\113756107\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1
2
3
4
5
6
7
8
9
10
11
12

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

In re:

ASTRIA HEALTH, *et al.*,

Debtors and
Debtors in
Possession.[1]

Chapter 11
Lead Case No. 19-01189-11
Jointly Administered

**ORDER (A) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

---

[1] The Debtors, along with their case numbers, are as follows: Astria Health (19-01189-11), Glacier Canyon, LLC (19-01193-11), Kitchen and Bath Furnishings, LLC (19-01194-11), Oxbow Summit, LLC (19-01195-11), SHS Holdco, LLC (19-01196-11), SHC Medical Center - Toppenish (19-01190-11), SHC Medical Center - Yakima (19-01192-11), Sunnyside Community Hospital Association (19-01191-11), Sunnyside Community Hospital Home Medical Supply, LLC (19-01197-11), Sunnyside Home Health (19-01198-11), Sunnyside Professional Services, LLC (19-01199-11), Yakima Home Care Holdings, LLC (19-01201-11), and Yakima HMA Home Health, LLC (19-01200-11).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

This matter coming before the Court on the motion (the "<u>Motion</u>")[2] of Astria Health ("<u>Astria</u>") and the above-referenced affiliated debtors (collectively, the "<u>Debtors</u>"), the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "<u>Chapter 11 Cases</u>"), for the entry of an order pursuant to §§ 105(a), 363(b) and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"),[3] Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 5005-1, 6004-1, 6006-1, 9013-1, and 9029-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Washington (the "<u>LBR</u>") for:  (i) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and other interests, except as otherwise may be provided in a purchase agreement memorializing such a sale (a "<u>Purchase Agreement</u>"), (ii) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto; and, in each case, and (iii) granting such other and further relief as is just and proper under the circumstances; the Court having reviewed the Motion and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3]  All references to "§" herein are to sections of the Bankruptcy Code.

US_Active\113756107\V-1

19-01189-WLH11    Doc 794    Filed 12/03/19    Entered 12/03/19 15:57:44    Pg 59 of 75

**AND IT IS FURTHER FOUND AND DETERMINED THAT:**

A.     The Debtors' notice of the Bidding Procedures, the Cure Procedures, the Auction and the hearing to approve any sale of the Assets (the "Sale Hearing") was appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

B.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

C.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is **GRANTED** as set forth herein.

2.     All objections and responses to the Motion that have not been overruled, withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby overruled and denied.

3.     Any Successful Bidder's offer for some or all of the Assets, as embodied in the any Successful Bidder's Purchase Agreement, is the highest and best offer for the correlative portion of the Assets and is hereby approved.

4.     Each Successful Bidder's Purchase Agreement annexed hereto as **Exhibit 1** is hereby approved pursuant to § 363(b) of the Bankruptcy Code, and the Debtors are authorized to consummate and perform all of their obligations under any Successful Bidder's Purchase Agreement and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the Successful Bidder's Purchase Agreement.

- 3 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

5.    Pursuant to § 363(f) of the Bankruptcy Code, the Assets may be sold and transferred free and clear of all liens, claims, interests and encumbrances, (collectively, "Liens"), except as otherwise provided in any Successful Bidder's Purchase Agreement, with any and all such Liens to attach to proceeds of such sale with the same validity, priority, force, and effect such Liens had on the Assets immediately prior to the Sale and subject to the rights, claims, defenses, and objections, if any, of the Debtors and all interested parties with respect to any such asserted Liens.

6.    Pursuant to §§ 105(a) and 363(b) of the Bankruptcy Code, the Sale by the Debtors to the Successful Bidder(s) of the Assets and transactions related thereto, upon the closing under any Successful Bidder's Purchase Agreement, are authorized and approved in all respects.

7.    Pursuant to § 365 of the Bankruptcy Code, the assignment and assumption of the Assumed Agreements of the Debtors, as identified in the Successful Bidder's Purchase Agreement(s), by any Successful Bidder, is hereby authorized and approved in all respects.

8.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Order shall be effective immediately upon its entry.

9.    The terms of this Order shall be binding on the Successful Bidder and its or their successors, the Debtors, creditors of the Debtors, and all other parties in interest in these Chapter 11 Cases, and any successors of the Debtors, including any trustee or examiner appointed in these cases or upon a conversion of these cases to Chapter 7 of the Bankruptcy Code.

