# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

IN RE:

ASTRIA HEALTH, et al.

Debtors.[1]

Lead Case No. 19-01189-11

Jointly Administered

**SECOND INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN REPLACEMENT POSTPETITION FINANCING; (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED CREDIT PARTIES; (IV) MODIFYING THE AUTOMATIC STAY; (V) AUTHORIZING THE DEBTORS**

[1] The Debtors, along with their case numbers, are as follows: Astria Health (19-01189-11), Glacier Canyon, LLC (19-01193-11), Kitchen and Bath Furnishings, LLC (19-01194-11), Oxbow Summit, LLC (19-01195-11), SHC Holdco, LLC (19-01196-11), SHC Medical Center-Toppenish (19-01190-11), SHC Medical Center-Yakima (19-01192-11), Sunnyside Community Hospital Association (19-01191-11), Sunnyside Community Hospital Home Medical Supply, LLC (19-01197-11), Sunnyside Home Health (19-01198-11), Sunnyside Professional Services, LLC (19-01199-11), Yakima Home Care Holdings, LLC (19-01201-11), and Yakima HMA Home Health, LLC (19-19-01200-11).

Interim DIP/Cash Collateral
Order

CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Phone: (213) 623-9300

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110

**TO ENTER INTO AGREEMENTS WITH LAPIS ADVISERS, L.P.; (VI) AUTHORIZING USE OF CASH COLLATERAL; (VII) SCHEDULING A FINAL HEARING; AND (VIII) GRANTING RELATED RELIEF**

THIS MATTER having come before the Court upon the motion (the "**Motion**")[2] of the above-captioned debtors (the "**Debtors**" or the "**Borrowers**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101 *et seq.*, as amended, the "**Bankruptcy Code**"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 4001-3 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Washington ("**LBR**"), seeking entry of a first interim order (the "**First Interim Order**"), a second interim order (this "**Second Interim Order**") and a final order (the "**Final Order**") granting, *inter alia*:

    i.    authority, pursuant to sections 105, 363, and 364(c) and 364(d) of the Bankruptcy Code, for each of the Debtors, jointly and severally, to obtain senior secured post-petition replacement financing ("**DIP Facility**") in an aggregate

---

[2] Unless stated otherwise, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Loan Agreement (as defined below), as applicable.

Interim DIP/Cash Collateral Order    - 2 -  DENTONS US LLP
CSDOCS/19230786v3
CSDOCS/19428780v3    601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

19-01189-WLH11    Doc 1020    Filed 02/05/20    Entered 02/05/20 13:38:13    Pg 2 of 54

principal amount of up to $43,100,000, ~~(~~of which (x) the Initial Funding (as defined below) plus $700,000 of Committed Advances (as defined below) was made available to the Debtors upon entry of the First Interim Order upon satisfaction or waiver of the borrowing conditions set forth in the DIP Loan Documents (as defined below) and (y) upon the entry of the Final Order, to the extent authorized by the Court, the following shall be made available to the Debtors as set forth in the DIP Loan Agreement (as defined below): (i) the balance of the Committed Advances; and (ii) in the sole discretion of the DIP Lenders (as defined below) and with no commitment or other obligation to do so, the Additional Funding Advances~~;~~.

ii.          authority ~~(a)~~ for the Debtors to enter into that certain Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement, among the Debtors as Borrowers, the non-filing affiliates of the Debtors party thereto as guarantors, and Lapis Advisers, L.P., as agent for the lenders party thereto (collectively, the "**DIP Lenders**") in substantially the same form as attached as **Exhibit 1** (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**DIP Loan Agreement**" and, together with any ancillary, collateral or related documents and agreements, the "**DIP Loan Documents**") to the First Interim Order;

iii.          authority for the Debtors to use the DIP Facility and the proceeds thereof in accordance with the DIP Loan Documents to (a) replace the existing post-petition financing facility with JMB Capital Partners Lending, LLC ("**JMB Capital**")

Interim DIP/Cash Collateral Order          - 3 -   DENTONS US LLP
CSDOCS/19230786v3                                     601 South Figueroa Street, Suite 2500
CSDOCS/19428780v3                                     Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

19-01189-WLH11   Doc 1020   Filed 02/05/20   Entered 02/05/20 13:38:13   Pg 3 of 54

approved in these Chapter 11 Cases, which was repaid in full prior to December 31, 2019, (b) fund the post-petition working capital needs of the remaining operating Debtors (the "**Operating Debtors**") and the costs associated with the liquidation of SHC Medical Center - Yakima ("**ARMC**") during the pendency of these Chapter 11 Cases, (c) pay fees, costs and expenses of the DIP Facility on the terms and conditions described in the DIP Loan Documents, and (d) pay the allowed administrative costs and expenses of the Chapter 11 Cases, in each case, solely in accordance with the DIP Loan Documents (including the amended budget attached hereto as **Exhibit A** (the "**Budget**")), the First Interim Order, this Second Interim Order and the Final Order;

iv.    authority for the Debtors to grant to the DIP Lenders valid, enforceable, non-avoidable, automatically and fully perfected security interests, liens and superpriority claims, including allowed superpriority administrative expense claims pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out and liens pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code in the DIP Collateral (as defined below) (and all proceeds thereof), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), to secure all DIP Obligations (as defined below), as more fully set forth in the First Interim Order, this Second Interim Order and the Final Order, subject only to the Carve-Out (as defined below);

Interim DIP/Cash Collateral Order    - 4 -
CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

19-01189-WLH11    Doc 1020    Filed 02/05/20    Entered 02/05/20 13:38:13    Pg 4 of 54

v.     waiver by the Debtors of all rights to surcharge against the collateral of the DIP Lenders pursuant to section 506(c) of the Bankruptcy Code;

vi.     waiver of the equitable doctrine of marshaling or any other similar doctrine with respect to any collateral of the DIP Lenders;

vii.     providing adequate protection to the Lapis Secured Parties to the extent set forth herein;

viii.     modification of the automatic stay to the extent hereinafter set forth and waiving the 14-day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h)

ix.     the scheduling of a final hearing (the "**Final Hearing**") on the Motion for March 18, 2020, at 11:00 a.m. (Pacific Time) to consider entry of the Final Order *inter alia*, authorizing borrowings under the DIP Facility on a final basis and approving notice procedures with respect thereto; and

x.     related relief.

The Court having considered the Motion and the exhibits attached thereto, the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on December 18, 2019 (the "**First Interim Hearing**") and the second interim hearing held on February 5, 2020 (the "**Second Interim Hearing**").  The Court having found that due and proper notice (the "**Notice**") of the Motion, the Interim Hearing and the Second Interim Hearing having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9006 and LBR  2002-1 on (i) the Office of the United States Trustee for the Eastern District of Washington, (ii)

Interim DIP/Cash Collateral Order                  - 5 -
CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

counsel to the Lapis Secured Creditors, (iii) counsel to JMB Capital, (iv) counsel to the DIP Lenders, (v) all alleged secured creditors, (vi) counsel to the Committee (defined below), (vii) the thirty largest general unsecured creditors appearing on the list filed in accordance with Bankruptcy Rule 1007(d), and (viii) any parties requesting special notice; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and this Court having entered the First Interim Order on December 20, 2019, which set the original date and time of the Second Interim Hearing; and this Court having held and concluded the Second Interim Hearing to consider the relief requested in the Motion; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the final relief requested is necessary to avoid potential immediate and irreparable harm to the Debtors and their estates and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Operating Debtors' businesses and the liquidation of ARMC and represents a sound exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE MOTION, THE REPRESENTATIONS OF COUNSEL AND EVIDENCE SUBMITTED**

DENTONS US LLP
601 South Figueroa Street, Suite 2500

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

**PRIOR TO AND DURING THE FIRST AND SECOND INTERIM HEARINGS**:[3]

A. *Petition Date*. On May 6, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Washington (the "**Court**") commencing these Chapter 11 Cases.

B. *Debtors in Possession*. The Operating Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On January 8, 2020, the Court authorized the Debtors to close ARMC (the "**Closing Order**") [Docket No. 874]. The Debtors have since closed ARMC and are ~~in~~ starting the process of liquidating ARMC's assets. Absent further order of the Court, the use of Cash Collateral and amounts received under the DIP Facility by ARMC shall be used by ARMC solely as it relates to the closure ~~and liquidation~~ (as approved under the Closure Order) and anticipated liquidation. No trustee or examiner has been appointed in these Chapter 11 Cases.

C. *Consent to Closure and Liquidation of ARMC*. The DIP Lenders have consented to the Debtors' closure of ARMC as well as the use of the DIP Facility and the proceeds thereof to fund the liquidation of ARMC. Accordingly, the closure and

[3] To the extent, any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

liquidation of ARMC in accordance with the attached budget is no longer considered a default under the terms of the DIP Loan Agreement.