10.    The Successful Bidder is or are a good faith purchaser entitled to the benefits and protections afforded by § 363(m) of the Bankruptcy Code.

11.    With respect to the transactions consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to

- 4 -

any particular purchaser, and the sale transaction consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

12. This Court retains jurisdiction to interpret, implement and enforce the provisions of, and resolve any disputes arising under or related to, this Order and any Successful Bidder's Purchase Agreement, all amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith.

13. The failure specifically to include any particular provision of any Successful Bidder's Purchase Agreement or any of the documents, agreements, or instruments executed in connection therewith in this Order shall not diminish or impair the force of such provision, document, agreement, or instrument, it being the intent of the Court that any Successful Bidder's Purchase Agreement and each document, agreement, or instrument be authorized and approved in its entirety.

14. Any Successful Bidder's Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 5 -

without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

///End of Order///

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 6 -

PRESENTED BY:

/s/ Sam J. Alberts
SAM J. ALBERTS (WSBA #22255)
SAMUEL R. MAIZEL (Admitted *Pro Hac Vice*)
DENTONS US LLP

JAMES L. DAY (WSBA #20474)
THOMAS A. BUFORD (WSBA #52969)
BUSH KORNFELD LLP

*Attorneys for the Chapter 11*
*Debtors and Debtors In Possession*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 7 -

# Exhibit 1

## (Successful Bidder's Purchase Agreement)

**BID PROCEDURES MOTION**

113523917\V-14

1

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Phone: (213) 623-9300
Fax: (213) 623-9924

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2376
Telephone (206) 292-2110

19-01189-WLH11    Doc 794    Filed 12/03/19    Entered 12/03/19 15:57:44    Pg 65 of 75

# Exhibit C

## (Form Purchase Agreement)

US_Active\113759527\V-1

# ASSET PURCHASE AGREEMENT

**By and Among**

**Astria Health, _____**

**and**

_____

**Dated _____, 20__**

)08673421\V-1
US_Active\113632740\V-3
6848512
US_Active\113759527\V-1

# TABLE OF CONTENTS

ARTICLE 1 SALE AND TRANSFER OF ASSETS; CONSIDERATION; CLOSING .............. 1

    1.1    Purchase Price ........................................................................................... 1
    1.2    Deposit ...................................................................................................... 2
    1.3    Closing Date .............................................................................................. 2
    1.4    Items to be Delivered by Seller at Closing ............................................... 2
    1.5    Items to be Delivered by Purchaser at Closing ......................................... 3
    1.6    Prorations and Utilities ............................................................................. 4
    1.7    Transfer of Seller Assets .......................................................................... 5
    1.8    Excluded Assets ........................................................................................ 7
    1.9    Assumed Obligations ................................................................................ 9
    1.10  Excluded Liabilities ................................................................................ 10
    1.11  Designation of Assumed Contracts and Assumed Leases ....................... 10
    1.12  Disclaimer of Warranties; Release .......................................................... 11

ARTICLE 2 REPRESENTATIONS AND WARRANTIES OF SELLER ...................... 11

    2.1    Authorization .......................................................................................... 11
    2.2    Binding Agreement ................................................................................. 12
    2.3    Organization and Good Standing; No Violation ...................................... 12
    2.4    Contracts ................................................................................................. 12
    2.5    Brokers and Finders ................................................................................ 12
    2.6    Seller Knowledge .................................................................................... 12

ARTICLE 3 REPRESENTATIONS AND WARRANTIES OF PURCHASER ....................... 12

    3.1    Authorization .......................................................................................... 13
    3.2    Binding Agreement ................................................................................. 13
    3.3    Organization and Good Standing ............................................................ 13
    3.4    No Violation ............................................................................................ 13
    3.5    Brokers and Finders ................................................................................ 13
    3.6    Representations of Seller ......................................................................... 13
    3.7    Legal Proceedings ................................................................................... 13
    3.8    No Knowledge of Seller's Breach ........................................................... 14
    3.9    Ability to Perform ................................................................................... 14
    3.10  Purchaser Knowledge ............................................................................. 14

ARTICLE 4 COVENANTS OF SELLER .................................................................... 15

    4.1    Access and Information; Inspections ...................................................... 15
    4.2    Cooperation ............................................................................................. 15
    4.3    Other Bidders ......................................................................................... 16
    4.4    Seller's Efforts to Close .......................................................................... 16
    4.5    Termination Cost Reports ....................................................................... 16