    D. *Notice*. Notice of the Second Interim Hearing and the relief requested in the Motion has been provided by the Debtors to certain parties in interest, including on (i) the Office of the United States Trustee for the Eastern District of Washington, (ii) counsel for the Lapis Secured Creditors, (iii) counsel for JMB Capital, (iv) counsel for the DIP Lenders, (v) all alleged secured creditors, (vi) counsel for the Committee, (vii) the thirty largest general unsecured creditors appearing on the list filed in accordance with Rule 1007(d), and (viii) any parties requesting special notice.

    E. *Jurisdiction and Venue*. This Court has core jurisdiction over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

    F. *Committee Formation*. On May 23, 2019, the United States Trustee for the Eastern District of Washington (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Committee**").

    G. *No Credit Available on More Favorable Terms*. The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code and have

601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by the DIP Lenders pursuant to the DIP Loan Documents.

H.    *Best Interests of Estates*.  It is in the best interests of the Debtors' estates and creditors that the Debtors be allowed to enter into the DIP Facility to obtain post-petition secured financing from the DIP Lenders under the terms and conditions set forth herein and in the DIP Loan Documents, as such financing is necessary to avoid immediate and irreparable harm to the Debtors' estates and for the continued operation of the Debtors' businesses.

I.    *Good Faith*.  The extension of credit and financial accommodations under the DIP Loan Documents are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  Accordingly, the DIP Lenders are entitled to the protections of section 364(e) of the Bankruptcy Code.

J.    *Good Cause*. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity, whether through operations of the Operating Debtors or liquidation of ARMC, so as to (1) preserve and otherwise maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors, and (2) avoid

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

potential immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

K.    *Necessity of DIP Facility Terms*.    The terms of the DIP Loan Documents, the First Interim Order and this Second Interim Order assuring that the liens and the various claims, superpriority claims, and other protections granted in the First Interim Order and this Second Interim Order will not be affected by any subsequent reversal or modification of the First Interim Order or this Second Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated in the DIP Loan Documents, are necessary in order to induce the DIP Lenders to provide post-petition financing to the Debtors.

L.    *Need for Post-Petition Financing*.    The Debtors do not have sufficient and reliable sources of working capital, including cash collateral, to continue to operate their businesses in the ordinary course of business without the financing requested in the Motion.  In addition, the Debtors have required the DIP Facility to pay off the existing DIP financing with JMB Capital, which matured on December 31, 2019, and which was paid in full prior to that date.  Absent payment of the DIP financing with JMB Capital before December 31, 2019, the Debtors would have been forced to incur a significant eight percent (8%) fee during a time when the Debtors' liquidity was strained.  That fee will now be deferred to the Maturity Date of the DIP Facility.  The ability of the Debtors to obtain sufficient and stable working capital

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

19-01189-WLH11    Doc 1020    Filed 02/05/20    Entered 02/05/20 15:38:13    Pg 10 of 54

1 and liquidity through the proposed post-petition financing arrangements with the DIP

2 Lenders as set forth in the First Interim Order, this Second Interim Order and the DIP

3 Loan Documents is vital to the preservation and maintenance of the going concern

4 value of each Operating Debtor and the liquidation of ARMC. Accordingly, the

5 Debtors have an immediate need to obtain the postpetition financing in order to

6 preserve and maximize the value of the assets of the Debtors' bankruptcy estates in

7 order to maximize the recovery to all creditors of the estates.

8       M.    *Need to Use Cash Collateral*. The Debtors need to use Cash Collateral

9 in order to, among other things, preserve, maintain and maximize the value of their

10 assets and businesses. The ability of the Operating Debtors to maintain liquidity

11 through the use of Cash Collateral is vital to their operations and to maximize the

12 value of their assets. Similarly, Cash Collateral is necessary to aid in the liquidation

13 of ARMC. Accordingly, the Debtors have demonstrated good and sufficient cause

14 for the relief granted herein.

15       N.    *Sections 506(c) and 552(b)*. As a material inducement to the DIP

16 Lenders to agree to provide the DIP Facility, and in exchange for the DIP Lenders'

17 agreement to subordinate their superpriority claims to the Carve-Out, this Court

18 approves (i) the waiver by the Debtors of any equities of the case exceptions under

19 section 552(b) of the Bankruptcy Code, and (ii) the waiver by the Debtors of the

20 provisions of section 506(c) of the Bankruptcy Code.

21

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

CSDOCS/19230786v3
CSDOCS/19428780v3

O.  *Priming of Prepetition Liens*.  The priming of the Lapis Subordinated Sunnyside Liens and Lapis Subordinated A/R Liens by the DIP Lenders under section 364(d)(1) of the Bankruptcy Code, solely to the extent set forth in the DIP Loan Documents and as further described below, will enable the Debtors to obtain the DIP Facility and, among other benefits, continue to operate their businesses for the benefit of their estates and stakeholders.

P.  *Pre-Petition Debt*.  The Debtors were, prior to the Petition Date, party to the following agreements, with the following parties (collectively, the "**Prepetition Secured Parties**"):

(a)  *Banner Bank Prepetition Debt*.

a.  Prior to the commencement of the Chapter 11 Cases, Sunnyside Community Hospital Association ("**Sunnyside**") entered into various Business Loan Agreements, dated December 30, 2010, May 19, 2015, March 21, 2016, August 2, 2016, October 6, 2016, March 21, 2017, and May 4, 2018, each between Banner Bank and Sunnyside (as each such agreement has been amended, modified, or supplemented to date, the "**Banner Bank Loan Documents**"), providing Sunnyside with financing in the aggregate principal amount of $27,006,225.  The advances made pursuant to the Banner Bank Loan Documents were secured by a first priority lien (the "**Banner Senior Sunnyside Liens**") on all personal property and certain real property of Sunnyside as set forth in the Banner Bank Loan Documents and associated documents (such assets the "**Banner Bank Collateral**").  As of the Petition Date, Sunnyside was indebted to Banner Bank in the approximate principal amount of $10.6 million.  The proceeds of the DIP facility with JMB Capital (the "**JMB DIP Facility**") was partially used to pay off and

Interim DIP/Cash Collateral Order          - 12 -
CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

satisfy the Debtors' obligations to Banner Bank.

(b) *MidCap Financial Prepetition Debt.*

    a.    Prior to the commencement of the Chapter 11 Cases, SHC Holdco, LLC ("**Holdco**"), SHC Medical Center – Yakima ("**Yakima**"), SHC Medical Center – Toppenish "**Toppenish**", Yakima Home Care Holdings, LLC, and Yakima HMA Home Health, LLC, as co-borrowers (collectively, the "**MidCap Borrowers**"), entered into that certain Credit and Security Agreement dated September 18, 2017 (the "**MidCap Credit Agreement**") and those related loan documents (all as amended, modified, or supplemented to date, collectively with the MidCap Credit Agreement, the "**MidCap Loan Documents**"), with the lenders party thereto (the "**MidCap Lenders**") and MidCap Financial Trust as agent for the MidCap Lenders (the "**MidCap Agent**"), providing the MidCap Borrowers with a revolving loan facility in the maximum principal amount of $15 million. The advances made pursuant to the MidCap Credit Agreement were secured by a properly perfected first priority lien and security interest (the "**MidCap Senior A/R Liens**") on the assets of the MidCap Borrowers set forth in Schedule 9.1 to the MidCap Credit Agreement (such assets, the "**MidCap A/R Collateral**"). As of the Petition Date, the MidCap Borrowers were indebted to the MidCap Lenders in the approximate principal amount of $10.7 million. The proceeds of the JMB DIP Facility was partially used to pay off and satisfy the Debtors' obligations to the MidCap Lenders. The MidCap Lenders have otherwise been paid in full.

(c) *Lapis Prepetition Debt.*

    a.    Pursuant to that certain Bond Indenture, dated as of November 1, 2017, between Washington Health Care Facilities Authority (the "**Authority**"), as issuer and UMB Bank, N.A. as the bond trustee (the "**Bond Trustee**") for the bondholders, certain entities affiliated with Lapis Advisers, L.P., the Authority issued $27 million of tax-exempt Washington Health Care Facilities Authority Revenue Bonds, Series 2017A (the "**Series 2017A**

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

CSDOCS/19230786v3
CSDOCS/19428780v3

19-01189-WLH11   Doc 1020   Filed 02/05/20   Entered 02/05/20 15:38:13   Pg 13 of 54

**Bonds**") and $8.4 million of tax-exempt Washington Health Care Facilities Authority Revenue Bonds, Series 2017B (the "**Series 2017B Bonds**" and, together with the Series 2017A Bonds, collectively the "**2017 Bonds**").