108673421\V-1
US_Active\113632740\V-3
6848512
US_Active\113759527\V-1

ARTICLE 5 COVENANTS OF PURCHASER ........................................................ 16

5.1 Purchaser's Efforts to Close ........................................................ 17
5.2 Required Governmental Approvals ........................................... 17
5.3 Certain Employee Matters ........................................................ 17
5.4 Excluded Assets ....................................................................... 18
5.5 Waiver of Bulk Sales Law Compliance ................................... 18
5.6 Attorney General Filings ......................................................... 18
5.7 Conduct Pending Closing ........................................................ 18
5.8 Resale Certificate .................................................................... 18
5.9 Cure Costs ............................................................................... 19
5.10 HSR Filing .............................................................................. 19

ARTICLE 6 SELLER'S BANKRUPTCY AND BANKRUPTCY COURT APPROVAL ........ 19

6.1 Bankruptcy Court Approval ..................................................... 19
6.2 Appeal of Sale Order ............................................................... 20

ARTICLE 7 CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER ...................... 20

7.1 Signing and Delivery of Instruments ....................................... 20
7.2 No Restraints ........................................................................... 20
7.3 Performance of Covenants ....................................................... 20
7.4 Governmental Authorizations .................................................. 20
7.5 Attorney General Approval ...................................................... 21
7.6 Bankruptcy Court Approval ..................................................... 21

ARTICLE 8 CONDITIONS PRECEDENT TO OBLIGATIONS OF PURCHASER ............... 21

8.1 Governmental Authorizations .................................................. 21
8.2 Bankruptcy Court Approval ..................................................... 21
8.3 Signing and Delivery of Instruments ....................................... 21
8.4 Performance of Covenants ....................................................... 21
8.5 No Restraints ........................................................................... 21
8.6 Attorney General Approval ...................................................... 22
8.7 Medicare and Medicaid Provider Agreements ......................... 22

ARTICLE 9 TERMINATION ........................................................................... 22

9.1 Termination ............................................................................. 22
9.2 Termination Consequences ...................................................... 23

ARTICLE 10 POST-CLOSING MATTERS ......................................................... 23

10.1 Excluded Assets ..................................................................... 23
10.2 Preservation and Access to Records After the Closing ........... 24
10.3 Closing of Financials ............................................................. 26
10.4 Medical Staff ......................................................................... 26

108673421\V-1
US_Active\113632740\V-3
6848512
US_Active\113759527\V-1

# TABLE OF CONTENTS
(continued)

ARTICLE 11 DEFAULT, TAXES AND COST REPORTS ......................................................... 26

    11.1    Purchaser Default .............................................................................................. 26
    11.2    Seller Default .................................................................................................... 27
    11.3    Tax Matters; Allocation of Purchase Price ..................................................... 27
    11.4    Cost Report Matters ......................................................................................... 27

ARTICLE 12 MISCELLANEOUS PROVISIONS ............................................................... 28

    12.1    Further Assurances and Cooperation ............................................................... 28
    12.2    Successors and Assigns .................................................................................... 28
    12.3    Governing Law; Venue .................................................................................... 28
    12.4    Amendments .................................................................................................... 28
    12.5    Exhibits, Schedules and Disclosure Schedule ................................................ 28
    12.6    Notices ............................................................................................................. 29
    12.7    Headings .......................................................................................................... 30
    12.8    Publicity .......................................................................................................... 30
    12.9    Fair Meaning ................................................................................................... 30
    12.10   Gender and Number; Construction; Affiliates ................................................ 30
    12.11   Third Party Beneficiary ................................................................................... 30
    12.12   Expenses and Attorneys' Fees ........................................................................ 31
    12.13   Counterparts .................................................................................................... 31
    12.14   Entire Agreement ............................................................................................ 31
    12.15   No Waiver ........................................................................................................ 31
    12.16   Severability ..................................................................................................... 31
    12.17   Time is of the Essence ..................................................................................... 31

108673421\V-1
US_Active\113632740\V-3
6848512
US_Active\113759527\V-1

19-01189-WLH11    Doc 794    Filed 12/03/19    Entered 12/03/19 15:57:44    Pg 70 of 75

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "**Agreement**") is made and entered into as of the ___ day of _____, 20__ (the "**Signing Date**") by and among Astria Health, a Washington nonprofit corporation and its affiliate _____, a Washington nonprofit corporation (collectively "**Seller**") and _____, a _____ ("**Purchaser**").