b. Also on November 1, 2017, Yakima, Toppenish, Holdco, and Astria, as co-borrowers (the "**Lapis 2017 Loan Borrowers**"), entered into a Loan and Security Agreement (the "**Lapis 2017 Loan Agreement**") with the Authority, wherein the Authority loaned the proceeds of the sale of the 2017 Bonds ($35.4 million) (the "**Lapis 2017 Loan**") to the Lapis 2017 Loan Borrowers. Each of the other Debtors, as well as certain other non-filing affiliates, as guarantors (the "**Lapis 2017 Loan Guarantors**"), entered into a Continuing Guaranty (the "**Lapis 2017 Loan Guaranty**" and together with the Lapis 2017 Loan Agreement and all other documents evidencing or securing the Lapis 2017 Loan, the "**Lapis 2017 Loan Documents**"), dated November 1, 2017, wherein the Lapis 2017 Loan Guarantors agreed to guaranty the obligations of the Lapis 2017 Loan Borrowers under the Lapis 2017 Loan. The advances made pursuant to the Lapis 2017 Loan were secured by (i) a first priority lien (the "**Lapis 2017 SHC Holdco Liens**") on the non-accounts receivable assets of the Lapis 2017 Loan Borrowers at Yakima and Toppenish, (ii) a junior lien (the "**Lapis 2017 A/R Liens**") on the accounts receivable assets of the Lapis 2017 Loan Borrowers at Yakima and Toppenish subordinate and subject to the liens and security interests granted to JMB Capital as part of the existing JMB DIP Facility (the "**JMB DIP Liens**"), and (iii) a junior lien (the "**Lapis 2017 Sunnyside Liens**") on the assets of the Lapis 2017 Loan Guarantors at Sunnyside subordinate and subject to the JMB DIP Liens (collectively, the "**Lapis 2017 Loan Collateral**"). As of the Petition Date, the amount of approximately $35.4 million of principal was outstanding under the Lapis 2017 Loan.

c. Prior to the commencement of the Chapter 11 Cases, Astria, Sunnyside, Sunnyside Professional Services, LLC, Sunnyside Community Hospital Home Medical Supply,

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

CSDOCS/19230786v3
CSDOCS/19428780v3

LLC, Sunnyside Home Health, Kitchen and Bath Furnishings, LLC, Oxbow Summit, LLC and certain non-filing affiliates as co-borrowers (the "**Lapis 2019 Loan Borrowers**"), entered into a Credit Agreement dated January 18, 2019 (the "**Lapis 2019 Loan Agreement**") with Lapis Advisers LP ("**Lapis Prepetition Agent**"), as agent for lenders party thereto (the "**Lapis 2019 Loan Lenders**"), whereby the Lapis 2019 Loan Lenders agreed to make advances to the Lapis 2019 Loan Borrowers in the principal amount of up to $10 million (the "**Lapis 2019 Loan**"). The remaining Debtors, as well as certain other non-filing affiliates, as guarantors (the "**Lapis 2019 Loan Guarantors**"), entered into a Continuing Guaranty (the "**Lapis 2019 Loan Guaranty**" and together with the Lapis 2019 Loan Agreement, and all other documents evidencing or securing the Lapis 2019 Loan the "**Lapis 2019 Loan Documents**") dated January 18, 2019, wherein the Lapis 2019 Loan Guarantors agreed to guaranty the obligations of the Lapis 2019 Loan Borrowers under the Lapis 2019 Loan. The advances made pursuant to the Lapis 2019 Loan were secured by (i) a junior lien (the "**Lapis 2019 Sunnyside Liens**" and together with the Lapis 2017 Sunnyside Liens, the "**Lapis Subordinated Sunnyside Liens**") on the assets of the Lapis 2019 Borrowers subordinate and subject to the JMB DIP Liens, (ii) a junior lien (the "**Lapis 2019 SHC Holdco Liens**" and together with the Lapis 2017 SHC Holdco Liens, the "**Lapis Senior Holdco Liens**") on the assets of the Lapis 2019 Guarantors not subject to the JMB DIP Liens as set forth in the Lapis 2019 Loan Documents, and (iii) a junior lien (the "**Lapis 2019 A/R Liens**" and together with the Lapis 2017 Priority A/R Liens, the "**Lapis Subordinated A/R Liens**") on the MidCap Priority Collateral (such assets, the "**Lapis 2019 Collateral**" and together with the Lapis 2017 Loan Collateral, the "**Lapis Prepetition Collateral**"). As of the Petition Date, the amount of approximately $10 million of principal was outstanding under the Lapis 2019 Loan.

d. As used herein "**Prepetition Credit Liens**" shall mean the Lapis Senior Holdco Liens, Lapis Subordinated A/R Liens, and Lapis Subordinated Sunnyside Liens. As used herein

CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

"**Prepetition Collateral**" shall mean the Lapis Prepetition Collateral.

Q.    *Adequate Protection*.  The Bond Trustee, on behalf of itself and the holders of the 2017 Bonds (the "**Bondholders**") and the Lapis Prepetition Agent, on behalf of itself and the Lapis 2019 Loan Lenders (collectively, the "**Lapis Secured Parties**") are entitled to receive adequate protection on account of their interests in the Prepetition Collateral pursuant to sections 361, 362, and 363 of the Bankruptcy Code solely to the extent of any diminution in the value of their interests in the Prepetition Collateral (including Cash Collateral).  As part of the adequate protection provided by the First Interim Order and this Second Interim Order, the Lapis Secured Parties shall receive, among other things, replacement liens, superpriority claims (to the extent that the Lapis Secured Parties had valid and perfected liens on and security interests in the Prepetition Collateral) and reporting information, subject and subordinate to the Carve-Out.  For the avoidance of doubt, the Lapis Secured Parties shall not receive replacement liens on any of the Excluded Avoidance Actions (defined below) or Commercial Tort Claims (defined below, provided no determination is made in this order concerning the legal character of any claims related to accounts receivable collections).  The terms of the Adequate Protection Obligations (defined herein) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and are sufficient to allow the Debtors' use of the Prepetition Collateral (including the Cash Collateral) and to permit the relief granted

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

in the First Interim Order and this Second Interim Order.  For the avoidance of doubt, the Committee's challenge rights shall be governed by and subject to that certain *Stipulation Regarding Committee's Challenge Rights* [Docket No. 979] (the "**Challenge Stipulation**"), which in the case of any inconsistency concerning challenge rights, the Challenge Stipulation shall control.

R.      *Immediate Entry*.  Sufficient cause exists for immediate entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      *DIP Facility Approval*.  The Motion is granted on an interim basis and the DIP Facility is hereby approved.  Any objections to the interim relief requested in the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled, except as reserved on the record at the hearing on February 5, 2020.  The Debtors are authorized, pursuant to section 364 of the Bankruptcy Code, to enter into and be a party to the DIP Facility pursuant to the DIP Loan Documents (with such changes, if any, as were authorized to be made as amendments to the DIP Loan Documents in accordance with the First Interim Order and this Second Interim Order), to perform under the DIP Loan

Interim DIP/Cash Collateral Order      - 17 -
CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

Documents and such other and additional documents necessary or desired to implement the DIP Facility or the DIP Loan Documents, and to obtain postpetition secured financing from the DIP Lenders, to avoid immediate and irreparable harm to the Debtors' estates.

2. *DIP Obligations*. The DIP Loan Documents shall constitute and evidence the valid and binding effect of the Debtors' obligations under the DIP Facility, which DIP Obligations shall be legal, valid, and binding obligations of the Debtors party thereto and enforceable against the Debtors, their estates, any successors thereto, including, without limitation, any trustee appointed in any of the Debtors' cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any such cases, or in any other proceedings superseding or related to any of the foregoing, any successors thereto, and any party determined to be the beneficial owner of the DIP Collateral by this Court. The Debtors and their successors shall be jointly and severally liable for repayment of any funds advanced pursuant to the DIP Loan Documents, together with interest thereon, at the times and in the amounts set forth in the DIP Loan Documents and all Obligations as defined and provided for in the DIP Loan Agreement (collectively, the "**DIP Obligations**"). No obligation, payment, transfer or grant of security under the DIP Loan Documents, the First Interim Order or this Second Interim Order, with respect to the DIP Facility shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy

CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

3. *Authorization to Borrow*. This Second Interim Order ratifies the authority granted the Debtors in the First Interim Order that permitted the Debtors to borrow from the DIP Lenders under the DIP Facility, the amount sufficient to pay off and replace the existing JMB DIP Facility (the "**Initial Funding**," as further defined in the DIP Loan Agreement) plus $700,000 of Committed Advances (as defined in the DIP Loan Agreement) to fund working capital needs of the Debtors, subject to the terms and conditions set forth in the DIP Loan Documents, the First Interim Order and this Second Interim Order. Subject to the terms and conditions of the First Interim Order, this Second Interim Order and the DIP Loan Documents, the Debtors are authorized to use Cash Collateral until the earlier of (a) the Maturity Date, and (b) the date upon which the Debtors' right to use Cash Collateral is terminated hereunder as a result of an Event of Default (as defined in the DIP Loan Agreement) which remains continuing and has not been waived by the DIP Lenders. Once repaid, the DIP Facility Loans (as defined below) incurred may not be re-borrowed. For the avoidance of doubt, the Debtors are not authorized to further borrow under the DIP Facility between the entry of this Second Interim Order and the Final Hearing. The Debtors shall provide an updated budget for any period subsequent to the Final Hearing prior to ten (10) days before such Final Hearing. If the Debtors have presented to the DIP Lenders an acceptable budget and the Final

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 71504

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

Order approves additional borrowing, the DIP Lenders shall fund further Committed Advances and Additional Funding Advances (with the funding of such Additional Funding Advances being in the DIP Lenders' sole and absolute discretion). If the Debtors have not presented to the DIP Lenders an acceptable budget or the Final Order does not approve additional borrowing, the DIP Lenders shall have no obligation to fund further Committed Advances or Additional Funding Advances after the Final Hearing.