## R E C I T A L S :

    A.    Seller engages in the business of the operation of the assets being sold known as _____, an asset being sold that is owned and operated by Seller and located at _____, including the _____ [i.e., assets being sold, pharmacy, laboratory, emergency department, medical office buildings, clinics] owned or operated by Seller and described more fully below (collectively, the "**Assets being sold**").

    B.    Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, _____ (as defined more fully in Section 1.7 below) (the "**Assets**") owned by Seller and used with respect to the operation of the Assets being sold, for the consideration and upon the terms and conditions contained in this Agreement.

    C.    Seller has filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Eastern District of Washington (the "**Bankruptcy Court**"), commencing Lead Case No. 19-01189-11, jointly administered with its affiliates (the "**Bankruptcy Case**"), and the Bankruptcy Court entered an order approving procedures in connection with the sale of the Seller's Assets, Docket No. _____, which requests that the Bankruptcy Court enter a "**Sale Order**" following an auction and selection of a successful bidder.

    D.    The parties intend to effectuate the transactions contemplated by this Agreement through a sale of the Assets approved by the Bankruptcy Court, pursuant to Section 363 of Chapter 11 of Title 11 of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises and covenants contained in this Agreement, and for their mutual reliance and incorporating into this Agreement the above recitals, the parties hereto agree as follows:

## ARTICLE 1

## SALE AND TRANSFER OF ASSETS;
## CONSIDERATION; CLOSING

    1.1    <u>Purchase Price</u>¶ Subject to the terms and conditions of this Agreement, the purchase price ("**Purchase Price**") shall consist of the following:

(a)     Cash     payment     to     Seller     (the     **"Cash     Consideration"**)     of
_____ ($_____); and

(b)     Payment of Cure Costs (defined below) associated with any Assumed Leases and/ or Assumed Contracts.

1.2     <u>Deposit</u>¶     Purchaser  has  made  a  good  faith  deposit  in  the  amount  of _____     ($_____)  (the  **"Deposit"**)  by  wire  transfers  to  an  account designated by Seller.  Purchaser has agreed to increase the Deposit by $_____, for a total deposit of $_____ upon entry of an order approving this transaction.  The Deposit shall be non-refundable in all events, except in the event the Closing does not occur due to (i) Seller accepting the bid of and closing of the sale with a rival bidder (provided Purchaser is not in breach of this Agreement) or (ii) Seller materially breaching its obligations under this Agreement.  Upon Closing, the Deposit will be credited against the Purchase Price.

1.3     <u>Closing Date</u>¶     The consummation of the transactions contemplated by this Agreement (the **"Closing"**) shall take place at _____ local time at the offices of Dentons US LLP, 601 South Figueroa St., Suite 2500, Los Angeles, CA 90017-5704 (the day on which Closing actually occurs, the **"Closing Date"**) within five (5) business days following the satisfaction or waiver of the conditions set forth in <u>ARTICLE 7</u> and <u>ARTICLE 8</u>, other than those conditions that by their nature are to be satisfied at Closing but subject to fulfillment or waiver of those conditions.  The Closing shall be deemed to occur and to be effective as of 12:00 a.m. Pacific time on the day immediately after the Closing Date (the **"Effective Time"**).

1.4     <u>Items to be Delivered by Seller at Closing</u>¶     At or before the Closing, Seller shall deliver, or cause to be delivered, to Purchaser the following:

1.4.1     a Bill of Sale substantially in the form of **<u>Exhibit 1.4.1</u>** attached hereto (the **"Bill of Sale"**), duly executed by Seller;

1.4.2     Real Estate Assignment and Assumption Agreements (the **"Real Estate Assignments"**) in the form of **<u>Exhibit 1.4.2</u>** attached hereto with respect to (i) the Leased Real Property, and (ii) the Tenant Leases, each duly executed by Seller;

1.4.3     a Quitclaim Deed (the **"Deed"**) in the form of **<u>Exhibit 1.4.2</u>** attached hereto with respect to the real property listed in Schedule 1.4.3 (the **"Owned Real Property"**) duly executed by Seller;

1.4.4     an Assumption Agreement (the **"Assumption Agreement"**) in the form of **<u>Exhibit 1.4.2</u>** attached hereto with respect to the Assumed Liabilities duly executed by Seller;