4. *Use of Proceeds*. The Debtors shall use advances of credit under the DIP Facility (the "**DIP Facility Loans**") only for the express purposes specifically set forth in the DIP Loan Documents and as otherwise expressly authorized under the First Interim Order and this Second Interim Order. The Debtors were (pursuant to the First Interim Order) and otherwise are authorized (under this Second Interim Order) to use the proceeds of the DIP Facility Loans to (a) replace the existing JMB DIP Facility approved in these Chapter 11 Cases, (b) fund the post-petition working capital needs of the Operating Debtors during the pendency of these Chapter 11 Cases and the liquidation of ARMC (and any other Debtors that may need to liquidate), (c) pay fees, costs and expenses of the DIP Facility on the terms and conditions described in the DIP Loan Documents, and (d) pay the allowed administrative costs and expenses of the Chapter 11 Cases, in each case, solely in accordance with the DIP Loan Documents (including, but not limited to, the Budget), the First Interim Order and this Second Interim Order. Notwithstanding anything herein, the extensions of

Interim DIP/Cash Collateral Order  - 20 -  DENTONS US LLP
CSDOCS/19230786v3              601 South Figueroa Street, Suite 2500
CSDOCS/19428780v3             Los Angeles CA 90017-5704

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

credit under the DIP Facility shall not constitute cash collateral of the Prepetition Secured Parties.

5. _Reservation of Rights and Committee Standing_. Nothing in the First Interim Order, this Second Interim Order or any of the DIP Loan Documents shall constitute an acknowledgement or admission by the Committee of the validity, extent and/or priority of any of the Prepetition Credit Liens and/or any other liens, claims, encumbrances, or obligations of the Lapis Secured Parties. Except as otherwise expressly set forth in the First Interim Order and this Second Interim Order, nothing in the First Interim Order, this Second Interim Order or any of the DIP Loan Documents shall limit the rights of the Committee to assert any challenges, rights, claims, defenses and/or objections the Debtors' estates or the Committee may hold against the Lapis Secured Parties provided that in all such cases such challenges, rights, claims, defenses and/or objections are limited by and subject to the Challenge Stipulation. To the extent such challenges, rights, claims, defenses and/or objections as limited by the Challenge Stipulation belong to the Debtors' estates, the Committee is hereby granted standing to pursue such challenges, rights, claims, defenses and/or objections against the Lapis Secured Parties. Nothing contained herein shall be construed or deemed a waiver of any claims or defenses that the Lapis Secured Parties may have in response to any claims asserted by the Debtors' estates or the Committee.

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

6.     *Budget and Reporting*.     Except as otherwise provided herein or approved by the DIP Lenders, the proceeds of the DIP Facility shall be used only in compliance with the terms of the DIP Loan Documents, including the amended Budget.  The Debtors shall comply with the reporting requirements and obligations set forth in the DIP Loan Agreement.

7.     *Payment of DIP Fees and Expenses*.     The (a) Commitment Fee; (b) Funding Fee; (c) Exit Fee; and (d) Stated Maturity Fee are each hereby approved, and the Debtors are hereby authorized and directed to and shall pay such fees in accordance with, and on the terms set forth in the First Interim Order, this Second Interim Order and the DIP Loan Documents.  The Debtors are also hereby authorized and directed to pay upon demand, all other reasonable fees, costs, expenses and other amounts payable under the terms of the First Interim Order, this Second Interim Order and the DIP Loan Documents and all other reasonable fees and out-of-pocket costs and expenses of the DIP Lenders in accordance with the terms of the First Interim Order, this Second Interim Order and the DIP Loan Documents (including, without limitation, the reasonable and documented fees and out-of-pocket costs and expenses of Cole Schotz P.C. as counsel and Miller Nash Graham & Dunn LLP as local counsel to the DIP Lenders), subject to receiving a written invoice therefor.  None of such reasonable fees, costs, expenses or other amounts shall be subject to Court approval except as otherwise provided herein or required to be submitted in any particular format, and no recipient of any such payment shall be required to file

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

with respect thereto any interim or final fee application with this Court; <u>provided</u>, <u>however</u>, that copies of any such invoices shall be provided contemporaneously to the U.S. Trustee and the Committee; <u>provided</u>, <u>further</u>, <u>however</u>, that such invoices provided to the Committee may be redacted to the extent necessary to delete any information subject to the attorney-client privilege or any information constituting attorney work product (the "**<u>Redactions</u>**"), and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. If the U.S. Trustee or the Committee objects to the reasonableness of the fees and expenses of the DIP Lenders, and such objection cannot be resolved within ten (10) days of receipt of such invoices, the U.S. Trustee or the Committee may file with the Court and serve on the DIP Lenders an objection to the reasonableness of such fees and expenses (each, a "**<u>Reasonableness Fee</u>** **<u>Objection</u>**"). Without limiting the foregoing, if the Committee objects to the Redactions and such objection cannot be resolved within ten (10) days of receipt of such invoices, the DIP Lenders shall file with the Court and serve on the Debtors, the Committee and the U.S. Trustee a request for Court resolution of the disputes concerning the propriety of the disputed Redactions (each, a "**<u>Redaction Fee</u>** **<u>Objection</u>**," and each Reasonableness Fee Objection and Redaction Fee Objection may be referred to herein generally as a "**<u>Fee Objection</u>**"). The Debtors shall pay, in accordance with the terms and conditions of the First Interim Order, this Second Interim Order and the Final Order, within ten (10) days after receipt of the applicable

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

19-01189-WLH11    Doc 1020    Filed 02/05/20    Entered 02/05/20 15:38:13    Pg 23 of 54

invoice (a) the full amount invoiced if no Fee Objection has been timely filed, and (b) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed.  All such unpaid reasonable fees, costs, expenses and other amounts owed or payable to the DIP Lenders shall be secured by the DIP Collateral, subject and subordinate to the Carve-Out, and afforded all of the priorities and protections afforded to the DIP Obligations (subject to and subordinate to the Carve-Out) under the First Interim Order, this Second Interim Order and the DIP Loan Documents, until such time as the unpaid reasonable fees, costs, expenses and other amounts owed or payable to the DIP Lenders have been paid or disallowed pursuant to an order of the Court resolving any such Fee Objection.

8.     *Indemnification*.  The Debtors are hereby authorized to and hereby agree to indemnify and hold harmless the DIP Lenders and their affiliates, directors, officers, employees, agents, attorneys, or any other Person affiliated with or representing the DIP Lenders solely relating to the Obligations as defined in the Loan Documents (collectively, an "**Indemnified Party**") from and against: (a) all obligations, demands, claims, damages, losses and liabilities (including, without limitation, reasonable fees and disbursements of counsel) (collectively, "**Indemnity Claims**") as set forth in the DIP Loan Documents including those asserted by any other party in connection with the transactions contemplated by the DIP Loan Documents; and (b) all losses or expenses incurred, or paid by the DIP Lenders from, following, or arising from the transactions contemplated by the DIP Loan Documents

CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

(including reasonable and documented attorneys' fees and expenses), except, with respect to (a) and (b) above, for (i) any fees, costs, expenses and other amounts disallowed pursuant to an Order of the Court resolving any Fee Objections, and (ii) Indemnity Claims and/or losses directly caused by the DIP Lenders' gross negligence, willful misconduct or bad faith. In the case of an investigation, litigation or other proceeding to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by any of the Debtors or any of their respective directors, security holders or creditors, or any other Person or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated. No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to any Debtor or any of its subsidiaries or any shareholders or creditors of the foregoing for or in connection with the transactions contemplated hereby, except to the extent such liability is determined by a court of competent jurisdiction in a final non-appealable judgment or order to have resulted solely from such Indemnified Party's gross negligence, willful misconduct or bad faith. All indemnities of the Indemnified Parties shall constitute DIP Obligations secured by the DIP Collateral subject and subordinate to the Carve-Out and afforded all of the priorities and protections afforded to the DIP Obligations (subject to and subordinate to the Carve-Out) under the First Interim Order, this Second Interim Order, the Final Order and the DIP Loan Documents.

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

9.     *Use of Cash Collateral*.   The Debtors are authorized to use Cash Collateral in accordance with and pursuant to the First Interim Order, this Second Interim Order and the DIP Loan Documents.  Prior to the Maturity Date and until indefeasible payment in full of the DIP Obligations, the Debtors agree that they will not use or seek to use Cash Collateral other than pursuant to the terms of the First Interim Order and this Second Interim Order.