1.4.5     favorable original certificates of good standing, of Seller, issued by the State of Washington, dated no earlier than a date which is fifteen (15) calendar days prior to the Closing Date;

1.4.6     a duly executed certificate of an officer of Seller certifying to Purchaser (i) the incumbency of the officers of Seller on the Signing Date and on the Closing Date and bearing

2

19-01189-WLH11     Doc 794     Filed 12/03/19     Entered 12/03/19 15:57:44     Pg 72 of 75

the authentic signatures of all such officers who shall execute this Agreement and any additional documents contemplated by this Agreement and (ii) the due adoption and text of the resolutions or consents of the Board of Directors of Seller authorizing (I) the transfer of the Assets and transfer of the Assumed Obligations by Seller to Purchaser and (II) the due execution, delivery and performance of this Agreement and all additional documents contemplated by this Agreement, and that such resolutions have not been amended or rescinded and remain in full force and effect on the Closing Date;

       1.4.7   a certified copy of the Sale Order (as defined below); and

       1.4.8   Any such other instruments, certificates, consents or other documents which Purchaser and Seller mutually deem reasonably necessary to carry out the transactions contemplated by this Agreement and to comply with the terms hereof.

     1.5   <u>Items to be Delivered by Purchaser at Closing</u>¶  At or before the Closing, Purchaser shall deliver or cause to be delivered to Seller the following:

       1.5.1   payment of the Cash Consideration subject to credits or plus payment to Seller of all amounts as provided under <u>Section 1.6</u>;

       1.5.2   evidence of payment of all Cure Costs required hereunder to be paid by Purchaser;

       1.5.3   a duly executed certificate of the Secretary of Purchaser certifying to Seller (a) the incumbency of the officers of Purchaser on the Signing Date and on the Closing Date and bearing the authentic signatures of all such officers who shall execute this Agreement and any additional documents contemplated by this Agreement and (b) the due adoption and text of the resolutions of the Board of Directors of Purchaser authorizing the execution, delivery and performance of this Agreement and all additional documents contemplated by this Agreement, and that such resolutions have not been amended or rescinded and remain in full force and effect on the Closing Date;

       1.5.4   favorable original certificate of good standing, of Purchaser, issued by the appropriate Secretary of State dated no earlier than a date which is fifteen (15) calendar days prior to the Closing Date;

       1.5.5   the Bill of Sale, duly executed by Purchaser;

       1.5.6   the Real Estate Assignment(s), duly executed by Purchaser;

       1.5.7   the Assumption Agreement, duly executed by Purchaser; and

       1.5.8   any such other instruments, certificates, consents or other documents which Purchaser and Seller mutually deem reasonably necessary to carry out the transactions contemplated by this Agreement and to comply with the terms hereof.

3

19-01189-WLH11   Doc 794   Filed 12/03/19   Entered 12/03/19 15:57:44   Pg 73 of 75

1.6     Prorations and Utilities¶  All items of income and expense listed below with respect to the Assets shall be prorated in accordance with the principles and the rules for the specific items set forth hereafter:

1.6.1   All transfer, conveyance, sales, use, stamp, similar state and local taxes arising from the sale of the Assets hereunder shall be the responsibility of, and allocated to, Purchaser.

1.6.2   Other than the Utility Deposits (defined below), which are governed by Section 1.8(j), and other than with respect to Cure Costs payable by Purchaser, the following costs and expenses shall be prorated based upon the payment period (*i.e.*, calendar or other tax fiscal year) to which the same are attributable: all real estate and personal property lease payments, real estate and personal property taxes, real estate assessments and other similar charges against real estate, and power and utility charges (collectively, the "**Prorated Charges**") on the Assets.  Seller shall pay at or prior to the Closing (or Purchaser shall receive credit for) any unpaid Prorated Charges attributable to periods or portions thereof occurring prior to the Effective Time, and Purchaser shall assume as an Assumed Liability or, to the extent previously paid by Seller, pay to Seller at the Closing all Prorated Charges attributable to periods or portions thereof occurring from and after the Effective Time.  In the event that as of the Closing Date the actual tax bills for the tax year or years in question are not available and the amount of taxes to be prorated as aforesaid cannot be ascertained, then rates, millages and assessed valuation of the previous year, with known changes, shall be used.  The parties agree that if the real estate and personal property tax prorations are made based upon the taxes for the preceding tax period, the prorations shall be re-prorated after the Closing.  As to power and utility charges, "final readings" as of the Closing Date shall be ordered from the utilities; the cost of obtaining such "final readings," if any, shall be paid by Purchaser.