10.     *DIP Superpriority Claims*.  In accordance with section 364(c)(1) of the Bankruptcy Code, the DIP Obligations shall constitute allowed senior administrative expense claims against each Debtor and their estates (the "**DIP Superpriority Claims**") with priority in payment over any and all administrative expenses at any time existing or arising, of any kind or nature whatsoever, including, without limitation, the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114 of the Bankruptcy Code or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that the DIP Superpriority Claims shall be subject and subordinate to only the Carve-Out; provided, further that, subject and subordinate to the Carve-Out, the DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition property and assets of the Debtors and the estates

Interim DIP/Cash Collateral Order          - 26 -

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

(except Excluded Avoidance Actions (defined below)) and all DIP Collateral, and all proceeds thereof, including (a) all prepetition and postpetition commercial tort claims and the related proceeds, including but not limited to, all claims and causes of action (i) against the Debtors' officers and directors, and (ii) related to accounts receivable collections (the "**Commercial Tort Claims**"), and (b) any deposit in connection with a proposed Sale (whether terminated or otherwise) that becomes property of the Debtors' estates (a "**Sale Deposit**") subject, however, only to the senior lien rights of a purchaser, if any, and such stalking horse bid protections, if any, as may be approved by this Court; provided, however, that the DIP Lenders shall use their best efforts to satisfy the DIP Superpriority Claims from the assets constituting DIP Collateral other than the Commercial Tort Claims before seeking payment of the DIP Superpriority Claim from the Commercial Tort Claims.

11. *DIP Liens*.

(a) Effective immediately as of the entry of the First Interim Order, as security for the DIP Obligations, the DIP Lenders are granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (collectively, the "**DIP Liens**") on all DIP Collateral as collateral security for the prompt and complete performance and payment when due (whether at the Stated Maturity Date, by acceleration, or otherwise) of the DIP Obligations, subject and subordinate to the Carve-Out. The term "**DIP Collateral**" means collectively all pre-petition and post-petition real property and all pre-petition

CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
19-01189-WLH11   Doc 1020   Filed 02/05/20   Entered 02/05/20 15:38:13   Pg 27 of 54

and post-petition tangible and intangible personal property of each Borrower, in each case wherever located and whether now owned or hereafter acquired, including, but not limited to all accounts, contracts rights, chattel paper, cash, general intangibles, investment property, machinery, equipment, goods, inventory, furniture, fixtures, letter of credit rights, books and records, deposit accounts, documents, instruments, Commercial Tort Claims, leases and leaseholds and rents, together with all proceeds of each of the forgoing, including insurance proceeds (as each such term above is defined in the UCC, to the extent applicable); provided, however, that to the extent that assets constituting DIP Collateral other than the Commercial Tort Claims are available to satisfy the DIP Obligations in full, the DIP Lenders shall use their best efforts to satisfy the DIP Obligations from the assets constituting DIP Collateral other than the Commercial Tort Claims before seeking payment of the DIP Obligations from the Commercial Tort Claims. Notwithstanding the foregoing, nothing herein shall prevent the DIP Lenders from immediately and indefeasibly satisfying the DIP Obligations from the Commercial Tort Claims. The DIP Collateral shall not include any and all causes of action and the proceeds thereof arising under chapter 5 of the Bankruptcy Code or applicable state law equivalents (the "**Excluded Avoidance Actions**"). For the avoidance of doubt, the Excluded Avoidance Actions shall not include any claims or causes of action and the proceeds thereof related to accounts receivable collections regardless of whether certain claims arise under chapter 5 of the Bankruptcy Code or applicable state law equivalents.

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

CSDOCS/19230786v3
CSDOCS/19428780v3

(b)     To the fullest extent permitted by the Bankruptcy Code or applicable law, and except as otherwise set forth herein, any provision of any lease other than a real property lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or the payment of any fees or obligations to any entity in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, shall have no force or effect with respect to the DIP Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Loan Documents, the First Interim Order or this Second Interim Order, subject and subordinate to the Carve-Out.

12.     *Priority of DIP Liens*.

(a)     To secure the DIP Obligations, immediately upon and effective as of the entry of the First Interim Order, the DIP Lenders were granted on a final basis, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected DIP Liens in and on the DIP Collateral as follows, in each case subject and subordinate to the Carve-Out:

(i)     *Liens Priming the Prepetition Credit Liens.* Pursuant to 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens and security interests in all DIP Collateral, regardless of where located, which senior priming liens and security interests in favor of the

Interim DIP/Cash Collateral Order          - 29 -
CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

19-01189-WLH11     Doc 1020     Filed 02/05/20     Entered 02/05/20 15:38:13     Pg 29 of 54

DIP Lenders shall be senior to all Prepetition Credit Liens other than the Lapis Senior Holdco Liens. For the avoidance of doubt, as a result of the priming of the Prepetition Credit Liens (other than the Lapis Senior Holdco Liens) pursuant to the First Interim Order and this Second Interim Order, the DIP Lenders shall have a first priority senior priming lien and security interest in the Debtors' assets including, but not limited to, the Debtors' prepetition and post-petition commercial tort claims, including but not limited to all claims and causes of action (i) against the Debtors' officers and directors, and (ii) related to accounts receivable collections, and the proceeds thereof (regardless of whether such proceeds arise from damages to the Prepetition Collateral).

(ii)     *Liens on Unencumbered Property.*  Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to any Permitted Prior Lien.  As used herein, the term "**Permitted Prior Lien**" shall mean any valid, enforceable, and non-avoidable liens on and security interests in the DIP Collateral that (A) were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), (B) are not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (C) are senior in priority to the DIP Liens under applicable law and after giving effect to any lien release, subordination or inter-creditor agreements; provided, however, that the DIP Liens shall have priority over all Prepetition Credit Liens other than the Lapis Senior Holdco Liens; provided further, that any properly perfected liens on the Debtors' assets held by (i) TIAA Commercial Finance, Inc., (ii) Lower Valley Credit Union, and (iii) Med One Capital Funding, LLC are Permitted Prior Liens and shall not be primed by the DIP Liens; and

(iii) *Liens Junior to Certain Other Liens.*  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected junior liens on and security interests in all DIP Collateral (other than as set forth in clauses (i) and (ii)) subordinate only to the Lapis Senior Holdco Liens, the Permitted Prior Liens and the Carve-Out.

CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

1    (b)    Except as expressly set forth herein, and subject and subordinate to

2    the Carve-Out, the DIP Liens and the DIP Superpriority Claims shall not be made

3    junior to or *pari passu* with (1) any lien, security interest or claim heretofore or

4    hereinafter granted in any of the Chapter 11 Cases or any successor cases, and shall

5    be valid and enforceable against the Debtors, their estates, any trustee or any other

6    estate representative appointed or elected in the Chapter 11 Cases or any successor

7    cases and/or upon the dismissal or conversion of any of the Chapter 11 Cases or any

8    successor cases, (2) any lien that is avoided and preserved for the benefit of the

9    Debtors and their estates under section 551 of the Bankruptcy Code or otherwise; (3)

10   any intercompany or affiliate lien or claim; and (4) any liens arising after the Petition

11   Date excluding any liens or security interests granted in favor of any federal, state,

12   municipal or other governmental unit, commission, or board for any liability of the

13   Debtors.

14   (c)    *Existing Liens.*  TIAA Commercial Finance, Inc., Lower Valley Credit

15   Union and Med One Capital Funding, LLC have asserted secured claims against

16   property of the Debtors.  Notwithstanding any statement herein that is contrary to the

17   existence or priority of such secured claims, any grant of a security interest to the

18   DIP Lenders is junior and subordinate in priority to any properly perfected liens on

19   the DIP Collateral held by TIAA Commercial Finance, Inc., Lower Valley Credit

20   Union and Med One Capital Funding, LLC.  Notwithstanding anything to the

21   contrary contained herein, all rights, claims, defenses and/or objections of the

Interim DIP/Cash Collateral Order          - 31 -    DENTONS US LLP
CSDOCS/19230786v3                                   601 South Figueroa Street, Suite 2500
CSDOCS/19428780v3                                   Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

Committee and any third party with respect to any asserted liens on and security interests in the Debtors' property, including without limitation those asserted by TIAA Commercial Finance, Inc., Lower Valley Credit Union, and Med One Capital Funding, LLC, are expressly reserved and preserved and all such asserted liens and security interests (except those asserted by TIAA Commercial Finance, Inc., Lower Valley Credit Union, and Med One Capital Funding, LLC) are subject and subordinate to the Carve-Out.

13.    *Adequate Protection of Lapis Secured Parties*.  The Lapis Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all the Prepetition Collateral (to the extent that the Lapis Secured Parties had valid and perfected liens on and security interests in the Prepetition Collateral provided that any challenge to the Lapis Secured Parties' liens and security interests is limited as set forth in the Challenge Stipulation), including Cash Collateral, in an amount equal to the aggregate diminution in value of the Lapis Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for the reasons provided under the Bankruptcy Code, subject and subordinate to the Carve-Out.  In consideration for the foregoing, the Lapis Secured Parties are hereby granted the following in the amount of such diminution (collectively, the "**Adequate Protection Obligations**"), subject to the Carve-Out:

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

(a)     *Lapis 2017 Loan Adequate Protection Liens.*  The Bond Trustee, on behalf of itself and the Bondholders, was granted (effective and perfected upon the date of the First Interim Order and without the necessity of any mortgages, security agreements, pledge agreements, financing statement or other agreements) in the amount equal to the aggregate diminution in value of the interests in the Lapis 2017 Loan Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reasons provided under the Bankruptcy Code (the "**Lapis 2017 Loan Adequate Protection Claim**"), a valid, perfected replacement security interest in and lien upon any and all assets subject (i) to the Lapis 2017 SHC Holdco Liens, subordinate to the Carve-Out, and (ii) to the Lapis 2017 Sunnyside Liens and Lapis 2017 A/R Liens, subordinate to (A) the DIP Liens and (B) the Carve-Out (the "**Lapis 2017 Loan Replacement Liens**").  The 2017 Lapis Loan Replacement Liens granted pursuant to this paragraph shall be senior to the 2019 Lapis Loan Replacement Liens, provided nothing herein shall affect the terms of any intercreditor arrangements between the Lapis Secured Parties.