1.6.3   Seller shall be entitled to all rents and other payments under Tenant Leases, if any, accruing for the period prior to the Effective Time ("**Pre Effective Time Lease Amounts**"), and Purchaser shall be entitled to all rents and other payments under tenant leases, if any, accruing for the period after the Effective Time ("**Post Effective Time Lease Amounts**" and together with the Pre Effective Time Lease Amounts, the "**Lease Amounts**").  All Lease Amounts that are collected prior to the Closing shall be prorated as of the Closing in accordance with the immediately preceding sentence.  All Lease Amounts that are accrued but unpaid as of the Closing (including, without limitation, rents and other payments accrued prior to the Closing but payable in arrears after the Closing) (collectively, the "**Unpaid Amounts**") shall belong to Seller, and Purchaser shall, upon receipt of said rents and other payments, receive the same in trust for Seller and shall promptly remit any of such amounts to Seller within ten (10) days after Purchaser's receipt of same.

1.6.4   All prorations and payments to be made under the foregoing provisions shall be agreed upon by Purchaser and Seller prior to the Closing and shall be binding upon the parties; provided, however, with respect to the Unpaid Amounts, in the event any proration, apportionment or computation shall prove to be incorrect for any reason, then either Seller or Purchaser shall be entitled to an adjustment to correct the same, provided that said party makes written demand on the party from whom it is entitled to such adjustment within thirty (30)

4

108673421\V-1
US_Active\113632740\V-3
6848512 v3
US_Active\113759527\V-1

calendar days after the erroneous payment or computation was made, or such later time as may be required, in the exercise of due diligence, to obtain the necessary information for proration. This Section 1.6 shall survive Closing.

1.7    Transfer of Seller Assets¶ On the Closing Date and subject to the terms and conditions of this Agreement, Seller shall sell, assign, transfer, convey and deliver to Purchaser, free and clear of all liens and encumbrances other than the Permitted Exceptions (defined below), and Purchaser shall acquire, all of Seller's right, title and interest in and to only the following assets and properties, as such assets shall exist on the Closing Date, with respect to the operation of the Hospital, to the extent not included among the Excluded Assets, such transfer being deemed to be effective at the Effective Time (collectively, the "**Assets**"):

(a)    all of the tangible personal property owned by Seller and used by Seller in the operation of the assets being sold, including equipment, furniture, machinery, vehicles and office furnishings (the "**Personal Property**");

(b)    all of Seller's rights, to the extent assignable or transferable, to all licenses, provider numbers, permits, approvals, certificates of exemption, franchises, accreditations and registrations and other governmental licenses, permits or approvals issued to Seller for use in the operation of the assets being sold (the "**Licenses**"), including, without limitation, the Licenses and Medicare and Medicaid Provider Numbers set forth on **Schedule 1.7(b)**;

(c)    all of Seller's interest in and to the Owned Real Property and all of Seller's interest, to the extent assignable or transferable, in and to all of the following (the "**Assumed Leases**"): (i) personal property leases with respect to the operation of the assets being sold, (ii) the real property leases for all real property leased by Seller and set forth on **Schedule 1.7(c)(ii)** (the "**Leased Real Property**"), and (iii) the real property leased or subleased by Seller to a third party and set forth on **Schedule 1.7(c)(iii)** (the "**Tenant Leases**");

(d)    all of Seller's interest, to the extent assignable or transferable, in and to all contracts and agreements (including, but not limited to, purchase orders) with respect to the operation of the assets being sold that have been designated by Purchaser as a contract to be assumed pursuant to Section 1.11 (the "**Assumed Contracts**");

(e)    to the extent assignable or transferable, all inventories of supplies, drugs, food, janitorial and office supplies and other disposables and consumables (i) located at the Assets being sold or (ii) used in the operation of the assets being sold (the "**Inventory**") except as set forth in Section 1.8(e);

(f)    to the extent assignable or transferrable, all of the following that are not proprietary to Seller and/or owned by or proprietary to Seller's affiliates: operating manuals, files and computer software with respect to the operation of the assets being sold, including, without limitation, all patient records, medical records, employee records, financial records, equipment records, construction plans and specifications, and medical and administrative libraries;

5

108673421\V-1
US_Active\113632740\V-3
6848512 v3
US_Active\113759527\V-1