(b)     *Lapis 2019 Loan Adequate Protection Liens.*  The Lapis Prepetition Agent, on behalf of itself and the Lapis 2019 Loan Lenders, was granted (effective and perfected upon the date of the First Interim Order and without the necessity of any mortgages, security agreements, pledge agreements, financing statement or other agreements), in the amount equal to the aggregate diminution in value of the interests in the Lapis 2019 Loan Collateral (including Cash Collateral)

CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

19-01189-WLH11     Doc 1020     Filed 02/05/20     Entered 02/05/20 15:38:13     Pg 33 of 54

from and after the Petition Date, if any, for any reasons provided under the Bankruptcy Code (the "**Lapis 2019 Loan Adequate Protection Claim**"), a valid, perfected replacement security interest in and lien upon any and all assets subject (i) to the Lapis 2019 SHC Holdco Liens, subordinate to the Carve-Out, and (ii) to the Lapis 2019 Sunnyside Liens and Lapis 2019 A/R Liens, subordinate to (A) the DIP Liens and (B) the Carve-Out (the "**Lapis 2019 Loan Replacement Liens**" and together with the Lapis 2017 Loan Replacement Liens, the "**Adequate Protection Liens**").

(c)     *Lapis 2017 Loan 507(b) Claims.* The Bond Trustee, on behalf of itself and the Bondholders, was granted, an allowed superpriority administrative expense claim as provided in section 507(b) of the Bankruptcy Code in the amount of Lapis 2017 Loan Adequate Protection Claim with, except as set forth in the First Interim Order and this Second Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Lapis 2017 Loan 507(b) Claims**").  The Lapis 2017 Loan 507(b) Claims shall be subject and subordinate only to the Carve-Out and the DIP Superpriority Claims.   The Lapis Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Lapis 2017 Loan 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) have indefeasibly been paid in cash in full and all DIP Commitments terminated.  The 2017 Lapis Loan 507(b)

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

Claims shall be senior to the Lapis 2019 Loan 507(b) Claims, provided nothing herein shall affect the terms of any intercreditor arrangements between and among the Lapis Secured Parties.

(d) *Lapis 2019 Loan 507(b) Claims*. The Lapis Agent, on behalf of itself and the Lapis 2019 Loan Lenders, was granted, an allowed superpriority administrative expense claim as provided in section 507(b) of the Bankruptcy Code in the amount of Lapis 2019 Loan Adequate Protection Claim with, except as set forth in the First Interim Order and this Second Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Lapis 2019 Loan 507(b) Claims**"). The Lapis 2019 Loan 507(b) Claims shall be subject and subordinate only to the Carve-Out, the DIP Superpriority Claims and the Lapis 2017 Loan 507(b) Claims. The Lapis Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Lapis 2019 Loan 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) have indefeasibly been paid in cash in full and all DIP Commitments terminated.

(e) *Lapis Secured Parties Information*. As additional adequate protection of the Lapis Secured Parties' security interests in the Lapis Prepetition Collateral, the Debtors shall contemporaneously provide the Lapis Secured Parties with any reporting provided to the DIP Lenders under the DIP Loan Agreement. The

DENTONS US LLP
601 South Figueroa, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

Lapis Secured Parties and the Committee shall each be deemed to be an additional notice party for purposes of the DIP Facility and all parties thereto shall provide the Lapis Secured Parties and the Committee contemporaneous copies of all notices pursuant thereto. The Debtors shall additionally provide the Lapis Secured Parties and the Committee any reports and information as the Lapis Secured Parties and the Committee may reasonably request from time to time.

(f)     For the avoidance of doubt, the Excluded Avoidance Actions and the Commercial Tort Claims shall not be used as collateral for any Adequate Protection Obligations.

14.     _Carve-Out_.

(a)     _Carve-Out_.  As used in the First Interim Order and this Second Interim Order, the term "**Carve-Out**" means, collectively, the sum of:  (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. §1930(a) and 31 U.S.C. § 3717; (ii) the reasonable fees and expenses up to $15,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) up to $1,000,000 for the Debtors' accrued and unpaid payroll obligations to employees (excluding management and consultants and not including paid time off, severance, vacation or any other claims based upon state or federal law) (the "**Employee Carve-Out**"); and (iv) the aggregate amount of unpaid fees and expenses of the Debtors', the Committee and the Patient Care Ombudsman under sections 327(a), 328 or 1103(a) of the Bankruptcy Code (the "**Case Professionals**"), to the extent such fees

CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

and expenses are allowed and payable pursuant to an order of the Court (which order has not been reversed, vacated or stayed) ("**Allowed Professional Fees**"), and the reimbursement of out-of-pocket expenses allowed by the Court and incurred by the members of the Committee in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members) ("**Committee Expenses**"), which amount under this clause (iv) shall not exceed the sum of: (x) an aggregate amount per week limited to the amount set forth in the Budget for Allowed Professional Fees and Committee Expenses incurred prior to the delivery of a Carve-Out Trigger Notice (and if such amount exceeds the amount set forth in the Budget, each Case Professional and/or Committee member shall receive the portion of its Allowed Professional Fees and/or Committee Expenses, as appropriate, on a pro rata basis in an amount not to exceed the Budget for Case Professionals) provided (i) the Maturity Date has not occurred or (ii) Event of Default has not occurred or continuing (the "**Pre Carve-Out Notice Trigger Cap**") *plus* (y) $120,000 for Allowed Professional Fees and Committee Expenses incurred from and after the delivery of the Carve-Out Trigger Notice (defined below) (the "**Post Carve-Out Notice Cap**" together, with the Pre Carve-Out Notice Trigger Cap, the "**Carve-Out Cap**").  No portion of the Carve-Out or any Cash Collateral may be used in violation of the First Interim Order or this Second Interim Order.  Nothing in the First Interim Order or this Second Interim Order or otherwise shall be construed to increase the Carve-Out if actual (i) Allowed Professional Fees of any Case Professional or (ii) Committee

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

Expenses are higher in fact than Carve-Out Cap amount.  Any funds held by the Debtors upon the delivery of a Carve-Out Trigger Notice shall be applied dollar for dollar, against the Carve-Out.  Nothing in the First Interim Order or this Second Interim Order shall be construed to increase the Employee Carve-Out if accrued and unpaid payroll obligations of the Debtors exceed the Employee Carve-Out.

(b)     *Carve-Out Trigger Notice*.  As used herein, the term "**Carve-Out Trigger Notice**" means a written notice provided by the DIP Lenders to the Debtors, the Committee, and the U.S. Trustee that the Post Carve-Out Notice Trigger Cap is invoked, which notice may be delivered following the occurrence and during the continuance of an Event of Default and/or acceleration of the DIP Obligations under the DIP Loan Documents.  Upon delivery of the Carve-Out Trigger Notice to the Debtors (the "**Termination Declaration Date**"), the Debtors shall provide notice by email and facsimile to all Case Professionals, at the email addresses and facsimile numbers set forth in each Professional's notice of appearance filed with the Bankruptcy Court (or, if there is no such notice of appearance, at such Professional's last known email address and facsimile number) within one (1) day after the Debtors' receipt of a Carve-Out Trigger Notice informing them that such Carve-Out Trigger Notice has been received and further advising them that the Debtors' ability to pay such Case Professionals and Committee Expenses is subject to and limited by the Post Carve-Out Notice Trigger Cap.

CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
19-01189-WLH11    Doc 1020    Filed 02/05/20    Entered 02/05/20 15:38:13    Pg 38 of 54

(c) *Payment of Allowed Professional Fees Prior to Termination Declaration Date.* Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees and Committee Expenses shall not reduce the Carve-Out.

(d) *Payment of Carve-Out on or After the Termination Declaration Date.* Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees and Committee Expenses shall permanently reduce the Carve-Out on a dollar-for-dollar basis. Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under the First Interim Order, this Second Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

(e) *Objection Rights.* Nothing contained herein or in the DIP Loan Documents, including the inclusion of line items in the Budget for Professional Fees, is intended to constitute, nor shall be construed as consent to the allowance of any Case Professional's fees, costs and expenses by any party and shall not affect the rights of the Debtors, the DIP Lenders, the Committee, the Lapis Secured Parties or any other party in interest to object to the allowance and/or payment of any such amounts incurred or requested.

(f) *Payment of Compensation.* Nothing contained herein or in the DIP Loan Documents shall affect the rights of the Case Professionals to seek

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

allowance and payment of fees and expenses in excess of the amounts set forth in the Carve-Out and Budget. Upon the indefeasible payment in full in cash and discharge of the DIP Obligations, nothing contained herein shall affect the rights of the Debtors to pay such amounts as approved by the Court.

(g) *Carve-Out Priority*. The Carve-Out shall be senior in all respects to the DIP Liens, the DIP Superpriority Claims, the Prepetition Credit Liens, the liens and/or claims of the Lapis Secured Parties, and any and all other forms of adequate protection, liens or claims securing the DIP Obligations, the Adequate Protection Obligations and/or the obligations of any Prepetition Secured Parties or Lapis Secured Parties.

15. *Bankruptcy Code Sections 506(c) and 552(b) Waivers*. Without limiting the Carve-Out, the Debtors irrevocably waive and shall be prohibited from asserting (i) any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lenders upon the DIP Collateral and the Lapis Secured Parties upon the Prepetition Collateral and no costs or expenses of administration that have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against the DIP Lenders or the Lapis Secured Parties or their respective claims or liens (including any claims or liens granted pursuant to the First Interim Order and this Second Interim Order), and (ii) the "equities of the case"

exception under section 552(b) of the Bankruptcy Code in connection with the DIP Facility, the Lapis 2017 Loan or the Lapis 2019 Loan.

16.    *Application of Proceeds*.  In no event shall the DIP Lenders be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral, and all proceeds thereof shall be received and used in accordance with the First Interim Order and this Second Interim Order.

17.    *Disposition of Collateral*.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, other than in the ordinary course of business or in connection with the payments contemplated under the First Interim Order and this Second Interim Order, including the Carve-Out, without the prior written consent of the DIP Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lenders) or Order of this Court; provided that for the avoidance of doubt, the Debtors shall comply with section 6.4 of the DIP Loan Agreement.  Notwithstanding anything otherwise provided herein, 100% of any net cash proceeds of any sale of DIP Collateral outside of the ordinary course of business shall, subject to the satisfaction of the Carve-Out and the lien priorities outlined in paragraph 13 herein, be used to immediately satisfy the DIP Obligations.

18.    *Restrictions on Granting Postpetition Liens*.  Other than the Carve-Out or as otherwise provided in the First Interim Order, this Second Interim Order or the DIP Loan Documents, no claim or lien having a priority superior or *pari passu* with

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

CSDOCS/19230786v3
CSDOCS/19428780v3

those granted by the First Interim Order, this Second Interim Order and the DIP Loan Documents to the DIP Lenders shall be granted or permitted by any order of this Court heretofore or hereafter entered in the Chapter 11 Cases, and the Debtors will not grant any such mortgages, security interests or liens in the DIP Collateral (or any portion thereof) or to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise, while (i) any portion of the DIP Facility, any DIP Facility Loans or any other DIP Obligations, are outstanding, or (ii) the DIP Lenders has any Commitment under the DIP Loan Documents. For the avoidance of doubt, there shall be no restriction and this paragraph shall not apply and excludes any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

19. *Automatic Effectiveness of Liens*. The DIP Liens shall not be subject to a challenge and shall attach and become valid, perfected, binding, enforceable, non-avoidable and effective by operation of law as of the date of the entry of the First Interim Order and this Second Interim Order on a final basis, without any further action by the Debtors and the DIP Lenders, respectively, and without the necessity of execution by the Debtors or the filing or recordation, of any financing statements, security agreements, deposit control agreements, vehicle lien applications, mortgages, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents or the taking of any other actions. All DIP Collateral shall be free and clear of other liens,

Interim DIP/Cash Collateral Order — 42 —
CSDOCS/19230786v3
CSDOCS/19428780v3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

19-01189-WLH11   Doc 1020   Filed 02/05/20   Entered 02/05/20 15:38:13   Pg 42 of 54

claims and encumbrances, except as provided in the DIP Loan Documents, the First Interim Order and this Second Interim Order. If the DIP Lenders hereafter request that the Debtors execute and/or deliver to the DIP Lenders financing statements, control agreements, mortgages, or other documents considered by the DIP Lenders to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized and directed to execute and/or deliver such financing statements, control agreements, mortgages, and documents, and the DIP Lenders are hereby authorized to file or record such documents in their discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of the entry of the First Interim Order; provided, however, no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. The DIP Lenders, in their sole discretion, may file a photocopy of the First Interim Order or this Second Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, notices of liens or similar statements.[4]

20. _Protection Under Section 364(e) of the Bankruptcy Code_. The DIP Lenders have acted in good faith in connection with the First Interim Order and this

---

[4] The provisions of section 1146(a) of the Bankruptcy Code do not apply herein.

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

Second Interim Order and its reliance on the First Interim Order or this Second Interim Order is in good faith. The reversal or modification on appeal of the authorizations under section 364 of the Bankruptcy Code contained in the First Interim Order or this Second Interim Order does not affect the validity of any DIP Obligation or the DIP Liens, whether or not the DIP Lenders knew of the pendency of the appeal, unless such authorization and incurrence of the DIP Obligations and the DIP Liens and advance of the DIP Facility under 364 of the Bankruptcy Code in the First Interim Order and this Second Interim Order, were stayed pending appeal.

21. _Reservation of Rights of the DIP Lender_. Notwithstanding any other provision of the First Interim Order or this Second Interim Order to the contrary, the entry of this Second Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (i) any of the rights of the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of such parties to (a) request modification of the automatic stay of section 362 of the Bankruptcy Code, (b) request dismissal of any of these Chapter 11 Cases, conversion of any of these Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of these Chapter 11 Cases, (c) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (ii) any other rights, claims, or privileges (whether legal or equitable or otherwise) of the DIP Lenders. The delay in or failure of the DIP Lenders to seek relief or otherwise exercise their

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

CSDOCS/19230786v3
CSDOCS/19428780v3

respective rights and remedies shall not constitute a waiver of any of the DIP Lenders' rights and remedies.

22.      _Right to Credit Bid_.

(a)      *DIP Lender.*  Pursuant to section 363(k) of the Bankruptcy Code, unless the Court orders otherwise for cause as provided under section 363(k) of the Bankruptcy Code, the DIP Lenders shall have the right to credit bid the total of the DIP Obligations for any or all of the DIP Collateral at a sale, lease or other disposition of such DIP Collateral outside the ordinary course of business (including any auction or similar sales), whether pursuant to a plan of reorganization or a motion pursuant to section 363 of the Bankruptcy Code or otherwise (which credit bid rights under section 363(k) of the Bankruptcy Code or otherwise shall not be impaired in any manner).

(b)      A credit bid may be applied only to reduce the cash consideration with respect to those assets in which the party submitting such credit bid holds a perfected security interest.   The DIP Lenders shall be considered a "Qualified Bidder" with respect to their rights to acquire all or any of the assets by credit bid as set forth in the Bidding Procedures Order.

23.      _Remedies and Notice Upon the Occurrence of Maturity Date or Event of Default_.  Upon prior written notice by the DIP Lenders to counsel for the Debtors,

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

counsel for the Committee, and the U.S. Trustee of the occurrence of an Event of Default (each as defined in the DIP Loan Documents and incorporated herein by reference) and without further order of the Court, the DIP Lenders may (i) declare the DIP Obligations to be immediately due and payable; (ii) terminate the DIP Lenders' commitment under the DIP Facility (other than the Carve-Out) or use of Cash Collateral; (iii) charge default rate interest; and/or (iv) upon five (5) business days' notice to counsel to the Debtors, counsel to the Committee and the U.S. Trustee, exercise all default-related rights and remedies against the DIP Collateral, without further order of or application or motion to the Bankruptcy Court, and without restriction or restraint by any stay under sections 362 and 105 of the Bankruptcy Code or otherwise, provided however, that during the five (5) business day notice period, any party in interest shall have the right to file a pleading in opposition to the DIP Lenders' exercise of rights and remedies including the delivery of the Carve-Out Trigger Notice; provided further that, unless otherwise ordered by the Court, the only issue that may be raised by any party in such pleading shall be whether in fact, an Event of Default has occurred and is continuing; but provided further that, if an Event of Default occurs as a result of the Debtors' failure to indefeasibly satisfy the DIP Obligations by the Stated Maturity Date (as defined in the DIP Loan Documents), the above referenced five (5) day notice period shall not apply and the Debtors and all other interested parties shall not have any challenge rights, except as may be otherwise ordered by the Court.

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

24.    _Modification of Stay_.  Subject to the terms set forth herein, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of the First Interim Order, this Second Interim Order and the DIP Loan Documents, including, without limitation, to permit the DIP Lenders to exercise all rights and remedies provided for in the DIP Loan Documents and take any and all actions provided therein, in each case, in accordance with paragraph 23 of this Second Interim Order.

25.    _Survival of DIP Liens, DIP Superpriority Claims, and Other Rights_.  If, in accordance with section 364(e) of the Bankruptcy Code, this Second Interim Order does not become a final non-appealable order, if a trustee terminates this Second Interim Order, or if any of the provisions of the First Interim Order or this Second Interim Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability or effectiveness of (or subordination to the Carve-Out of) any lien, security interests or any other benefit or claim authorized hereby with respect to any DIP Obligations or Adequate Protection Obligations incurred prior to the effective date of such termination or subsequent order.  All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of the First Interim Order and this Second Interim Order, and the DIP Lenders and the Lapis Secured Parties shall be entitled to all the rights,

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

CSDOCS/19230786v3
CSDOCS/19428780v3

remedies, privileges and benefits granted herein, including the liens and priorities granted herein, with respect to any DIP Facility Loan and Adequate Protection Obligations, subject to the Carve-Out and any and all challenges, rights, claims, defenses and/or objections of the Committee and any third parties as set forth herein.

26. *Survival of the First Interim Order and this Second Interim Order*. The provisions of the First Interim Order and this Second Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a chapter 7 case; or (iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of the First Interim Order and this Second Interim Order as well as the DIP Superpriority Claims and the DIP Liens in the DIP Collateral granted pursuant to the First Interim Order and this Second Interim Order and the DIP Loan Documents shall continue in full force and effect notwithstanding the entry of any such order. Such claims and liens shall maintain their priority as provided by the First Interim Order, this Second Interim Order and the DIP Loan Documents, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full in cash and discharged or otherwise treated under a plan of reorganization, which is reasonably acceptable to the DIP Lenders. In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Loan Documents unless agreed to by and among the Debtors and the DIP Lenders.

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

27.     *Modifications of DIP Loan Documents*.  The Debtors and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the DIP Loan Documents, any non-material modifications to the DIP Loan Documents without further notice, motion or application to, order of or hearing before, this Court, upon notice to counsel for the Committee.  Any material modification or amendment to the DIP Loan Documents shall only be permitted pursuant to an order of this Court, after being submitted to this Court upon five (5) days' notice to the U.S. Trustee and counsel to the Committee, each of whom reserves all rights and objections with respect to any such material modification or amendment; provided, that any forbearance from, or waiver of, (i) a breach by the Debtors of a covenant, representation or any other agreement, or (ii) a default or an Event of Default, in each case under the DIP Loan Documents shall not require an order of this Court; provided, that the Debtors or the DIP Lenders provide notice of such forbearance or waiver to counsel to the Committee.  In the event of any inconsistency between this Second Interim Order and the DIP Loan Agreement, this Second Interim Order shall control.

28.     *Insurance Policies*.  Upon entry of the First Interim Order, on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral: (i) the DIP Lenders shall be, and shall be deemed to be, without any further action by or notice to any person, named as additional insureds; and (ii) the DIP Lenders shall be and shall be deemed to be, without any further action by or

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

notice to any person, named as loss payee for DIP Collateral on which the DIP Lenders hold a first priority lien. The Debtors are hereby authorized on a final basis to and shall take any actions necessary to have the DIP Lenders be added as an additional insured and loss payee on each insurance policy maintained by the Debtors consistent with the First Interim Order, this Second Interim Order and the DIP Loan Agreement, which in any way relates to the DIP Collateral.

29. *Financial Information*. The Debtors shall deliver to the DIP Lenders and the Committee such financial and other information concerning the business and affairs of the Debtors and any of the DIP Collateral as may be required pursuant to the DIP Loan Documents and/or as the DIP Lenders or the Committee shall reasonably request from time to time. The Debtors shall allow the DIP Lenders access to the premises in accordance with the terms of the DIP Loan Documents for the purpose of enabling the DIP Lenders to inspect and audit the DIP Collateral and the Debtors' books and records.

30. *Retention of Commercial Real Estate Broker*. On or before February 19, 2020, the Debtor shall retain a commercial real estate broker (approved by the DIP Lenders) to (a) develop a marketing plan for the disposition of ARMC and the MOB facilities, and (b) assist in the assessment or negotiation of intercompany leases on any ARMC properties.

31. *Proofs of Claim*. Notwithstanding any order entered by the Bankruptcy Court in relation to the establishment of a bar date in the Chapter 11 Cases to the

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles CA 90017-5704

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

contrary, or otherwise, the DIP Lenders and Lapis Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases.

32. _Exclusivity_. The DIP Lenders, in their capacity as such, are not Exempt Parties, as defined in the _Order Granting Debtors' Motion for Entry of an Order Pursuant to Section 1121 of the Bankruptcy Code for Second Extension of the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances_ [Docket No. 802] (the "**Order Extending Exclusivity**"). Therefore, the exclusivity periods within which the Debtors may file a plan of reorganization and obtain acceptances of such plan of reorganization are extended through and including January 31, 2020, and through and including March 31, 2020, respectively, with respect to the DIP Lenders in their capacity as such.

33. _Immediate Effect of Order_. The terms and conditions of this Second Interim Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise. Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

///End of Order///

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

CSDOCS/19230786v3
CSDOCS/19428780v3

PRESENTED BY:

___/s/ James L. Day_____
JAMES L. DAY (WSBA #20474)
BUSH KORNFELD LLP

SAMUEL R. MAIZEL (*Pro Hac Vice* pending)
SAM J. ALBERTS (WSBA #22255)
DENTONS US LLP

*Attorneys for the Chapter 11*
*Debtors and Debtors In Possession*

<span style="color:red">* Changes made by court</span>

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

# EXHIBIT A

## BUDGET

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373

# Astria Health
## Weekly Cash Flow Budget

*($ in thousands)*

| Week | 39 (P) | 40 (P) | 41 (P) | 42 (P) | 43 (P) | 44 (P) | 45 (P) | 46 (P) |
|---|---|---|---|---|---|---|---|---|
| Week-ending date | 2/1 | 2/8 | 2/15 | 2/22 | 2/29 | 3/7 | 3/14 | 3/21 |
| **Beginning operating cash balance** | **4,586** | **3,055** | **1,763** | **2,479** | **2,159** | **2,361** | **3,984** | **5,703** |
| **Collections** | | | | | | | | |
| Yakima / Toppenish | 1,200 | 1,200 | 1,400 | 1,500 | 1,600 | 1,700 | 1,700 | 1,700 |
| Topp Behavioral Adjustment | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Sunnyside | 1,800 | 2,000 | 2,000 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| Provider Tax | | | | | | | 100 | 90 |
| Ambulatory Services | | | 130 | 260 | 260 | 260 | 260 | 260 |
| DIP Loan Borrowing | | | | | | | | |
| **Total Collections** | **3,100** | **3,300** | **3,630** | **4,060** | **4,160** | **4,260** | **4,360** | **4,350** |
| **Disbursements** | | | | | | | | |
| Payroll, taxes, and other -Y/T | 577 | 290 | 636 | 308 | 936 | 308 | 636 | 308 |
| Payroll & Other ASH | 500 | 980 | 525 | 980 | 825 | 980 | 525 | 980 |
| Ambulatory Salaries | 260 | 245 | 65 | 260 | 115 | 260 | 115 | 260 |
| Ambulatory Costs | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 |
| Other Op Ex | 90 | 90 | 85 | 80 | 75 | 75 | 75 | 75 |
| Purchased services | 375 | 375 | 375 | 365 | 365 | 365 | 365 | 365 |
| Contract labor | 275 | 250 | 250 | 225 | 225 | 190 | 190 | 190 |
| Rent | 78 | 81 | 76 | 76 | 76 | 58 | 63 | 63 |
| Medical professionals | 100 | - | - | 25 | 65 | - | - | 25 |
| Utilities | 160 | - | - | 160 | 120 | - | - | - |
| Prop Tax and Ins | - | 350 | 121 | 90 | - | - | 121 | 90 |
| Supplies, pharma., and dietary | 699 | 649 | 499 | 143 | 118 | 118 | 268 | 268 |
| Corporate Overhead | 481 | - | - | - | 375 | - | - | - |
| Provider Tax | - | 900 | - | 900 | - | - | - | - |
| CRO Fees | | | | | | | | |
| UMR Payments | 100 | 350 | 251 | 251 | 251 | 251 | 251 | 251 |
| Medicaid Repayment ASH | | | | 85 | | | | 85 |
| Professional Fees | - | - | - | 400 | - | - | - | 400 |
| DIP Fees and Expenses | | | | | | | | |
| DIP Interest | 380 | - | - | - | 380 | - | - | - |
| UST Fees | 525 | | | | | | | |
| **Total Disbursements** | **4,631** | **4,592** | **2,914** | **4,380** | **3,958** | **2,637** | **2,641** | **3,392** |
| **WEEKLY NET CASH FLOW** | **(1,531)** | **(1,292)** | **716** | **(320)** | **202** | **1,623** | **1,719** | **958** |
| **ENDING CASH (ACTUAL)** | **3,055** | **1,763** | **2,479** | **2,159** | **2,361** | **3,984** | **5,703** | **6,661** |

19-01189-WLH11   Doc 1020   Filed 02/05/20   Entered 02/05/20 15:38:13   Pg 54 of 54