JAMES L. DAY (WSBA #20474)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel: (206) 521-3858
Email: jday@bskd.com

SAMUEL R. MAIZEL (admitted pro hac vice)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300
Fax: (213) 623-9924
Email: samuel.maizel@dentons.com

SAM J. ALBERTS (WSBA #22255)
DENTONS US LLP
1900 K. Street, NW
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756
Email: sam.alberts@dentons.com

Attorneys for the Chapter 11 Debtors
and Debtors In Possession

MARK D. NORTHRUP (WSBA #16947)
MILLER NASH GRAHAM & DUNN LLP
2801 Alaskan Way, Suite 300
Seattle, Washington 98121-1128
Tel: (206) 624-8300
Email: mark.northrup@millernash.com

WILLIAM KANNEL (admitted pro hac vice)
IAN A. HAMMEL (admitted pro hac vice)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 542-6000
Email: wkannel@mintz.com
Email: iahammel@mintz.com
Email: tmckeon@mintz.com

Attorneys for the Lapis Parties

HONORABLE
WHITMAN L. HOLT

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

In re:

ASTRIA HEALTH, *et al*.,

Debtors and
Debtors in
Possession.[1]

Chapter 11
Lead Case No. 19-01189-11
Jointly Administered

**MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ASTRIA HEALTH AND ITS DEBTOR AFFILIATES**

---

[1] The Debtors, along with their case numbers, are as follows: Astria Health (19-01189-11), Glacier Canyon, LLC (19-01193-11), Kitchen and Bath Furnishings, LLC (19-01194-11), Oxbow Summit, LLC (19-01195-11), SHS Holdco, LLC (19-01196-11), SHC Medical Center - Toppenish (19-01190-11), SHC Medical Center - Yakima (19-01192-11), Sunnyside Community Hospital Association (19-01191-11), Sunnyside Community Hospital Home Medical Supply, LLC (19-01197-11), Sunnyside Home Health (19-01198-11), Sunnyside Professional Services, LLC (19-01199-11), Yakima Home Care Holdings, LLC (19-01201-11), and Yakima HMA Home Health, LLC (19-01200-11).

**Table of Contents**

**INTRODUCTION** .......................................................................................................... **3**

**SECTION I.       DEFINITIONS AND RULES OF CONSTRUCTION** ................................ **3**
    A.   Definitions .......................................................................................................... 3
    B.   Rules of Interpretation ...................................................................................... 21
    C.   Computation of Time ........................................................................................ 22
    D.   Governing Law ................................................................................................. 22
    E.   Reference to Monetary Figures ......................................................................... 23
    F.   Controlling Document ...................................................................................... 23

**SECTION II.      CLASSIFICATION AND TREATMENT OF CLAIMS** ........................... **23**
    A.   General Overview ............................................................................................. 23
    B.   Limited Consolidation ...................................................................................... 23
    C.   Summary and Classification of Claims and Interests ....................................... 24
    D.   Unclassified Claims ......................................................................................... 25
    E.   Classified Claims ............................................................................................. 27

**SECTION III.     MEANS OF IMPLEMENTING THE PLAN** ............................................ **32**
    A.   The Senior Debt 9019 Settlement .................................................................... 32
    B.   The Committee Plan Settlement ....................................................................... 33
    C.   Exit Loan .......................................................................................................... 34
    D.   Vendor Claims ................................................................................................. 34
    E.   Corporate Actions ............................................................................................ 34
    F.   The GUC Distribution Trust ............................................................................ 35
    G.   Termination of the GUC Distribution Trust ..................................................... 40
    H.   Establishment of Liquidation Trust .................................................................. 40
    I.   Prosecution of D&O Causes of Action ............................................................ 40
    J.   Post-Confirmation Management ....................................................................... 41
    K.   Termination of the Committee and Appointment of POC ................................. 41
    L.   Creation of Administrative and Priority Claims Reserve ................................. 42
    M.   Objections to Claims ........................................................................................ 42
    N.   Claims Paid or Payable by Third Parties .......................................................... 43
    1.   Claims Paid by Third Parties ........................................................................... 43
    2.   Claims Payable by Third Parties ...................................................................... 43
    O.   Special Issues Regarding Insured Claims ......................................................... 43
    P.   Distributions of Property Under the Plan .......................................................... 44
    Q.   Manner of Cash Payments Under the Plan ....................................................... 44
    R.   No Distributions With Respect to Disputed Claims .......................................... 44
    S.   Record Date for Distribution ............................................................................ 44
    T.   Delivery of Distributions .................................................................................. 45
    U.   Undeliverable and Unclaimed Distributions .................................................... 45
    V.   Estimation of Disputed Claims for Distribution Purposes ................................ 45
    W.   Minimum Distributions .................................................................................... 46
    X.   Rounding .......................................................................................................... 46
    Y.   Full Satisfaction ............................................................................................... 46

i

US_Active\116219861\V-9

Z. Distributions Free and Clear .................................................. 46
AA. Conditions Precedent to Plan Confirmation ........................... 46
BB. Conditions to Effectiveness ................................................... 47
CC. Authorization of Entity Action .............................................. 48
DD. Reservation of Fair and Equitable (Cram Down) Power ......... 48

**SECTION IV.  TREATMENT OF MISCELLANEOUS ITEMS ................................ 48**
A. Assumption of Executory Contracts ....................................... 48
B. Rejection of Executory Contracts ........................................... 49
C. Indemnification Obligations .................................................. 50
D. Lapis Parties Fees and Expenses ............................................ 50
E. Changes in Rates Subject to Regulatory Commission Approval ......................... 50

**SECTION V.  PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS ................................. 51**
A. Joint Pursuit of Reconciliation, Objections to, and/or Settlement of Asserted General Unsecured Claims ................................................... 51
B. Resolution of Disputed Claims ............................................... 51
C. Disallowance of Claims ......................................................... 53
D. Disallowance of Untimely Claims .......................................... 53
E. Amendments to Claims .......................................................... 53
F. No Interest ........................................................................... 54

**SECTION VI.  RETENTION OF JURISDICTION ................................. 54**

**SECTION VII.  EFFECT OF CONFIRMATION OF PLAN ......................... 56**
A. Discharge ............................................................................ 56
B. Compromise and Settlement of Claims, Interests, and Controversies .................. 57
C. Release of Liens ................................................................... 57
D. Subordinated Claims ............................................................. 58
E. Exculpation .......................................................................... 58
F. Releases .............................................................................. 58
G. Injunction ............................................................................ 61
H. Waiver of Statutory Limitations on Releases ........................... 62
I. Limitation on Liability of Liquidation Trustee and GUC Distribution Trustee ... 63
J. Setoffs ................................................................................. 64
K. Revesting of Property in Debtors ........................................... 64
L. Preservation of Restricted Funds for Charitable Purposes ........ 64
M. Modification of Plan ............................................................. 65
N. Termination of the Patient Care Ombudsman .......................... 65
O. Post-Confirmation Status Report ............................................ 65
P. Quarterly Fees ..................................................................... 65
Q. Post-Confirmation Conversion/Dismissal ............................... 65
R. Final Decree ........................................................................ 66

- ii -

## **INTRODUCTION**

The Debtors and the Lapis Parties (collectively, the "Plan Proponents") propose this *Modified Second Amended Joint Plan of Reorganization of Astria Health and its Affiliates.* Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in Section I.A. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan. The Plan Proponents are the proponents of the Plan within the meaning of § 1129 of the Bankruptcy Code.[2] The Plan shall apply as a joint Plan for all Debtors under which all assets and liabilities shall be consolidated for the limited purposes of Claim treatment and Plan distributions but otherwise, each Debtor, Reorganized Debtor or Liquidating Debtor, as the case may be, shall remain a separate legal entity.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## SECTION I.     DEFINITIONS AND RULES OF CONSTRUCTION

**A.     Definitions.  The following terms used herein shall have the respective meanings defined below:**

1.1     ***503(b)(9) Claims*** means Administrative Claims arising under § 503(b)(9).

1.2     ***Administrative and Priority Claims Reserve*** means the reserve to be established and maintained by the Reorganized Debtors and Liquidating Debtors and funded, subject to the Administrative, Professional and Priority Claims Cap, with the Administrative and Priority Claims Reserve Amount pursuant to Section II.D.4 hereof.

1.3     ***Administrative and Priority Claims Reserve Amount*** means Cash in an amount to be determined by Plan Proponents on or before the Effective Date, subject to the Administrative, Professional and Priority Claims Cap, to be funded by the Debtors to the Reorganized Debtors in an amount sufficient to pay in full all accrued but unpaid U.S. Trustee Fees and Administrative, Priority Tax, Priority, and Professional Fee Claims other than Ordinary Course Administrative Expenses that are Allowed after the Effective Date to the extent that such Claims have not been paid in full on or before the Effective Date consistent with § 1129(a)(9).

1.4     ***Administrative Claim*** means a Claim for costs or expenses of administering the Debtors' Chapter 11 Cases under § 507(a)(2) or 503(b) but expressly excluding Professional Fee

---

[2] All references to "§" herein are to sections of the United States Bankruptcy Code, 11 U.S.C. §§101-1531, as amended, unless otherwise noted.

Claims. Administrative Claims include (i) DIP Claims; (ii) 503(b)(9) Claims; (iii) Cure Payments; and (iv) fees payable to the clerk of the Bankruptcy Court and the Office of the U.S. Trustee.

1.5     ***Administrative Claims Bar Date*** means the date established by the Administrative Claims Bar Date Order by which requests for payment of Administrative Claims must be Filed, subject to any exceptions specifically set forth therein.

1.6     ***Administrative Claims Bar Date Order*** means the Order (I) Fixing the First Interim Bar Date for Filing Certain Post-Petition Administrative Expense Claims and (II) Approving the Form of Notice of the Administrative Expense Claims Bar Date [Docket No. 1416].

1.7     ***Administrative, Professional and Priority Claims Cap*** means $4,624,674, which shall be the maximum amount payable under the Plan for the payment of pre-Effective Date U.S. Trustee Fees and Administrative, Priority Tax, Priority, and Professional Fee Claims on or after the Effective Date. To be clear, DIP Claims and Ordinary Course Administrative Expenses are not subject to this Cap.

1.8     ***Affiliate*** shall have the meaning set forth in § 101(2).

1.9     ***Allowed*** means with respect to (I) a Claim: (a) any Claim, a proof of Claim for which was timely Filed by the applicable Claims Bar Date, Supplemental Bar Date or Administrative Claims Bar Date (or a Claim for which a Proof of Claim is not required to be Filed under the Plan, the Bankruptcy Code, or a Final Order of the Court); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (c) any Claim allowed pursuant to the Plan or Final Order of the Court; provided, that with respect to any Claim described in clause (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance of such Claim has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or Court, or if such an objection is so interposed and the Claim shall have been Allowed by a Final Order; provided, further, that the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee), as applicable, may, subject to Section V.A, affirmatively determine to allow any Claim described in clause (a) notwithstanding the fact that the period within which an objection may be interposed has not yet expired; provided, further, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Court shall not be considered an Allowed Claim under this Plan; provided, further, that any Claim disallowed or expunged under the Plan, by Final Order of the Court, or otherwise shall not be an Allowed Claim; provided, further, that with respect to any Claim Allowed only in part, references to Allowed Claims in this Plan include, and are limited to, only the portion of the Claim that is Allowed; and (II) an Interest, to the extent Allowed under this Plan. Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after Petition Date. Moreover, all or any portion of a Claim that is satisfied or released during the Chapter 11 Cases is not an Allowed Claim.

1.10     ***A/R Collections*** means post-confirmation collections of receivables for SHC Medical Center - Yakima accounts.

- 4 -

1.11  **Avoidance Actions** means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by a Debtor pursuant to any applicable section of the Bankruptcy Code, including §§ 502, 510, 542, 544, 547, 548, 549, 550, 551, 553 and 724(a) or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

1.12  **Ballot** shall mean a ballot, e-ballot, or master ballot, as applicable, authorized by the Court pursuant to the Solicitation Procedures Order to indicate acceptance or rejection of the Plan and to opt out of the release provided by <u>Section VII.F.2</u>.

1.13  **Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as may be amended.

1.14  **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general rules, the Local Bankruptcy Rules, and chambers rules of the Court.

1.15  **Board Trustees** means those persons serving as members of the board of directors of any of the Debtors or Non-Debtor Affiliates.

1.16  **Bonds** means, collectively, those certain Washington Health Care Facilities Authority Revenue Bonds, Series 2017A Bonds and the Series 2017B Bonds issued pursuant to the Bond Indenture.

1.17  **Bond Documents** means the Bond Indenture and all other documents evidencing and otherwise securing the Bonds.

1.18  **Bond Indenture** means that certain Bond Indenture dated as of November 1, 2017 between the Washington Health Care Facilities Authority and the Bond Trustee.

1.19  **Bond Trustee** means UMB Bank, N.A., as the trustee for bondholders under the Bond Indenture.

1.20  **Business Day** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in Yakima, Washington are authorized by law or other governmental action to close.

1.21  **Cash** means the legal tender of the United States of America and the equivalent thereof.

1.22  **Causes of Actions** means any and all claims, actions, causes of action, choses in action, rights, demands, Liens, suits, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, obligations, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, guaranties, contracts, controversies, agreements, promises, variances, trespasses, powers, judgments, privileges, licenses, franchises, remedies, rights of setoff, rights of recoupment, third-party claims, subrogation claims, defenses, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtors and/or the Estates), each of any kind or character whatsoever,

US_Active\116219861\V-9

19-01189-WLH11    Doc 2196    Filed 12/22/20    Entered 12/22/20 11:13:29    Pg 6 of 67

whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, secured or unsecured, disputed or undisputed, and whether held or assertable in a personal or representative capacity, based in law or equity, including under the Bankruptcy Code or under any other federal or state statute or common law, whether in contract or tort or any other theory of law, whether direct, indirect, derivative, or otherwise, whether arising before, on, or after the Petition Date, and whether asserted or unasserted as of the Effective Date, including, without limitation, (i) the right to object to, challenge or otherwise contest any claims, whether or not any such claim is the subject of a proof of claim; (ii) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (iii) any claim pursuant to § 362; (iv) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in § 558; (v) all claims, causes of action (avoidance or otherwise), objections, rights, and remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, §§ 502, 510, 542 through 545 and 547 through 553 or 558 thereof, or similar or equivalent claims, causes of action, objections, rights, and remedies arising under state law, including all Avoidance Actions, irrespective of whether or not the targets of such causes of action have been identified by name, or any transfers subject to avoidance have been listed, in the Debtors' Schedules, the Disclosure Statement, this Plan, or any other document Filed in the Chapter 11 Cases; (vi) the Vendor Claims; (vii) claims under any Insurance Policies applicable to the Debtors; (viii) all claims of any kind or nature arising under state or federal law against any of the Debtors' current or former vendors relating to services rendered prior to the Petition Date; (ix) all claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any party asserting a claim in these cases, unless expressly and in writing released or waived during the Chapter 11 Cases, including under this Plan; (x) all legal and equitable defenses against any Claim or Cause of Action asserted against the Debtors; (xi) all claims and/or Causes of Action of any kind or nature arising under state or federal law arising under a theory of negligence, professional negligence, and/or malpractice; (xii) all claims and/or Causes of Action of any kind or nature arising under state law based fraudulent conveyance theories; (xiii) all claims and/or Causes of Action constituting, for, based upon, or relating to a breach of fiduciary duty, a tort, a contract, federal or state preference or fraudulent transfer laws, or any federal or state statutory rights or requirements, whether based in law or equity, against any of the current and former members, managers, and/or officers of the Debtors; (xiv) Preserved Claims; and (xv) all Avoidance Actions against AHM, Inc. The foregoing definition shall be construed in accordance with its broadest possible meaning, and any doubts or ambiguities shall be resolved in favor of inclusivity. **Except as otherwise expressly provided in the Plan, any and all Causes of Action are preserved under the Plan. For the avoidance of doubt, the Board Trustees are, on the terms of the Plan, Exculpated Parties and Released Parties and, thus, are not subject to any Causes of Action or Avoidance Actions.**

  1.23 ***Chapter 11 Case*** means when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Court.

  1.24 ***Chapter 11 Cases*** mean when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Court under Chapter 11 Case Number 19-01189-11.

  1.25 ***Claim*** shall have the meaning set forth in § 101(5) against a Debtor.

- 6 -

US_Active\116219861\V-9

1.26 **_Claims and Noticing Agent_** means Kurtzman Carson Consultants LLC, the claims, noticing, and solicitation agent retained by the Debtors pursuant to the Order Granting Debtors' Amended Application and Motion for an Order Appointing Kurtzman Carson Consultants LLC as Noticing Agent Nunc Pro Tunc to May 6, 2019 [Docket No. 292].

1.27 **_Claims Bar Date_** means August 5, 2019, as established by the Claims Bar Date Notice.

1.28 **_Claims Bar Date Notice_** means that certain notice, entered by the Court on May 10, 2019 [Docket No. 91], establishing the Claims Bar Date.

1.29 **_Claims Objection Bar Date_** means the first Business Day that is not less than 180 days after the Effective Date. The time period for filing objections to Claims shall automatically renew for successive periods of one hundred eighty (180) days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Court upon motion of the Reorganized Debtors, the GUC Distribution Trustee, or a Holder or a Claim.

1.30 **_Claims Register_** means the official register of Claims maintained by the Court and mirrored by the Claims and Noticing Agent.

1.31 **_Class_** means a category of Holders of Claims or Interests as set forth in <u>Section II</u> pursuant to § 1122(a).

1.32 **_Committee_** means the statutory committee of unsecured creditors, appointed in the Chapter 11 Cases pursuant to § 1102 by the U.S. Trustee, pursuant to the Appointment of Official Committee of Unsecured Creditors [Docket No. 135] on May 24, 2019.

1.33 **_Committee Members_** mean, all current and former members of the Committee, including each of the following, solely in their capacity as a member of the Committee, (i) CHSPSC, LLC/Community Health Systems, Inc.; (ii) LocumTenens.com, LLC; (iii) Community Health of Central Washington; (iv) Medtronic USA, Inc.; (v) Morrison Management Specialists, Inc.; (vi) Apogee Physicians; and (vii) Boston Scientific Corporation.

1.34 **_Committee Plan Settlement_** means the settlement of the Committee's objections to the prior version of the Debtors' plan of reorganization as set forth in the Term Sheet.

1.35 **_Confirmation_** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

1.36 **_Confirmation Date_** means the date upon which the Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

1.37 **_Confirmation Hearing_** means the hearing held by the Court to consider Confirmation of the Plan pursuant to § 1129.

1.38 **_Confirmation Order_** means the order of the Court confirming this Plan pursuant to § 1129.

US_Active\116219861\V-9

1.39 **Consummation** means the occurrence of the Effective Date.

1.40 **Convenience Class** means the class of General Unsecured Claims that are either (i) less than or equal to five thousand dollars ($5,000), or (ii) if the Claim amount is greater than five thousand dollars ($5,000), a General Unsecured Claim with respect to which the claimant has made a Convenience Class Election.

1.41 **Court** means the United States Bankruptcy Court for the Eastern District of Washington having jurisdiction over the Chapter 11 Cases, or any other court of the United States exercising competent jurisdiction over the Chapter 11 Cases or any proceeding any proceeding therein.

1.42 **Credit Agreement** means that certain Credit Agreement dated as of January 18, 2019 between certain of the Debtors, Lapis Advisers, LP and others.

1.43 **Credit Agreement Documents** means the Credit Agreement and all other documents executed in connection therewith.

1.44 **Cure Payment** means the payment of Cash or the distribution of other property (as the parties may agree or the Court may order), as necessary to cure defaults under an Executory Contract of Debtors pursuant to § 365(b).

1.45 **D&O Causes of Action** means all Causes of Action against the current and former members, managers, and/or officers of the Debtors that are Preserved Claims, as the term may be modified or enhanced under the terms of the Plan Supplement.

1.46 **D&O Policies** means all insurance policies for liability of members, managers, and officers of the Debtors maintained by the Debtors as of the Effective Date.

1.47 **Debtor** means any of the Debtors.

1.48 **Debtors** means, collectively, (i) Astria Health; (ii) Glacier Canyon, LLC; (iii) Kitchen and Bath Furnishings, LLC; (iv) Oxbow Summit, LLC; (v) SHS Holdco, LLC; (vi) SHC Medical Center - Toppenish; (vii) SHC Medical Center - Yakima; (viii) Sunnyside Community Hospital Association; (ix) Sunnyside Community Hospital Home Medical Supply, LLC; (x) Sunnyside Home Health; (xi) Sunnyside Professional Services, LLC; (xii) Yakima Home Care Holdings, LLC; and (xiii) Yakima HMA Home Health, LLC, the debtors and debtors in possession in these Chapter 11 Cases.

1.49 **Debtors' Releases** means the releases given on behalf of the Debtors and their Estates to the Released Parties as set forth in <u>Section VII.F.1</u> herein.

1.50 **Definitive Documents** means the documents (including any related agreements, instruments, schedules, or exhibits and Exchange Debt Documents) that are necessary or desirable to implement, or otherwise relate to the Plan (including any plan supplements), the Disclosure Statement, any order approving the Disclosure Statement, and any order confirming the Plan, in each case on terms and conditions consistent with the Plan on terms acceptable to the Plan Proponents.

- 8 -

1.51  **DIP Agent** means Lapis, in its capacity as agent to DIP Lenders under the DIP Loan and Security Agreement, including any successor thereto.

1.52  **DIP Agent Professional Fees** means, collectively, to the extent not previously paid in connection with the Chapter 11 Cases, all outstanding reasonable and documented fees and expenses of any professionals retained by the DIP Agent, including, without limitation, Cole Schotz P.C., in its capacity as counsel to the DIP Agent.

1.53  **DIP Agreement** means that certain Senior Secured, Super-Priority Debtor-In-Possession Loan and Security Agreement, dated as of December 26, 2019, by and among Debtors, as borrowers, the other Loan Parties thereto (as defined in the DIP Loan and Security Agreement), the DIP Agent, and the DIP Lenders, as approved by the Final DIP Order, and as the same may be amended, modified, or amended and restated from time to time in accordance with its terms, consisting of a post-petition term loan facility in the principal amount of up to $43,100,000.

1.54  **DIP Claims** means any Claim in respect of any DIP Obligations (as defined in the Final DIP Order) held by, or otherwise owing to, any or all of the DIP Agent and the DIP Lenders.

1.55  **DIP Claims Exchange Debt** means, unless the Multicare Transaction Payment is funded and irrevocably released to the Lapis Parties on or before the Effective Date, the Exchange Debt issued to satisfy DIP Claims as more specifically described in the Exchange Debt Documents.

1.56  **DIP Lenders** means, collectively, the DIP Agent and the Lenders (as defined in the DIP Loan and Security Agreement).

1.57  **Disallowed** means any Claim or Interest, or any portion thereof, that (i) has been disallowed by Final Order or settlement; (ii) is scheduled in the amount of zero dollars ($0) or as contingent, disputed, or unliquidated on the Schedules and as to which a Claims Bar Date, Supplemental Bar Date or Administrative Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Court, including the Claims Bar Date Order, Supplemental Bar Date Order or Administrative Claims Bar Date Order or otherwise deemed timely Filed under applicable law; or (iii) is not scheduled on the Schedules and as to which a Claims Bar Date, Supplemental Bar Date or Administrative Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Court, including the Claims Bar Date Order, Claims Bar Date Order, Supplemental Bar Date Order or Administrative Claims Bar Date Order or otherwise deemed timely Filed under applicable law. "Disallow" and "Disallowance" shall have correlative meanings.

1.58  **Disclosure Statement** means the disclosure statement filed or to be filed with the Court by the Plan Proponents, pursuant to § 1125, with respect to the Plan, including the Plan Supplement and all exhibits and schedules thereto, which was approved by the Court pursuant to § 1125, as it may be amended, modified or supplemented from time to time.

1.59  **Disputed** means, with respect to a Claim or Interest, a Claim that is not yet Allowed or Disallowed.

US_Active\116219861\V-9

1.60 **Distribution Date** means a date or dates, as determined by the Reorganized Debtors which the Reorganized Debtors make a distribution, or causes a distribution to be made, of Cash to the Holders of Allowed Claims.

1.61 **Distribution Record Date** means the date that is thirty (30) Business Days prior to each Distribution Date.

1.62 **Docket** means, unless otherwise specified herein, the docket in the Lead Chapter 11 Case.

1.63 **Docket No.** means the docket number assigned in the Docket.

1.64 **Effective Date** means the earlier of (a) the date, not later than the Multicare Funding Deadline, on which the Lapis Parties irrevocably receive the Multicare Transaction Payment; or (b) the date after the Multicare Funding Deadline upon which all of the conditions to the effectiveness of the Plan other than funding and release of the Multicare Transaction Payment to the Lapis Parties have been satisfied or waived in accordance with its terms.

1.65 **Effective Date Distribution** means the following distributions required by the Bankruptcy Code or the Plan to be made on the Effective Date, (a) subject to the Administrative, Professional and Priority Claims Cap, on account of: (i) Allowed Administrative Claims, that are not Allowed Professional Fee Claims, DIP Claims, or Ordinary Course Administrative Expenses that have been paid by Debtors or will be paid by Reorganized Debtors in the ordinary course of business, (ii) all Allowed Priority Claims, (iii) all Allowed Cure Payments, except those being paid by agreement in installments over time; and (iv) the Administrative and Priority Claims Reserve, including amounts for Disputed Cure Payments (in the full amounts claimed by objecting contract counterparties), (b) the Multicare Transaction Payment, if any; and (c) 20% of the amount of Allowed Convenience Class Claims up to a maximum of $1,000 for each such claim;.

1.66 **Entity** shall have the meaning set forth in § 101(15).

1.67 **Estate** means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to § 541.

1.68 **Estates** means the Estate of all Debtors.

1.69 **Exchange Debt** shall have the meaning set forth in Section III.A.

1.70 **Exchange Debt Documents** means the credit agreements, guaranties, security agreements, forbearance instruments and other documents evidencing or otherwise securing Exchange Debt on the terms and in the forms included in the Plan Supplement, in each case on terms and conditions consistent with the Plan on terms acceptable to the Plan Proponents.

1.71 **Exculpated Parties** means, solely to the extent of the Exculpation, each of the (a) the Debtors, and any of their Related Parties; (b) the Lapis Parties, and any of their respective Related Parties, (c) the Committee, its members, and any of their respective Related Parties, (d) the Board Trustees; (e) the Patient Care Ombudsman, and any of its respective Related Parties; (f) the POC, its members, and any of their respective Related Parties; a (g) the GUC Distribution

- 10 -

US_Active\116219861\V-9

Trustee and his or her Related Parties and (h) Multicare, solely in the event the Lapis Parties irrevocably receive the Multicare Transaction Payment on or prior to the Effective Date; provided, AHM, Inc., the officers of the Debtors, Non-Debtor Affiliates and AHM, Inc, and any Board Trustee acting in the capacity of an officer of any of the foregoing, shall not constitute Exculpated Parties for purposes of this Plan.

1.72    **Exculpation** means the exculpation provisions set forth in Section VII.E.

1.73    **Executory Contract** means a contract or lease to which one or more Debtors is a party that is subject to assumption or rejection under §§ 365 or 1123.

1.74    **Exit Loan** means the loan from Multicare in the amount of $75,000,000.00 (seventy five million dollars) pursuant to the terms of the Multicare Credit Agreement.

1.75    **Exit Loan Escrow** means the escrow established pursuant to the terms of the Exit Loan Escrow Agreement.

1.76    **Exit Loan Escrow Agreement** means that certain escrow agreement between the Debtors, Multicare and U.S. Bank, National Association. as escrow agent holding $75,000,000.00 for release to the Lapis Parties pursuant to the terms of the Multicare Credit Agreement and the Confirmation Order.

1.77    **File, Filed, or Filing** means file, filed, or filing in the Chapter 11 Cases with the Court or, with respect to the filing of a Proof of Claim or proof of Interest, with the Claims and Noticing Agent.

1.78    **Final DIP Order** means the Final Order (I) Authorizing the Debtors to Obtain Replacement Financing; (II) Granting Security Interests and Superpriority Administrative Expense Status; (III) Granting Adequate Protection to Certain Prepetition Secured Credit Parties; (IV) Modifying the Automatic Stay; (V) Authorizing the Debtors to Enter Into Agreements with Lapis Advisers, L.P.; (VI) Authorizing Use of Cash Collateral; and (VII) Granting Related Relief [Docket No. 1201].

1.79    **Final GUC Distribution Date** means the date on which a distribution is made from the GUC Distribution Trust that finally and fully exhausts the distributable assets of the GUC Distribution Trust.

1.80    **Final Order** means, as applicable, an order or judgment of the Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, any order as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or any order as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, that, the possibility that a request for relief under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, the local rules of the Court or applicable non-bankruptcy law, may be Filed relating to such order shall not prevent such order from being a Final Order.

US_Active\116219861\V-9

1.81    **General Unsecured Claim** means a Claim against one or more of the Debtors that is not a (i) Senior Secured Bond Debt Claim, (ii) Senior Secured Credit Agreement Claim, (iii) DIP Claim, (iv) Administrative Claim, (v) Professional Fee Claim, (vi) Priority Claim; (vii) Priority Tax Claim, (viii) Other Secured Claim, (ix) Convenience Class Claim, (x) Insured Claim, or (xi) Intercompany Claim, and shall include, without limitation, Claims arising as a result of the rejection of any Executory Contracts.

1.82    **Governmental Bar Date** means November 4, 2019, as established by the Claims Bar Date Notice.

1.83    **Governmental Unit** shall have the meaning set forth in § 101(27).

1.84    **GUC Avoidance Actions** means all Avoidance Actions other than the Vendor Avoidance Actions.

1.85    **GUC Cap** means twenty five million dollars ($25,000,000).

1.86    **GUC Distribution Date** means (i) initially, the first Business Day that is thirty (30) days after the Effective Date or as soon thereafter as practicable; (ii) thereafter, any interim date(s) that the GUC Distribution Trustee deems appropriate based upon, among other things, the amount of Cash or Cash proceeds on hand in the GUC Distribution Trust, whether there remain any other unpaid obligations of the GUC Distribution Trust under the Plan, the time and status of pending or potential litigation or contested matters involving or affecting the GUC Distribution Trust, the amount of any necessary reserves, and any other factors that are relevant to the ability to make further distributions from the GUC Distribution Trust Assets; and (iii) the Final GUC Distribution Date.

1.87    **GUC Distribution Trust** means the trust to be established on the Effective Date in accordance with Section III.F.1 of this Plan for the purposes of reconciling General Unsecured Claims, pursuing the GUC Avoidance Actions, and making distributions to Holders of Allowed General Unsecured Claims consistent with the terms of this Plan.

1.88    **GUC Distribution Trust Agreement** means the agreement governing, among other things, the retention and duties of the GUC Distribution Trustee as described in Section III.F.1 of this Plan, which shall be in form and substance materially consistent with the Plan and included as an exhibit to the Plan Supplement.

1.89    **GUC Distribution Trust Assets** means (i) the Initial GUC Distribution Amount, (ii) the Second GUC Distribution Amount, (iii) GUC Avoidance Actions, (iv) the GUC Vendor Recovery, and (v), in the event the Multicare Transaction Payment is funded and irrevocably released to the Lapis Parties by the Effective Date, the Supplemental GUC Distribution Amount.

1.90    **GUC Distribution Trust Beneficiaries** means Holders of Allowed General Unsecured Claims in Class 4.

1.91    **GUC Distribution Trustee** means the Person designated as the trustee of the GUC Distribution Trust by the Committee after consultation with the Plan Proponents.

- 12 -

US_Active\116219861\V-9

1.92   *GUC Post-Effective Date Expenses* means, except as otherwise provided herein, all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated incurred by the GUC Distribution Trust after the Effective Date until the GUC Distribution Trust is dissolved, including, but not limited to, those expenses described in <u>Section III.F.5</u> of the Plan.

1.93   *GUC Vendor Cash Recovery* means fifty percent (50%) of any and all net Cash proceeds of the Vendor Claims, which shall be transferred by the Debtors to the GUC Distribution Trust within thirty (30) days after the Debtors' receipt of such net Cash proceeds.

1.94   *GUC Vendor Credit Recovery* means the Cash equivalent of fifty percent (50%) of any and all non-Cash value realized by the Debtors as a result of the Vendor Claims, which will be paid by the Debtors (or Reorganized Debtors, as applicable) to the GUC Distribution Trust quarterly as that value (in the form of cost savings or otherwise) is realized by the Debtors (or Reorganized Debtors, as applicable).  For the purpose of calculating the Cash equivalent of any non-Cash value realized by the Debtors (or Reorganized Debtors, as applicable) as a result of any Vendor Claims, the amount shall be calculated as set forth in the Term Sheet.

1.95   *GUC Vendor Recovery* means the GUC Vendor Cash Recovery plus the GUC Vendor Credit Recovery.  The aggregate total sum of the GUC Vendor Recovery, the Initial GUC Distribution Amount, and Second GUC Distribution Amount, shall not exceed the GUC Cap.

1.96   *Holder* means an Entity holding a Claim or an Interest, as applicable, each solely in its capacity as such.

1.97   *Hospitals* means SHC Medical Center-Yakima, SHC Medical Center - Toppenish, and Sunnyside Community Hospital Association and related facilities operated by the Debtors.

1.98   *Indemnification Provisions* means each of the Debtors' indemnification provisions currently in existence whether existing in a Debtor's bylaws, incorporation document, other formation documents, board or executive committee resolutions or employment contracts for current and former Board Trustees, managers, officers, employees, attorneys, individual consultants, other professionals and agents of the Debtors, and all of their respective Affiliates.

1.99   *Initial GUC Distribution Amount* means Cash in the amount of five million dollars ($5,000,000), which will be funded by the Debtors to the GUC Distribution Trust on or before the Effective Date.

1.100   *Insurance Policy* means any insurance policy maintained by or for the benefit of the Debtors (including the D&O Policies) set forth in a schedule to the Plan Supplement.

1.101   *Insured Claims* means General Unsecured Claims arising prior to the Confirmation Date involving personal injury, medical malpractice, or wrongful death (including slip-and-fall and medical malpractice Claims) that are covered by the terms of Debtors' various insurance policies (including the Insurance Policies), or any other General Unsecured Claim against a Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution or other payment under a policy of insurance (including the Insurance Policies) under which the Debtor is an insured or beneficiary of the coverage provided under the applicable policy. All Insured Claims are

- 13 -

Disputed Claims. Some of the Insured Claims are fully insured, and no deductible amount would be payable by Debtors under the terms of the applicable Insurance Policy. As to other Insured Claims, Debtors may owe deductible amounts. For the avoidance of doubt, the Reorganized Debtors shall not be responsible for any deductible or self-insured retention obligations, and all claims for such deductibles and self-insured retention obligations shall be treated as Class 4 General Unsecured Claims to the extent Allowed. Further, no insurance carrier shall, or shall be entitled to, deny coverage under any insurance policy (including any Insurance Policy) based upon (i) any failure by the Debtors or Reorganized Debtors to pay any deductible or self-insured retention in full or (ii) the treatment of any claim for a deductible or self-insured retention obligation as a Class 4 General Unsecured Claim. Insured Claims are classified as a subclass (Class 4A) of Class 4, General Unsecured Claims (not otherwise classified). *See* <u>Section III.O</u> below for further information about issues relating to Insured Claims.

1.102 *Interest* means any ownership interest in any of the Debtors, including but not limited to, membership interests or other entitlement to participate in the organizational affairs of a nonprofit Entity organized under the laws of the State of Washington.

1.103 *Lapis* means Lapis Advisers, LP.

1.104 *Lapis Parties* means the DIP Agent, DIP Lenders, UMB Bank, N.A. as indenture trustee for the Senior Secured Bond Debt Claims, and Holders of the Senior Secured Bond Debt Claims and the Senior Secured Credit Agreement Claims, and any fund managed by or affiliated with any of the foregoing.

1.105 *Law* means any statute, law, ordinance, ruling, consent decree, permit, policy, rule or regulation of, issued by or entered into by any Governmental Unit and all judicial or administrative interpretations thereof and any common law doctrine.

1.106 *Lead Chapter 11 Case* means Chapter 11 Case Number 19-01189-11, currently pending the Court.

1.107 *Lien* shall have the meaning set forth in § 101(37).

1.108 *Liquidating Debtors* means any Debtor not reorganizing, including SHC Medical Center - Yakima.

1.109 *Liquidation Trust* means the trust to be established on the Effective Date in accordance with <u>Section III.H</u>.

1.110 *Liquidation Trust Agreement* means the agreement governing, among other things, the retention and duties of the Liquating Trustee as described in <u>Section III.H</u> hereof, which shall be in form and substance materially consistent with the Plan and included as an exhibit to the Plan Supplement.

1.111 *Liquidation Trust Assets* means all assets of the Debtors not necessary for the operation of the core health care businesses of the Debtors or constituting GUC Distribution Trust Assets under this Plan, including, but not be limited to the (i) if unsold as of the Effective Date, Yakima Medical Office Building (excluding the operations within); (ii) if unsold as of the

- 14 -

US_Active\116219861\V-9

Effective Date, SHC Medical Center-Yakima; (iii) any other unused buildings or real property currently owned by the Debtors other than Sunnyside Community Hospital Association; (iv) A/R Collections of SHC Medical Center-Yakima; (v) all 180 day and older days aged accounts receivable of Sunnyside Community Hospital Association and SHC – Medical Center Toppenish; (vi) any Causes of Action held by the Debtors, including the Vendor Claims, not expressly assigned to the GUC Distribution Trust; and (vii) the Liquidation Trust Vendor Recovery. For the avoidance of doubt, in the event the Multicare Transaction Payment is made on or before the Multicare Funding Deadline, the Liquidation Trust shall not be funded and all Liquidation Trust Assets shall revert to the Reorganized Debtors on the Effective Date.

      1.112 ***Liquidation Trust Vendor Recovery*** all portions of the Vendor Recovery other than the GUC Vendor Recovery.

      1.113 ***Liquidation Trustee*** means the Person designated as the trustee of the Liquidation Trust by the Lapis Parties.

      1.114 ***Multicare*** means Multicare Health System, a Washington State non-profit corporation.

      1.115 ***Multicare Credit Agreement*** means that certain Credit Agreement by and among ASTRIA HEALTH, SUNNYSIDE COMMUNITY HOSPITAL ASSOCIATION d/b/a Astria Sunnyside Hospital, SHC HOLDCO, LLC, SHC MEDICAL CENTER—TOPPENISH d/b/a Astria Toppenish Hospital, SHC MEDICAL CENTER—YAKIMA d/b/a Astria Yakima Hospital, and THE OTHER PERSONS PARTY HERETO THAT ARE DESIGNATED AS BORROWERS OR GUARANTORS and MULTICARE HEALTH SYSTEM, a Washington State non-profit corporation, as Lender, dated as of December 17, 2020, as amended.

      1.116 ***Multicare Funding Deadline*** means January 15, 2021 or such later date as the Plan Proponents and Multicare, in consultation with the Committee, may agree to in writing.

      1.117 ***Multicare Transaction Payment*** means the irrevocable payment to the Lapis Parties in cash on or before the Multicare Funding Deadline of the proceeds of the Exit Loan in an amount not less than $75 million together with such additional funds of the Debtors or Reorganized Debtors necessary to satisfy in full in cash the DIP Claims, Senior Secured Bond Claims, Senior Secured Credit Agreement Claims, the liquidated amount specified in each other proof of claim filed by the Lapis Parties in the Chapter 11 Cases that is not a DIP Claim, Senior Secured Bond Claim or Senior Secured Credit Agreement Claim, and fees and expenses of the Lapis Parties as specified in Section IV.D, including funds advanced by the Lapis Parties to AH System.

      1.118 ***Net GUC Distribution Trust Assets*** means the GUC Distribution Trust Assets and all proceeds thereof minus the costs of administering the GUC Distribution Trust (including, but not limited to, all fees and expenses of the GUC Distribution Trustee and any professionals retained by the GUC Distribution Trustee in the GUC Distribution Trustee's capacity as such that are not payable by the Reorganized Debtors pursuant to <u>Section III.F.6</u>).

      1.119 ***Next Payment Date*** means, with respect to any particular Disputed Claim, the first Business Day of the calendar quarter after such Claim has been Allowed by Final Order.

US_Active\116219861\V-9

1.120  **Non-Debtor Affiliates** means, individually or collectively, Astria Health Clinically Integrated Network, LLC, Bridal Dreams, LLC, Depot Plus, LLC, Home Supply, LLC, Kitchen Appliance, LLC, Northwest Health, LLC, Pacific Northwest ASC Management, LLC, Sunnyside Hospital Service Corp., Sunnyside Medical Center, LC, and Wedded Bliss, LLC.

1.121  **Order** means any judgment, order, injunction, decree, writ or license issue or entered by or with any Governmental Unit or any arbitrator, whether preliminary, interlocutory or final, including any order entered by the Court in the Chapter 11 Cases.

1.122  **Ordinary Course Administrative Expense** means Administrative Claims for goods and services of types consistent with the Debtors' ordinary course business operations as of the Petition Date that will be paid as they come due after the Effective Date in the ordinary course of Reorganized Debtors' business.  For the avoidance of doubt, the DIP Claims do not constitute Ordinary Course Administrative Expenses.

1.123  **Other Secured Claim** means any Secured Claim against any of the Debtors that is not (a) a DIP Claim; (b) a Senior Secured Bond Debt Claim; or (c) a Senior Secured Credit Agreement Claim.

1.124  **Person** shall have the meaning set forth in § 101(41).

1.125  **Petition Date** means May 6, 2019, which is the date that each Debtor filed a voluntary chapter 11 petition and commenced its respective Chapter 11 Case.

1.126  **Plan** means this *Modified Second Amended Joint Chapter 11 Plan of Reorganization of Astria Health and its Debtor Affiliates*, as further amended, supplemented or otherwise modified from time to time, including all exhibits attached hereto or with the Plan Supplement, which is incorporated in the Plan by reference and made part of the Plan as if set forth in the Plan.

1.127  **Plan Proponents** shall have the meaning set forth in the preamble to this Plan.

1.128  **Plan Supplement** means a supplemental appendix to this Plan, as may be amended from time to time on or prior to the Voting Deadline, which will contain the following items:

      (a)    the Schedule of Assumed Agreements;

      (b)    the schedule of Insurance Policies;

      (c)    the list of directors for Reorganized Debtors;

      (d)    the Exchange Debt Documents

      (e)    GUC Distribution Trust Agreement;

      (f)    Liquidation Trust Agreement;

      (g)    The Term Sheet (under seal);

US_Active\116219861\V-9

(h) Any updated Financial Projections and/or Liquidation Analysis;

(i) Any amendments to the treatment of Intercompany Claims under the Plan; and

(j) the D&O Cause of Action Agreement (as defined in Section III.I).

which items shall be filed at least ten (10) days prior to the Voting Deadline.

1.129 **_POC_** means the committee of Persons or Entities appointed as of the Effective Date to advise the GUC Distribution Trustee in the performance of the GUC Distribution Trustee's duties and obligations under the Plan with respect to the administration of the GUC Distribution Trust for the benefit of the Holders of Allowed General Unsecured Claims.

1.130 **_Preserved Claims_** mean the following type and categories of Claims and Causes of Action, without limitation:

a. the right to object to, challenge or otherwise contest any claims, whether or not any such claim is the subject of a proof of claim;

b. any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity;

c. any claim pursuant to § 362;

d. any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in § 558;

e. all claims, causes of action (avoidance or otherwise), objections, rights, and remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, §§ 502, 510, 542 through 545 and 547 through 553 or 558 thereof, or similar or equivalent claims, causes of action, objections, rights, and remedies arising under state law, including all Avoidance Actions, irrespective of whether or not the targets of such causes of action have been identified by name, or any transfers subject to avoidance have been listed, in the Debtors' Schedules, the Disclosure Statement, this Plan, or any other document Filed in the Chapter 11 Cases;

f. the Vendor Claims;

g. claims under any Insurance Policies applicable to the Debtors;

h. all claims of any kind or nature arising under state or federal law against any of the Debtors' current or former vendors relating to services rendered prior to the Petition Date;

i. all claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any party asserting a claim in these

- 17 -

US_Active\116219861\V-9

cases, unless expressly and in writing released or waived during the Chapter 11 Cases, including under this Plan;

    j.    all legal and equitable defenses against any Claim or Cause of Action asserted against the Debtors;

    k.    all claims and/or Causes of Action of any kind or nature arising under state or federal law arising under a theory of negligence, professional negligence, and/or malpractice;

    l.    all claims and/or Causes of Action of any kind or nature arising under state law based fraudulent conveyance theories;

    m.    all claims and/or Causes of Action constituting, for, based upon, or relating to a breach of fiduciary duty, a tort, a contract, an Avoidance Action, federal or state preference or fraudulent transfer laws, or any federal or state statutory rights or requirements, whether based in law or equity, against any of the current and former members, managers, and/or officers of the Debtors; and

    n.    all Avoidance Actions against AHM, Inc.

    1.131   *Priority Claim* means a Claim entitled to priority against the Estates under §§ 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7). Priority Claims do not include any Claims incurred after Petition Date.

    1.132   *Priority Tax Claim* means a Claim entitled to priority against the Estate under § 507(a)(8). Priority Tax Claims do not include any Claims incurred after Petition Date.

    1.133   *Pro Rata* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan, as applicable.

    1.134   *Professional* means any Entity retained in the Chapter 11 Cases in accordance with §§ 327, 328 or 1103.

    1.135   *Professional Fee Claim* means a Claim for accrued fees and expenses (including success fees) for services rendered and expenses incurred by a Professional for the Petition Date through and including the Effective Date to the extent such fees and expenses have not been paid or not Disallowed pursuant to Order of the Court under §§ 327, 328, 330, 331, 363, 503, or 1103 for compensation for professional services rendered or expenses incurred for which the Estate is liable for payment Code regardless of whether a fee application has been filed for such fees and expenses.

    1.136   *Proof of Claim* means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

1.137 ***PTO Claims*** mean Claims asserted by Debtors' employees that are based upon accrued hours arising under Debtors' nonworking day and paid time off policies.

1.138 ***Related Parties*** means, with respect to any person or entity, except as otherwise set forth below or in this Plan, any past or present representative, controlling persons, officer, director, agent, attorney, advisor, Professional, employee, subsidiary or Affiliate, shareholder, partner (general or limited), executive committee member, member, managers, equity holder, trustee executor, predecessor in interest, successor or assign of any such person, <u>provided</u>, AHM, Inc., the officers of the Debtors, Non-Debtor Affiliates and AHM, Inc, and any Board Trustee acting in the capacity of an officer of any of the foregoing, shall not constitute Related Parties for purposes of this Plan.

1.139 ***Released Parties*** means (a) the Debtors, (b) the Lapis Parties, (c) the Committee and the Committee Members, (d) the PCO, (e) the Board Trustees, and (f) except as otherwise set forth below or in the this Plan, each of the foregoing Entities' respective predecessors, successors and assigns, subsidiaries, Affiliates and their subsidiaries, beneficial owners, managed accounts or funds, current and former officers, directors, principals, shareholders, direct and indirect equity holders, members partners (general and limited), employees, agents, advisory board members, financial advisors, attorneys accountants, investment bankers, consultants, representatives, management companies, fund advisors, Professionals, and other professionals; <u>provided</u>, AHM, Inc., the officers of the Debtors, Non-Debtor Affiliates and AHM, Inc, and any Board Trustee acting in the capacity of an officer of any of the foregoing, shall not constitute Released Parties for purposes of this Plan and <u>provided</u> <u>further</u>, that as a condition to receiving or enforcing any release granted pursuant to <u>Section VII.F.2</u> hereof, each Released Party and its Affiliates shall be deemed to have released each other Released Party and its Affiliates from any and all Claims or Causes of Action arising from or related to their relationship with the Debtors or the Chapter 11 Cases. For the avoidance of doubt, and notwithstanding anything herein to the contrary, a member of the Committee shall be a Released Party only in his or her capacity as a member of the Committee. For the further avoidance of doubt, all Professional Fee Claims and rights to enforce this Plan are expressly preserved notwithstanding anything to the contrary in this Section I.A.1.132, Section VII.F.2, or any other provision of this Plan.

1.140 ***Releasing Party*** means (a) the Released Parties; and (b) all Holders of Claims that (i) vote to accept the Plan, and (ii) do not affirmatively opt out of the third party release provided by <u>Section VII.F.2</u> hereof pursuant to a duly executed Ballot; <u>provided</u>, that, notwithstanding anything contained herein to the contrary, in no event shall an Entity that (x) does not vote to accept or reject the Plan, (y) votes to reject the Plan, or (z) appropriately marks the Ballot to opt out of the third party release provided in <u>Section VII.F.2</u> hereof and returns such Ballot in accordance with the Solicitation Procedures Order, be a Releasing Party.

1.141 ***Reorganized Debtor*** means a Debtor that is reorganizing and will continue in operation after the Effective Date, as controlled by sole member, AH System.

1.142 ***Reorganized Debtor Insurance Policies*** means any insurance policies of the Debtor (including, without limitation, the D&O Policies).

US_Active\116219861\V-9

1.143 **Schedules** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts, and statements of financial affairs Filed by the Debtors, pursuant to § 521 and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

1.144 **Second GUC Distribution Amount** means Cash in the amount of two million three hundred thousand dollars ($2,300,000) minus the amount of any GUC Vendor Recovery, which shall be paid by the Debtors (or Reorganized Debtors, as applicable) to the GUC Distribution Trust within thirty (30) days after the determination of the total value of the GUC Vendor Recovery. For the avoidance of doubt, the Second GUC Distribution Amount will be an unconditional obligation of the Debtors (or Reorganized Debtors, as applicable) to the GUC Distribution Trust.

1.145 **Secured** means, when referring to a Claim, a Claim secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by a Final Order, or that is subject to setoff pursuant to § 553, to the extent of the value of the applicable creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, in each case, as determined pursuant to § 506(a).

1.146 **Senior Debt 9019 Settlement** shall have the meaning ascribed to such term in Section III.A hereof.

1.147 **Senior Secured Bond Debt Claims** means all amounts due under the Bond Documents, including principal, interest including interest at any applicable default rate, prepayment penalties, make wholes and similar amounts, and expenses including but not limited to attorneys and other professional fees.

1.148 **Senior Secured Credit Agreement Claims** means all amounts due under the Credit Agreement, including principal, interest including interest at any applicable default rate, prepayment penalties, make wholes and similar amounts, and expenses including but not limited to attorneys and other professional fees.

1.149 **Senior Secured Credit Agreement Exchange Debt** means, unless the Multicare Transaction Payment is funded and irrevocably released to the Lapis Parties on or before the Effective Date, the Exchange Debt issued to satisfy the Senior Secured Credit Agreement Claims as more specifically described in the Exchange Debt Documents.

1.150 **Solicitation Procedures** means the form of solicitation procedures approved by and attached as an exhibits to the Solicitation Procedures Order.

1.151 **Solicitation Procedures Order** means the Order Granting Joint Motion for an Order Approving: (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice Procedures; (III) Notice and Objections Procedures for Confirmation of Joint Plan of Reorganization; and (IV) Granting Related Relief [Docket No. 1991].

1.152 **Supplemental Bar Date** means the date established by the Supplemental Bar Date Order by which requests for payment of certain Prepetition Claims (as defined in the Supplemental Bar Date Order) must be Filed, subject to any exceptions specifically set forth therein.

US_Active\116219861\V-9

1.153 **_Supplemental Bar Date Order_** means the Order (I) Fixing a Bar Date for Filing Certain Prepetition Claimants' Claims and (II) Approving the Form of Notice of Those Prepetition Claimants' Claims Bar Date [Docket No. 1417].

1.154 **_Supplemental GUC Distribution Amount_** means Cash in the amount of six hundred thousand dollars ($600,000), which shall be paid by the Reorganized Debtors to the GUC Distribution Trust through three (3) equal installment payments of two hundred thousand dollars ($200,000) on each of the first, second, and third anniversaries of the Effective Date of the Plan. The Reorganized Debtors are only obligated to pay the Supplemental GUC Distribution Amount to the GUC Distribution Trust if the Multicare Transaction Payment is funded and irrevocably released to the Lapis Parties by the Effective Date.

1.155 **_Term Sheet_** means that certain Plan Settlement Term Sheet between the Debtors and the Committee setting forth the Committee Plan Settlement, the terms of which are incorporated herein. A copy of the Term Sheet, updated as necessary by the Plan Proponents and the Committee to provide definitional clarity with respect to Term Sheet provisions incorporated herein by reference, shall be Filed under seal as part of the Plan Supplement.

1.156 **_U.S. Trustee_** means the Office of the United States Trustee for the Eastern District of Washington.

1.157 **_U.S. Trustee Fees_** means fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

1.158 **_Vendor_** means Cerner Corporation and all of its subsidiaries and affiliates.

1.159 **_Vendor Avoidance Actions_** means any Avoidance Actions against the Vendor.

1.160 **_Vendor Claims_** means any and all actual or potential claims and causes of action of the Debtors against the Vendor, including any and all Vendor Avoidance Actions.

1.161 **_Vendor Recovery_** means any Cash and non-Cash value realized by the Debtors as a result of the Vendor Claims, which shall be allocated between the Reorganized Debtors and the GUC Distribution Trust solely in the event the Multicare Transaction Payment is funded and irrevocably released to the Lapis Parties by the Multicare Funding Deadline and otherwise between the Liquidation Trust and the GUC Distribution Trust, as provided in this Plan.

1.162 **_Voting Deadline_** means 4:00 p.m. (prevailing Eastern Time) on December 4, 2020, as specifically set forth in the Disclosure Statement Order, which is the deadline for submitting Ballots to accept or reject the Plan in accordance with § 1126.

### B. Rules of Interpretation.

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and

US_Active\116219861\V-9

conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (iv) unless otherwise specified herein, all references herein to "<u>Sections</u>" are references to Sections of the Plan or hereto; (v) unless otherwise stated herein, the words "herein," "hereof," and "hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (viii) unless otherwise specified, the rules of construction set forth in § 102 shall apply to the Plan; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) any docket number references in the Plan shall refer to the docket number of any document Filed with the Court in the Chapter 11 Cases; (xi) any immaterial effectuating provisions may be interpreted in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Court or any other Entity; (xii) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; and (xiii) all exhibits and supplements to the Plan are incorporated herein, regardless of when those exhibits and supplements are filed.

### C. Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day. Whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date or as soon as practicable thereafter.

### D. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Washington, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided that corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated or formed (as applicable) in the State of Washington shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or Reorganized Debtor.

- 22 -

US_Active\116219861\V-9

### E.    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### F.    Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Disclosure Statement or the Plan Supplement, the Confirmation Order shall control.

## SECTION II.    CLASSIFICATION AND TREATMENT OF CLAIMS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each Class of Claims or Interests is impaired or unimpaired. The Plan provides the treatment each Class will receive under the Plan.

### B.    Limited Consolidation

Except as expressly provided in this Plan, each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims and distributions under this Plan.  Except as expressly provided in this Plan, the Exchange Debt Documents, the other Definitive Documents, or as otherwise ordered by the Court, on the Effective Date: (a) all assets and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under this Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Chapter 11 Cases shall be treated as if filed against the consolidated Debtors and shall be treated one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under § 553, the Debtors shall be treated as one entity so that, subject to the other provisions of § 553, debts due to any of the Debtors may be set off against the debts of any of the other Debtors.  Such consolidation shall not (other than for purposes relating to this Plan) affect the legal and corporate structures of the Reorganized Debtors.  Notwithstanding anything in this Section to the contrary, all U.S. Trustee Fees, if any, shall be calculated on a separate legal entity basis for each Reorganized Debtor.

- 23 -

US_Active\116219861\V-9

### C. Summary and Classification of Claims and Interests

This Section classifies Claims and Interests – except for Administrative Claims, Priority Tax Claims, Professional Fee Claims, and DIP Claims, which are not classified – for all purposes, including voting, Confirmation, and distribution under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class. The classification of Senior Secured Bond Debt Claims and Senior Secured Credit Agreement Claims is an integral component of the Senior Debt 9019 Settlement.

The following table summarizes the Classes of Claims and Interests under the Plan that are Allowed Claims:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| 1 | Priority Claims | Unimpaired | Not Entitled to Vote / Deemed to Accept |
| 2A | Senior Secured Bond Debt Claims | Impaired | Entitled to Vote |
| 2B | Senior Secured Credit Agreement Claims | Impaired | Entitled to Vote |
| 2C | Other Secured Claims | Impaired | Entitled to Vote |
| 3 | Convenience Class Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4A | Insured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Eliminated Through Consolidation of Debtors | N/A |

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR INTEREST.**

- 24 -

US_Active\116219861\V-9

The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any Liens) that each individual or Entity holding an Allowed Claim may have in or against Debtors, the Estates, or their respective property. This treatment supersedes and replaces any agreements or rights those individuals or Entities may have in or against Debtors, the Estates, or their respective property. Except as otherwise provided in this Plan, all distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

### D. Unclassified Claims

Certain types of Claims are not placed into voting classes; instead they are unclassified. They do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, Debtors have not placed the following Claims in a class. The treatment of these Claims is provided below.

#### 1. Administrative Claims

##### a. Types of Claims Entitled to Administrative Priority

The following types of Claims are entitled to administrative priority under this Plan: Administrative Claims (including Ordinary Course Administrative Expense Claims), DIP Claims, Professional Fee Claims, U.S. Trustee Fees, 503(b)(9) Claims and Cure Payments. The foregoing claims, other than Ordinary Course Administrative Expense Claims and DIP Claims, are estimated to be Allowed in the approximate aggregate amount of $4,624,674.

##### b. Administrative Claims Bar Date

Holders of Administrative Claims incurred during the period from and after the Petition Date until the date of entry of the Administrative Claims Bar Date Order were required to File and serve a request for payment of such Administrative Claims and those that did not File and serve such a request by the Administrative Claims Bar Date are forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their Estates, and such Administrative Claims shall be deemed discharged as of the Effective Date, except as provided in the Plan.

##### c. Supplemental Administrative Claims Bar Date

Holders of Administrative Claims based upon liabilities incurred by the Debtors in the ordinary course of their business on or after the date the Administrative Claims Bar Date Order was entered but prior to the Effective Date must File and serve such Claims on the Reorganized Debtors within thirty (30) days after the Effective Date or such claims shall be forever barred against the Debtors or their Estates. Objections to the requests for payment of such Administrative Claims must be Filed and served on the Reorganized Debtors and the requesting party within twenty (20) days after the Filing of the applicable request for payment of such Administrative Claims.

- 25 -

US_Active\116219861\V-9

Notwithstanding the foregoing, the following entities that hold Administrative Expense Claims do not need to assert an Administrative Expense Claim (collectively, the "Excluded Claims"):

a)	Administrative Expense Claims based upon liabilities that the Debtors (other than SHC Medical Center - Yakima) incurred in the ordinary course of their business to providers of goods and services. To be clear, Administrative Expense Claims held by vendors of goods and services to ARMC are not Excluded Claims and such vendors must file an Administrative Expense Claim;

b)	Administrative Expense Claims arising out of the employment by one or more of the Debtors (other than SHC Medical Center - Yakima) of an individual after the Petition Date. To be clear, Administrative Expense Claims held by former employees of SHC Medical Center - Yakima who are no longer employed by a Debtor are not Excluded Claims and such former employees must file an Administrative Expense Claim;

c)	Any entity that has already properly filed a motion requesting allowance of an administrative expense claim pursuant to § 503(b);

d)	A holder of an Administrative Expense Claim that previously has been allowed by order of the Court;

e)	A holder of an Administrative Expense Claim that has been paid in full by any of the Debtors pursuant to the Bankruptcy Code or in accordance with an Order of the Court; and

f)	Any claims held by the Lapis Parties.

### d.	Treatment of Administrative Claims

#### (i)	Treatment of DIP Claims

In accordance with the Senior Debt 9019 Settlement, all DIP Claims shall be Allowed and satisfied, without setoff, reduction or subordination, through (a) payment in full in cash on the Effective Date through the Multicare Transaction Payment or (b) in the event the Multicare Transaction Payment has not been funded on or before the Effective Date, by the exchange of DIP Claims for DIP Claims Exchange Debt with the attributes described in the schedule attached hereto in **Exhibit A** in the amount of all DIP Claims as of the Effective Date. This treatment of DIP Claims is an integral component of the Senior Debt 9019 Settlement.

#### (ii)	Treatment of Other Administrative Claims

Except for Ordinary Course Administrative Expenses (which will be paid in the ordinary course of business) and DIP Claims, all Administrative Claims, including Cure Payments, 503(b)(9) Claims, and U.S. Trustee Fees, will be paid in full in Cash (a) on the later of the Effective Date or the date such Claims are Allowed under § 503, or (b) upon such other terms as may be mutually agreed upon between the Holder of such Claim and the Plan Proponents, and consistent with the terms of the Definitive Documents.

- 26 -

### 2.    Treatment of Professional Fee Claims

All persons and entities seeking an award by the Court of professional fees on behalf of the Debtors (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses no later than forty-five (45) days after the Effective Date, and, (b) upon Court approval of such final application, shall receive, in full satisfaction, settlement, and release of, and in exchange for such Claim, from the Administrative and Priority Claims Reserve, Cash in such amounts as allowed by the Court (i) on the later of (A) the Effective Date (or as soon thereafter as reasonably practicable) and (B) the date that is ten (10) days after the allowance date, or (ii) upon such other terms as may be mutually agreed upon between the holder of such Claim and the Plan Proponents, and consistent with the terms of the Definitive Documents. For the avoidance of doubt, estate Professionals may still receive interim compensation prior to the Effective Date if otherwise able to under existing court orders.

### 3.    Priority Tax Claims

Priority Tax Claims are certain unsecured income, employment and other taxes described by § 507(a)(8).

During the Chapter 11 Cases, Debtors obtained Court authority to bring wages, benefits and payroll taxes current for the prepetition period, so no prepetition employment related taxes remain due.  The Debtors have otherwise kept current on taxes.

Priority Tax Claims shall be paid in full in Cash from the Administrative and Priority Claims Reserve (a) on the later of the Effective Date or the date such Claim is allowed, (b) after the Effective Date, over a period not to exceed five years from the date of assessment of the subject tax, together with interest thereon at a rate satisfactory to the Debtors or such other rate as may be required by the Bankruptcy Code, or (c) upon such other terms as may be mutually agreed upon between the holder of such Claim and the Plan Proponents, and consistent with the terms of the Definitive Documents.

### 4.    Administrative and Priority Claims Reserve

On the Effective Date or as soon as practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall fund the Administrative and Priority Claims Reserve in Cash in the Administrative and Priority Claims Reserve Amount. Any amounts remaining in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative, Priority, and Professional Fee Claims and the U.S. Trustee Fees shall be transferred to the Reorganized Debtors.

### E.    Classified Claims

### 1.    Class 1 - Priority Claims (Other than Priority Tax Claims)

Class 1 consists of Priority Claims against Debtors, other than Priority Tax Claims. These Priority Claims are entitled to priority treatment in that each Holder of such a Claim is entitled to receive Cash from the Administrative and Priority Claims Reserve on the Effective Date (or as soon as practicable thereafter) equal to the allowed amount of such Claim, unless the Class votes

- 27 -

to accept deferred Cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claims.

Excluded from this Class are (a) wage claims (including severance pay) in excess of the statutory limit of $13,650, and (b) PTO Claims in excess of the statutory limit of $13,650 for benefits. Such Claims will be treated as General Unsecured Claims in Class 4.[3]

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Priority unsecured claims alleged pursuant to Code §§ 507(a)(4) and (5)<br><br>Total Amount = Unknown | No | No | Paid in cash in full on later of Effective Date or when Allowed |

### 2. Classes 2A, 2B and 2C - Secured Claims

Classes 2A, 2B and 2C consist of Secured Claims against Debtors. Secured Claims are claims secured by liens on property of the Estate. The treatment of Senior Secured Bond Debt Claims and Senior Secured Credit Agreement Claims is an integral component of the Senior Debt 9019 Settlement. The Secured Claims shall be treated as follows:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2A | Senior Secured Bond Debt Claims<br><br>Total Estimated Amount = | No | Yes | In accordance with the Senior Debt 9019 Settlement, unless the Multicare Transaction Payment has been funded and irrevocably released to the Lapis Parties by the Multicare Funding Deadline |

---

[3] Employees may have accumulated paid time off ("PTO") that the employees were able to roll forward from year to year, or cash out at retirement or departure. With limited exception regarding certain employees who were employed by SHC Medical Center - Yakima, separated after January 1, 2020 and then rehired by another Debtor and who were paid on account of unused PTO earned while at SHC Medical Center - Yakima or provided with an allowed claim, the Reorganized Debtors will assume the PTO Claims for retained employees of the Hospital, and PTO will be allowed to be used on the same terms and conditions as before Petition Date.

US_Active\116219861\V-9

| | | | | |
|---|---|---|---|---|
| $43,571,500.00, less any amount(s) paid down prior to the Effective Date pursuant to pending asset sale pleadings.<br><br>Actual amount subject to per diem adjustment. | | | all Senior Secured Bond Debt Claims shall be Allowed and reinstated without setoff, reduction or subordination on the terms of the Exchange Debt Documents in the amount of all such Senior Secured Bond Debt Claims as of the Effective Date. In the event the Multicare Transaction Payment is funded and irrevocably released to the Lapis Parties by the Multicare Funding Deadline all Senior Secured Bond Debt Claims shall be Allowed and paid in full in cash on the Effective Date. |
| 2B | Senior Secured Credit Agreement Claims<br><br>Total Estimated Amount = $13,162,397.26<br><br>Actual amount subject to per diem adjustment. | No | Yes | In accordance with the Senior Debt 9019 Settlement, unless the Multicare Transaction Payment has been funded and irrevocably released to the Lapis Parties by the Multicare Funding Deadline all Senior Secured Credit Agreement Claims shall be Allowed and satisfied, without setoff, reduction, subordination or challenge, by the exchange of all Senior Secured Credit Agreement Claims for Senior Secured Credit Agreement Exchange Debt with the attributes described in the schedule attached hereto in **Exhibit A** in the amount of all Senior Secured Credit Agreement Claims as of the Effective Date. In the event the Multicare Transaction Payment is funded, and irrevocably released to the Lapis Parties by the Multicare Funding Deadline all Senior Secured Credit Agreement Claims shall be Allowed and paid in full in cash on the Effective Date. |

US_Active\116219861\V-9

| | | | | |
|---|---|---|---|---|
| 2C | Other Secured Claims | No | Yes | On or as soon as practicable after the Effective Date, each Holder of an allowed Other Secured Claim against the Debtors will receive from the assets of the Debtors, at the discretion of the Plan Proponents (i) cash equal to the full amount of its Claim, (ii) a reinstated note on the same payment and collateral terms as its prior Claim, (iii) a return of collateral securing the Claim against the Debtor, with any deficiency to result in a General Unsecured Claim, or (iv) such less favorable treatment to which the Holder otherwise agrees. |

### 3. Class 3 - Convenience Class Claims

Class 3 consists of Convenience Class Claims, meaning those General Unsecured Claims that are either (i) less than or equal to five thousand dollars ($5,000), or (ii) if the Claim amount is greater than five thousand dollars ($5,000), a General Unsecured Claim with respect to which the Holder has made a Convenience Class Election and thus accepted a maximum of one thousand dollars ($1,000) as payment of such Holder's Claim in full. As used herein, "Convenience Class Election" means the timely election by a Holder of a General Unsecured Claim in the amount of five thousand dollars ($5,000) or greater to have such entire General Unsecured Claim be treated as a claim in the Convenience Class (Class 3), in which case the portion of such General Unsecured Claim in excess of $5,000 shall be discharged in full on the Effective Date.

The Convenience Class Claims shall be treated as follows:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Convenience Class Claims<br><br>Total Amount = Est. Allowed amount of | No | Yes | To be paid 20% of allowed amount of claim up to a maximum of $1,000, on the Effective Date or as soon as practicable thereafter. |

- 30 -

US_Active\116219861\V-9

| | | | |
|---|---|---|---|
| $1,611,501,[4] assuming all claimants with Claims between $5,000 and $10,000 elect Class 3 treatment | | | There shall be no limitation on the number of Convenience Class members. |

### 4. Classes 4 and 4A – General Unsecured Claims Not Otherwise Classified and Insured General Unsecured Claims

Class 4 consists of General Unsecured Claims. Class 4A is a subclass consisting of General Unsecured Claims that are also Insured Claims. Class 4 and 4A Claims do not include claims arising under any assumed contracts and leases, which shall be treated as Administrative Claims and paid or otherwise satisfied according to the terms of the assumed contract or lease and any order of the Court authorizing its assumption. To the extent any Class 4 or 4A Claim is paid in the ordinary course of business by any party that has reached a prior agreement with Debtors, such Claim will be deemed satisfied and shall not receive a distribution under the Plan. Otherwise, the Class 4 and 4A Claims shall be treated as follows:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | General Unsecured Claims (Not Otherwise Classified)  Total Amount = Approximately $101,950,399.80[5] | No | Yes | Holders of Allowed General Unsecured Claims shall receive, on one or more GUC Distribution Dates, a *Pro Rata* share of the Net GUC Distribution Trust Assets. |
| 4A | Insured Claims | No | Yes | Subject to the terms and conditions set forth in <u>Section III.O</u> below, Holders of Allowed Insured Claims in Class 4A shall recover only from the available |

---

[4] This amount is based on General Unsecured Claims filed. The Debtors believe that this amount will materially reduce following the claims adjudication process.

[5] This amount of is based on General Unsecured Claims filed. The Debtors believe that this amount will materially reduce following the claims adjudication process.

US_Active\116219861\V-9

| | | | | insurance and Debtors shall be discharged to the extent of any such excess.<br><br>As of the Effective Date, all Insured Claims are Disputed. |
|---|---|---|---|---|

### 5. Class 5 - Intercompany Claims

All intercompany claims shall be expunged and eliminated through the limited consolidation of the Debtors unless otherwise indicated in the Plan Supplement.

## SECTION III. MEANS OF IMPLEMENTING THE PLAN

The Debtors and Multicare have executed the Multicare Credit Agreement and the Exit Loan Escrow Agreement. The Debtors shall expeditiously perform the Multicare Credit Agreement, such that the Exit Loan will be prepared to close on or prior to the Multicare Funding Deadline. The Exit Loan Escrow has been funded by Multicare with $75 million. Those funds shall be combined with such additional funds of the Debtors or Reorganized Debtors as may be necessary to fully fund the Multicare Transaction Payment as described in paragraph 1.117 above. Upon closing of the Exit Loan, the Multicare Transaction Payment will be made to the Lapis Parties, and the Lapis Parties' Claims will have been paid in full.

### A. The Senior Debt 9019 Settlement

The Plan is centered around the settlement of all rights and claims associated with the DIP Claims, Senior Secured Bond Debt Claims and Senior Secured Credit Agreement Claims (the "Senior Debt 9019 Settlement"). The Senior Debt 9019 Settlement is comprised of (i) the classification and treatment of the DIP Claims, Senior Secured Bond Debt Claims and Senior Secured Credit Agreement Claims and Lapis Parties' other prepetition Claims as specified in this Plan, (ii) (x) in the event the Multicare Transaction Payment is irrevocably released to the Lapis Parties on or before the Multicare Funding Deadline, payment in full in cash on the Effective Date or (y) in the event the Multicare Transaction Payment is not irrevocably released to the Lapis Parties on or before the Multicare Funding Deadline, the issuance (or reinstatement, as applicable) of the debt instruments (the "Exchange Debt") described in the schedule attached hereto as **Exhibit A** and more specifically in the Exchange Debt Documents, and (iii) the release and exculpation terms for the Lapis Parties as specified in this Plan.

FOR THE AVOIDANCE OF DOUBT, THE ENTRY OF THE CONFIRMATION ORDER CONSTITUTES AUTHORIZATION OF THE DEBTORS AND DEBTORS IN POSSESSION TO ENTER INTO, EXECUTE AND PERFORM THE EXIT LOAN AND ALL DOCUMENTS RELATED THERETO; PROVIDED FURTHER THAT IF THE CONDITIONS OF THE EXIT LOAN ARE NOT MET AND THE MULTICARE TRANSACTION PAYMENT IS NOT FUNDED AND IRREVOCABLY RELEASED TO THE LAPIS PARTIES ON OR BEFORE THE MULTICARE FUNDING DEADLINE, THEN SUCH COURT AUTHORIZATION AND OBLIGATIONS ON THE DEBTORS AND DEBTORS IN POSSESSION (AND ON ANY REORGANIZED DEBTORS) WITH RESPECT TO THE EXIT

US_Active\116219861\V-9

LOAN AND TO MULTICARE SHALL BE NULL, VOID AND OF NO EFFECT, EXCEPT AS OTHERWISE AGREED IN WRITING BETWEEN THE PLAN PROPONENTS AND MULTICARE; PROVIDED FURTHER, IF THE MULTICARE TRANSACTION PAYMENT IS FUNDED AND IRREVOCABLY RELEASED TO THE LAPIS PARTIES ON OR BEFORE THE EFFECTIVE DATE, THE DIP CLAIMS, SENIOR SECURED BOND DEBT CLAIMS, SENIOR SECURED CREDIT AGREEMENT CLAIMS AND THE LAPIS PARTIES' OTHER PREPETITION CLAIMS ARE DEEMED TO HAVE BEEN SATISFIED IN FULL AND THE LAPIS PARTIES SHALL RETAIN NO FURTHER DISTRIBUTION RIGHTS UNDER THE PLAN.

The treatment and distributions provided for herein with respect to the DIP Claims, Senior Secured Bond Debt Claims, Senior Secured Credit Agreement Claims and Lapis Parties' other prepetition Claims under the Senior Debt 9019 Settlement reflect a compromise and settlement of numerous complex issues including the Debtors' obligation to satisfy the DIP Claim on the Effective Date, the scope, extent and value of the collateral associated with the Senior Secured Bond Debt Claims and Senior Secured Credit Agreement Claims and related matters. The settlement provides final resolution of all issues relating to the DIP Claims and the rights and benefits of Lapis Parties, and the validity, enforceability and priority of the Senior Secured Bond Debt Claims and Senior Secured Credit Agreement Claims. Pursuant to the Senior Debt 9019 Settlement, subject to the occurrence of the Effective Date, each prepetition Claim reflected in a proof of claim filed by the Lapis Parties in the Chapter 11 Cases that is not a Senior Secured Bond Debt Claim or Senior Secured Credit Agreement Claim shall be Allowed in the liquidated amount specified therein. If the Multicare Transaction Payment is made, such Claims shall be paid in full in Cash on the Effective Date as party of the Multicare Transaction Payment. Such Claims shall otherwise be treated as Allowed General Unsecured Claims under the Plan.

The Plan shall constitute a motion to approve the Senior Debt 9019 Settlement. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of the Senior Debt 9019 Settlement pursuant to Bankruptcy Rule 9019 (which is inclusive of the releases by the Debtors and their Estates against the Lapis Parties) and a finding by the Bankruptcy Court that the Senior Debt 9019 Settlement is in the best interest of the Debtors and their Estates. If the Effective Date does not occur the Senior Debt 9019 Settlement shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

### B.    The Committee Plan Settlement

The Plan also embodies the Committee Plan Settlement set forth in the Term Sheet. The treatment of General Unsecured Claims provided for herein consistent with the Term Sheet reflects a compromise and settlement of numerous complex issues including, but not limited to, those set forth in the *Limited Objection of Official Committee of Unsecured Creditors to Motion for an Order Approving: (i) Proposed Disclosure Statement; (ii) Solicitation and Voting Procedures; (iii) Notice and Objection Procedure for Confirmation of Joint Plan of Reorganization; and (iv) Granting Related Relief* filed at docket number 1624. The Committee Plan Settlement provides final resolution of all issues relating to the treatment of General Unsecured Claims under this Plan. The Plan shall constitute a motion to approve the Committee Plan Settlement pursuant to Bankruptcy Rule 9019 and a finding by the Bankruptcy Court that the Committee Plan Settlement is in the best interest of the Debtors and their Estates. If the Effective Date does not occur, the

Committee Plan Settlement shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

### C. Exit Loan

The Debtors shall execute the Multicare Credit Agreement, the Exit Loan Escrow Agreement and any other related documents to implement their terms as agreements binding upon the Debtors and Debtors in Possession and the Reorganized Debtors.

### D. Vendor Claims

The Debtors (or the Reorganized Debtors, if after the Effective Date) and, unless the Multicare Transaction Payment is irrevocably released to the Lapis Parties on or before the Effective Date, the Lapis Parties, in consultation with the Committee (or the GUC Distribution Trustee, if after the Effective Date), will jointly use their best efforts to settle or otherwise resolve each of the Debtors' Vendor Claims subject to the following principles:

Prior to the Effective Date, the Debtors (with the prior consent of the Lapis Parties) shall have the right to settle any and all Vendor Claims in their sole and absolute discretion after consultation with the Committee, and the Committee shall not have the right to object to any such settlement.

After the Effective Date, unless the Multicare Transaction Payment is irrevocably received by the Lapis Parties by the Multicare Funding Deadline, the Liquidation Trustee shall have the right of the Liquidation Trust (including any consent terms by the primary beneficiaries) to settle any and all Vendor Claims after consultation with the Debtors and the Committee, and the Debtors, Committee, and GUC Distribution Trustee shall not have the right to object to such settlement. Solely in the event the Multicare Transaction Payment is funded and irrevocably released to the Lapis Parties on or before the Effective Date, the Reorganized Debtors shall have the right to settle any and all Vendor Claims after consultation with the Committee, and the Committee and GUC Distribution Trustee shall not have the right to object to such settlement.

Prior to or after the Effective Date, the Debtors (with the prior consent of the Lapis Parties) or the Liquidation Trustee (subject to the terms of the Liquidation Trust, including any consent terms by the primary beneficiaries) may commence and prosecute litigation to resolve the Vendor Claims. Consent shall be conditioned on, *inter alia*, the retention of counsel and retention terms acceptable to the Lapis Parties, *provided however*, in the event the Exit Loan has been funded, retention of counsel and retention terms shall be acceptable to Multicare.

### E. Corporate Actions

AH NP 2 is currently a wholly owned non-debtor subsidiary of Astria Health. AH NP2 is a 501(c)(3) Washington non-profit corporation. Unless the Multicare Transaction Payment is irrevocably released to the Lapis Parties on or before the Effective Date:

(1) On the Effective Date of the Plan, AH NP2 will amend its articles and bylaws to become the sole member of Astria Health on terms acceptable to the Lapis Parties. Astria Health

- 34 -

will also amend its articles and bylaws to change Astria Health from a no-member non-profit corporation to a single member non-profit corporation on terms acceptable to the Lapis Parties.

(2) On the Effective Date, simultaneously with the matters reflected in this Section immediately above, AH System, a newly created non-debtor entity, will assume the non-discharged debt of the Debtors in exchange for AH NP2's transfer of its sole membership interest in Astria Health to AH System. AH System is a freestanding Washington non-profit corporation. There is no overlap of directors between AH System and Astria Health or any of the Astria Health subsidiaries (including AH NP2). The AH System bylaws shall be on terms acceptable to the Lapis Parties.

(3) The Lapis Parties have agreed to reinstatement of the Senior Secured Bond Debt Claims which will be paid by the Reorganized Debtors over time.

(4) Also on the Effective Date, AH System will issue (or reinstate, as applicable) the Exchange Debt and otherwise execute and deliver the Exchange Debt Documents.

From the filing of this Plan in the Chapter 11 Cases through the Effective Date (the "Performance Period"), each Board Trustee of the Debtors shall direct the Debtors' officers and others to (a) afford to AH System and the Lapis Parties reasonably full and complete access during normal business hours to and the right to inspect the plants, properties, books, accounts, records and all other relevant documents and information with respect to the assets, liabilities and business of the Debtors, (b) furnish AH System and the Lapis Parties with such additional financial and operating data and other information as to businesses and properties of the Debtors as AH System or the Lapis Parties may from time to time reasonably request, and (c) cause the Debtors to (i) use commercially reasonable efforts to maintain and preserve each Debtor's respective business organizations and its respective relationships with physicians, suppliers, customers and others having business relationships with the Debtors, provided that this provision does not prevent the Debtors from assuming or rejecting executory contracts or unexpired leases or otherwise terminating such relationships in the ordinary course of business pursuant to such applicable provisions as are set forth in the Plan; and (ii) satisfy the conditions precedent to the occurrence of the Effective Date. Each Board Trustee shall otherwise direct the Debtors' officers and employees to reasonably and promptly cooperate with AH System and its authorized representatives and attorneys in AH System's efforts to satisfy the conditions precedent to the occurrence of the Effective Date.

## F. The GUC Distribution Trust

### 1. Establishment of GUC Distribution Trust

On the Effective Date, all GUC Distribution Trust Assets (other than the Supplemental GUC Distribution Amount) shall be contributed and transferred to the GUC Distribution Trust for the benefit of the GUC Distribution Trust Beneficiaries. In the event the Multicare Transaction Payment is funded and irrevocably released to the Lapis Parties by the Effective Date, the Supplemental GUC Distribution Amount shall be paid by the Reorganized Debtors to the GUC Distribution Trust through three (3) equal installment payments of two hundred thousand dollars ($200,000) on each of the first, second, and third anniversaries of the Effective Date of the Plan.

- 35 -

US_Active\116219861\V-9

The GUC Distribution Trust Assets shall pass to the GUC Distribution Trust free and clear of all Claims and interests in accordance with § 1141. The Confirmation Order shall constitute a determination that the transfer of the GUC Distribution Trust Assets to the GUC Distribution Trust is legal, valid, and consistent with the laws of the State of Washington. The transfer of the GUC Distribution Trust Assets to the GUC Distribution Trust on the Effective Date shall include the transfer and assignment of any and all GUC Distribution Trust Avoidance Actions. The GUC Distribution Trustee shall have exclusive standing to waive, commence, prosecute, or settle any GUC Distribution Trust Avoidance Actions in the GUC Distribution Trustee's discretion.

For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtors, the GUC Distribution Trustee, and the beneficiaries of the GUC Distribution Trust) shall treat the transfer of the GUC Distribution Trust Assets to the GUC Distribution Trust in accordance with the terms of this Plan as a sale by the Debtors of such Assets to the GUC Distribution Trust at a selling price equal to the fair market value of such Assets on the Effective Date. The GUC Distribution Trust shall be treated as the owner of all the Assets it holds.

The GUC Distribution Trust will be governed in accordance with the terms of a GUC Distribution Trust Agreement prepared by the Committee in consultation with the Debtors and the Lapis Parties, which shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the treatment of the GUC Distribution Trust as a grantor trust. The GUC Distribution Trustee will be selected by the Committee after consultation with the Debtors and the Lapis Parties and will have the rights, powers, privileges, immunities, and obligations set forth in the GUC Distribution Trust Agreement, *provided*, *however*, in the event the Multicare Transaction Payment is funded and irrevocably released to the Lapis Parties on or before the Effective Date, the Lapis Parties shall have no rights of consultation or powers of selection or replacement under the GUC Distribution Trust Agreement.

All parties shall execute any documents or other instruments as necessary to cause title to the applicable GUC Distribution Trust Assets to be transferred to the GUC Distribution Trust. The GUC Distribution Trust Assets will be held in trust for the benefit of Holders of Allowed General Unsecured Claims pursuant to the terms of the Plan and the GUC Distribution Trust Agreement.

## 2. Powers and Authority of the GUC Distribution Trustee

The powers of the GUC Distribution Trustee shall be set forth in full in the GUC Distribution Trust Agreement and shall include, among other things, subject to the limitations set forth in this Plan and the requirements set forth in a Plan Supplement: (a) the power to use, distribute, abandon, or otherwise dispose of all GUC Distribution Trust Assets; (b) the power to effect distributions under this Plan to the Holders of Allowed General Unsecured Claims; (c) the authority to pay all costs and expenses of administering the GUC Distribution Trust after the Effective Date (including the GUC Post-Effective Date Expenses), including the power to employ and compensate professionals and other Entities to assist the GUC Distribution Trustee in carrying out the duties hereunder (subject to the Reorganized Debtors' approval of professional fees as described in Section E.6. below), and to obtain and pay premiums for insurance and any other powers necessary or incidental thereto; (d) the power to implement all aspects of this Plan relating

- 36 -

US_Active\116219861\V-9

to the GUC Distribution Trust, including any other powers necessary or incidental thereto; (e) the authority to settle Claims, applicable Causes of Action, including GUC Avoidance Actions, or disputes as to amounts owing to or from the by Holders of General Unsecured Claims consistent with the terms of this Plan; (f) the authority to participate in any post-Effective Date motions to amend or modify this Plan or the GUC Distribution Trust Agreement, or appeals from the Confirmation Order; (g) the authority to participate in actions to enforce or interpret this Plan; (h) the power to bind the GUC Distribution Trust; and (i) the power to establish accounts in the name of the GUC Distribution Trust for the purpose of effectuating the Plan and administering the GUC Distribution Trust. Each of the foregoing powers may be exercised by the GUC Distribution Trustee without further order of the Court.

The GUC Distribution Trustee, in his or her sole discretion, shall have the authority to allocate and reallocate GUC Distribution Trust Assets (including Cash, and including any reserves necessary to effectuate the terms of this Plan) as necessary to effectuate the Plan without further application to, or approval of, the Court, to the extent such allocation or reallocation would not be inconsistent with the terms of this Plan. In the event that the GUC Distribution Trustee determines that the effectuation of the Plan or an equitable distribution to Holders of Allowed General Unsecured Claims requires allocation or reallocation of GUC Distribution Trust Assets in a manner that would otherwise be inconsistent with any term of this Plan (including for the purposes of distribution under the Plan), the GUC Distribution Trustee shall have the authority to make such allocation or reallocation with approval of the Court upon application to the Court.

### 3. Employment and Compensation of the GUC Distribution Trustee

The GUC Distribution Trustee shall serve without bond and shall receive compensation for serving as GUC Distribution Trustee as set forth in the GUC Distribution Trust Agreement. At any time after the Effective Date and without further application to or Order of the Court, the GUC Distribution Trustee may employ and compensate Persons or Entities, including professionals (which may, but need not, include Professionals previously or currently employed in the Chapter 11 Cases) reasonably necessary to assist the GUC Distribution Trustee in the performance of his or her duties under the GUC Distribution Trust Agreement and this Plan. Such Persons or Entities shall be compensated and reimbursed by the GUC Distribution Trustee for their reasonable and necessary fees and out of pocket expenses on a monthly basis in arrears, subject to the Reorganized Debtors' approval of professional fees as described in Section E.6. below.

### 4. GUC Distribution Trustee as Successor in Interest to the Committee

The GUC Distribution Trustee is the successor in interest to the Committee, and thus, after the Effective Date, to the extent this Plan requires or authorizes an action by the Committee, the action shall be taken by the GUC Distribution Trustee on behalf of the Committee.

For the avoidance of doubt, any obligation of the Debtors under this Plan with respect to the Committee or the GUC Distribution Trust that remains unperformed as of the Effective Date, or that is required to be performed on or after the Effective Date, shall become an obligation of the Reorganized Debtors as of the Effective Date, and shall be satisfied in full and performed by the Reorganized Debtors consistent with the provisions of the Plan.

- 37 -

19-01189-WLH11    Doc 2196    Filed 12/22/20    Entered 12/22/20 11:13:29    Pg 38 of 67

**5.**   **GUC Distribution Trust's Post-Effective Date Expenses**

Subject to Section III.F.6 below, all expenses related to the GUC Distribution Trustee's implementation of the Plan and administration of the GUC Distribution Trust incurred from and after the Effective Date through the date on which the GUC Distribution Trust is dissolved will be expenses of the GUC Distribution Trust, and the GUC Distribution Trustee will disburse funds from the GUC Distribution Trust Assets as appropriate for purposes of paying the GUC Post-Effective Date Expenses of the GUC Distribution Trust without the need for any further application to or Order of the Court. The GUC Post-Effective Date Expenses shall include, but are not limited to, the fees and expenses of the GUC Distribution Trustee; the fees and expenses of the professionals employed by the GUC Distribution Trustee (subject to the Reorganized Debtors' approval of professional fees as described in Section E.6. below); and other costs, expenses, and obligations of the GUC Distribution Trust until the date the GUC Distribution Trust is terminated in accordance with Section III.G and the GUC Distribution Trust Agreement. The GUC Distribution Trustee, in his or her sole discretion, on and after the Effective Date, shall have authority to establish, increase, and/or decrease any reserves as reasonably necessary and appropriate to account for and pay the GUC Post-Effective Date Expenses.

**6.**   **Post-Effective Date Expenses Relating to Claims Reconciliation and Vendor Claims**

Consistent with Section V.A below, reasonable attorneys' fees and expenses and other professional fees and expenses incurred by the GUC Distribution Trust (including the GUC Distribution Trustee's fees and expenses) attributable to services rendered in connection with the General Unsecured Claim reconciliation process will be paid by the Reorganized Debtors. Further, reasonable attorneys' fees and expenses incurred by the GUC Distribution Trust (including the GUC Distribution Trustee's fees and expenses), not to exceed one hundred thousand dollars (subject to increase by agreement of the GUC Distribution Trustee, the Reorganized Debtors, and (unless the Multicare Transaction Payment is irrevocably released to the Lapis Parties on or prior to the Effective Date) the Lapis Parties), attributable to services rendered in connection with the Vendor Claims (including consultation with the Debtors, Reorganized Debtors, Liquidation Trustee, and/or Lapis Parties regarding the Vendor Claims) will be paid by the Reorganized Debtors.

All fees and expenses payable by the Reorganized Debtors pursuant to this Section III.F.6 shall be subject to the following payment provisions:

The applicable professionals (including the GUC Distribution Trustee) will submit invoices, redacted as necessary to preserve any applicable privileges or protections, for the services described in this Section III.F.6 on a monthly basis to the Reorganized Debtors for review and approval. Upon receipt of an invoice, the Reorganized Debtors shall have ten (10) Business Days to communicate any dispute or objection to the requested fees and expenses to the applicable professional. In the event that no dispute or objection is communicated to the applicable professional within the ten (10) Business Day objection period, the Reorganized Debtors shall pay the requested fees and expense within twenty (20) days after the expiration of the objection period. To the extent that the Reorganized Debtors communicate any dispute or objection to the applicable professional within the ten (10) Business Day objection period, (i) the Reorganized Debtors shall

- 38 -

US_Active\116219861\V-9

pay any undisputed portion of the requested fees and expenses within twenty (20) days after the expiration of the objection period and (iii) the Reorganized Debtors and the applicable professional shall use reasonable efforts to resolve the dispute or objection during the twenty (20) days following the expiration of the objection period. If the Reorganized Debtors and the applicable professional are not able to resolve the dispute or objection during the twenty (20) days following the expiration of the objection period, the Reorganized Debtors and the applicable professional may seek resolution of the dispute or objection by the Court through the filing of a formal objection or motion to compel payment consistent with the terms of the Plan, as applicable.

### 7.     GUC Distribution Reserve

Prior to making a distribution to any Holders of Allowed General Unsecured Claims under the Plan, the GUC Distribution Trustee may place in reserve and/or in a separate account any funds that may be needed to pay General Unsecured Claims that are Disputed and General Unsecured Claims that have otherwise not been Allowed in the event that all or a portion of such Claims become Allowed. When a General Unsecured Claim is Allowed or Disallowed (and thus becomes an Allowed Claim or a Disallowed Claim, in whole or in part), the funds set aside on account of such Claim may be released from the reserve and shall be available for distribution in accordance with the terms of this Plan to either (i) the Holder of the General Unsecured Claim that has become an Allowed Claim, or (ii) if Disallowed, the Holders of Allowed General Unsecured Claims. The GUC Distribution Trustee, in his or her sole discretion, on and after the Effective Date, shall have authority to increase or decrease such as reasonably necessary and appropriate, and upon satisfaction of all Allowed General Unsecured Claims required to be paid from the reserve, to transfer amounts held therein for distribution pursuant to the Plan.

### 8.     GUC Distribution Trust Income Tax Status

For federal income tax purposes, all parties (including, without limitation, the Debtors, the GUC Distribution Trustee, and the beneficiaries of the GUC Distribution Trust) shall treat the GUC Distribution Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. For federal income tax purposes, the transfer of Assets to the GUC Distribution Trust under the Plan shall be treated as a deemed transfer to the beneficiaries of the GUC Distribution Trust in satisfaction of their Claims followed by a deemed transfer of the Assets by the beneficiaries to the GUC Distribution Trust. For federal income tax purposes, the beneficiaries will be deemed to be the grantors and owners of the GUC Distribution Trust and its assets. For federal income tax purposes, the GUC Distribution Trust will be taxed as a grantor trust within the meaning of IRC sections 671-677 (a non-taxable pass- through tax entity) owned by the beneficiaries. The GUC Distribution Trust will file federal income tax returns as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 and report, but not pay tax on, the GUC Distribution Trust's tax items of income, gain, loss deductions, and credits ("Tax Items"). The beneficiaries will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. All parties will use consistent valuations of the assets transferred to the GUC Distribution Trust for all federal income tax purposes. The assets shall be valued based on the GUC Distribution Trustee's good faith determination of their fair market value.

- 39 -

US_Active\116219861\V-9

### G. Termination of the GUC Distribution Trust

The existence of the GUC Distribution Trust and the authority of the GUC Distribution Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the earlier of (a) the date on which all of the GUC Distribution Trust Assets are liquidated in accordance with the Plan, the funds in the GUC Distribution Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities, and the Order closing the Chapter 11 Cases is a Final Order or (b) five (5) years after the date of creation of the GUC Distribution Trust, unless extended by the Court as provided in the GUC Distribution Trust Agreement.

At such time as the GUC Distribution Trust has been fully administered (*i.e.*, when all things requiring action by the GUC Distribution Trustee have been done and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final GUC Distribution Date, the GUC Distribution Trustee will file a notice of the final distribution from the GUC Distribution Trust with the Court.

### H. Establishment of Liquidation Trust

On the Effective Date, unless the Multicare Transaction Payment has been funded and irrevocably released to the Lapis Parties on or prior to the Effective Date, except as otherwise provided in the D&O Cause of Action Agreement consistent with <u>Section III.I</u> below, all Liquidation Trust Assets shall be contributed to the Liquidation Trust subject to a Liquidation Trust Agreement acceptable to the Debtors and the Lapis Parties and the appointment of a Liquidation Trustee acceptable to the Lapis Parties in their sole discretion.

In the event any Liquidation Trust Assets are liquidated, the proceeds of such liquidation shall be used to fund AH System's operating cash account up to an amount equal to the lesser of $10 million or 30 days cash on hand and then to pay the Exchange Debt in accordance with the Exchange Debt Documents, provided however, in the event the Multicare Transaction Payment has been funded and irrevocably released to the Lapis Parties no other portion of the AH System cash shall be used to pay Exchange Debt or any other Lapis Party Claims.

### I. Prosecution of D&O Causes of Action

The D&O Causes of Action shall be preserved for the benefit of the Debtors' Estates and their creditors. The mechanism for (a) the vesting, revesting, and/or transfer of the D&O Causes of Action and any related insurance policies (including the D&O Insurance Policies), (b) the prosecution and/or settlement or other resolution of the D&O Causes of Action (including the funding of the fees and costs attendant to such prosecution and/or settlement or other resolution), and (c) unless the Multicare Transaction Payment has been funded and irrevocably released to the Lapis Parties on or prior to the Effective Date, the sharing of any proceeds of the D&O Causes of Action shall be subject to the "<u>D&O Cause of Action Agreement</u>" filed as part of the Plan Supplement. In the event the Multicare Transaction Payment has been funded and irrevocably released to the Lapis Parties on or prior to the Effective Date, D&O Cause of Action Agreement

- 40 -

shall remain in effect but the Reorganized Debtors shall be substituted for all references to the Lapis Parties under said instrument.

### J. Post-Confirmation Management

Unless the Multicare Transaction Payment has been funded and irrevocably released to the Lapis Parties on or before the Effective Date, Reorganized Debtors, shall be controlled by AH System as the sole member and will provide the management for the Hospitals after the Effective Date.

The Debtors' Executive Services Agreement with AHM, Inc. ("AHM") will be rejected as of the earlier of the date ordered by the Court on a motion to reject the agreement, the Effective Date, or such other date as may be specified in the Confirmation Order. It is currently expected that all AHM employees currently serving as officers or employees of the Debtors will be offered employment by the Reorganized Debtors, effective on the Effective Date.

To the extent necessary to implement the Plan in the absence of funding and release of the Multicare Transaction Payment, AH System, will govern pursuant to amended and restated bylaws and other corporate documents. The new directors for the Reorganized Debtors will be set forth in the Plan Supplement and whose composition is subject to (a) applicable law and (b) the consent of the Lapis Parties. The new directors will also obtain management on terms acceptable to AH System.

### K. Termination of the Committee and Appointment of POC

On the Effective Date, the Committee shall be deemed dissolved, the retention and employment of the Committee's Professionals shall be deemed terminated, and the members of the Committee shall be deemed released and discharged of and from all further authority, duties, responsibilities, and obligations related to or arising from and in connection with the Chapter 11 Cases, other than for purposes of filing and/or objecting to final fee applications filed in the Chapter 11 Cases. The Professionals retained by the Committee shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the Effective Date in their capacities as Professionals of the Committee, except for services rendered and expenses incurred in connection with (i) any applications by such Professionals for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in the Plan, as approved by the Court, and (ii) any services necessary to effectuate the provisions of the Plan.

On the Effective Date, a POC consisting of not less than three (3) Persons or Entities that are beneficiaries of the GUC Distribution Trust. The identities of the Persons and/or Entities that will serve on the POC as of the Effective Date will be filed as part of the Plan Supplement. The POC's sole function and responsibility shall be to advise the GUC Distribution Trustee in the performance of the GUC Distribution Trustee's duties and obligations under the Plan with respect to the administration of the GUC Distribution Trust for the benefit of Holders of Allowed General Unsecured Claims. The members of the POC shall serve without compensation but may be reimbursed for reasonable expenses incurred in the performance of their duties as members of the POC.

- 41 -

US_Active\116219861\V-9

## L.     Creation of Administrative and Priority Claims Reserve

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors shall fund, and the Reorganized Debtors shall establish and thereafter maintain, the Administrative and Priority Claims Reserve with the Administrative and Priority Claims Reserve Amount, subject to the Administrative, Professional and Priority Claims Cap, in an authorized depository in the state of Washington, which funds shall vest in the Reorganized Debtors free and clear of all Liens, Claims, encumbrances, charges, and other interests, except as otherwise specifically provided in the Plan or in the Confirmation Order. Funds in the Administrative and Priority Claims Reserve shall be used by the Reorganized Debtors only for the payment of U.S. Trustee Fees and Administrative Claims, Priority Claims, and Professional Fee Claims Allowed after the Effective Date to the extent that such Allowed Claims have not been paid in full on or prior to the Effective Date. To the extent not otherwise provided herein or ordered by the Court, the Reorganized Debtors shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for Disputed Administrative Claims, Priority Claims, and Professional Fee Claims. Any amounts set aside to pay or reserve for Disputed Administrative Claims, Priority Claims, and Professional Fee Claims shall include the amounts needed to fund the ongoing costs and expenses of such reserve, including, without limitation, taxes in respect of Disputed Administrative Claims, Priority Claims, and Professional Fee Claims, if any. Any amounts remaining in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative Claims, Priority Claims, and Professional Fee Claims and the U.S. Trustee Fees shall be transferred to the Reorganized Debtors. *Provided however*, that unless the Multicare Transaction Payment is irrevocably received by the Lapis Parties on or before the Effective Date, any such excess amounts remaining in the Administrative and Priority Claims Reserve shall be subject to the terms of the Exchange Debt Documents.

## M.     Objections to Claims

After the Effective Date, the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee) will have the authority and obligation to review, compromise, and object to any Claims other than Allowed Claims consistent with Section V hereof. The Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee) will: (i) have the authority, without Court approval or approval by the GUC Distribution Trustee or any other person or entity, to compromise, release or settle any Claim where the Claim has an asserted face value of $25,000 or less and (ii) be required to seek an order of the Court approving the compromise, release or settlement of any Claim that has an asserted value of greater than $500,000, with notice and opportunity for hearing required with respect to such compromise, release or settlement.  If the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee) seek to compromise, release or settle any Claim where the Claim has an asserted face value of between $25,000 and $500,000, the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee) will provide at least five (5) Business Days' advance notice of the same to the Lapis Parties, the GUC Distribution Trustee, and the Reorganized Debtors, as applicable, and the opportunity to object within such notice period. If the Lapis Parties, the GUC Distribution Trustee, or the Reorganized Debtors, as applicable, object and the objection is not resolved consensually, the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee) may seek approval of the compromise, release or settlement by the Court on an expedited basis. Provided however, that

- 42 -

unless the Multicare Transaction Payment has been funded and irrevocably released to the Lapis Parties on or prior to the Effective Date, the Lapis Parties shall be entitled to any notice of, or right to object to any General Unsecured Claim settlements.

### N. Claims Paid or Payable by Third Parties

Subject to the terms of <u>Section III.O</u> below regarding Class 4A Insured Claims, Claims paid and/or payable by third parties, irrespective of classification, shall be treated as follows:

#### 1. Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Distributing Party. To the extent a Holder of a Claim receives a distribution under the Plan on account of such Claim and receives payment from a party that is not a Debtor or a Distributing Party on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Debtor or Distributing Party to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim.

#### 2. Claims Payable by Third Parties

No distribution under the Plan shall be made on account of an Allowed Claim that is payable by a party that is not a Debtor or a Distributing Party, including pursuant to any insurance policy under which any Debtor is a covered party or beneficiary (including the Insurance Policies), until the Holder of such Allowed Claim has exhausted all remedies with respect to such third party or insurance policy. To the extent that one or more of the Debtors' insurers or another third party agrees to satisfy in full or in part an Allowed Claim, then immediately upon such agreement, the applicable portion of such Claim may be Disallowed and expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court.

### O. Special Issues Regarding Insured Claims

Under the terms of Debtors' various insurance policies, Debtors may owe deductible amounts on account of Insured Claims for personal injury and medical malpractice. After the Effective Date of the Plan (unless an order modifying the automatic stay has been entered at an earlier date), Holders of Insured Claims shall be enjoined by the injunction established by the Confirmation Order from commencing or continuing any enforcement action to collect such Claim against the Estate.

Consistent with the foregoing, distributions under the Plan to each Holder of an Allowed Insured Claim shall be recoverable only from the available insurance and Debtors shall be discharged to the extent of any such excess. Further, the Plan shall not expand the scope of, or alter in any other way, the rights and obligations of Debtors' insurers under their policies, and Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including Debtors, the existence, primacy and/or scope of available coverage under any alleged applicable policy. The Plan shall not operate as a

US_Active\116219861\V-9

waiver of any other Claims that Debtors' insurers have asserted or may assert in any proof of Claim or Debtors' rights and defenses to such proofs of Claim.

### P. Distributions of Property Under the Plan

The following procedures set forth in the Plan apply to distributions made pursuant to the Plan whether by (i) Debtors as to the Effective Date Distributions, or (ii) the Reorganized Debtors or GUC Distribution Trustee as to all post-Effective Date Distributions (each of Reorganized Debtors, the GUC Distribution Trustee, or the Debtors, a "Distributing Party"). In connection with the Plan, to the extent applicable, the applicable Distributing Party shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

**Notwithstanding any other provision of this Plan (i) each Holder of an Allowed Unsecured Claim that is to receive a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Distributing Party for the payment and satisfaction of such income, withholding, and other tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under the Plan.**

### Q. Manner of Cash Payments Under the Plan

Cash payments to domestic Entities holding Allowed Claims will be tendered in U.S. Dollars and will be made by checks drawn on a domestic bank or by wire transfer from a domestic bank. Payments made to any foreign creditors holding Allowed Claims may be paid, at the option of the Distributing Party in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### R. No Distributions With Respect to Disputed Claims

No payments of Cash or distributions of other property or other consideration of any kind shall be made on account of any Disputed Claim unless and until such Claim becomes an Allowed Claim or is deemed to be such for purposes of distribution, and then only to the extent that the Claim becomes, or is deemed to be for distribution purposes, an Allowed Claim. Unless otherwise provided herein, any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive any unpaid distribution that otherwise would have been payable under the Plan on the Next Payment Date after the date that such Claim becomes an Allowed Claim or as soon thereafter as practicable.

### S. Record Date for Distribution

On the Distribution Record Date, the Distributing Party shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on

- 44 -

the Distribution Record Date. The foregoing terms shall not apply to distributions to the Lapis Parties, their successors and assigns with respect to DIP Claims as well as under Class 2A and Class 2B of this Plan.

### T.    Delivery of Distributions

The Distributing Party shall make distributions to each Holder of an Allowed Claim by mail as applicable as follows: (a) at the address set forth on the proof of Claim filed by such Holder of an Allowed Claim; (b) at the address set forth in any written notice of address change Filed with the Court, delivered to the Distributing Party, and reflected on the Claims Register after the date of any related proof of Claim; (c) at the address reflected in the Schedules if no proof of Claim is filed and no written notice of address change has been Filed with the Court, delivered to the Distributing Party, and reflected on the Claims Register; and (d) with respect to the Lapis Parties, as directed by the Lapis Parties.

### U.    Undeliverable and Unclaimed Distributions

Subject to the terms of any settlement agreement, if the distribution to the Holder of any Allowed Claim is returned as undeliverable, no further distribution shall be made to such Holder unless and until the Distributing Party is notified in writing of such Holder's then current address. Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Distributing Party pursuant to this Section until such time as a distribution becomes deliverable. Undeliverable Cash distributions shall not be entitled to any interest, dividends, or other accruals of any kind. Any check that is not cashed or otherwise deposited within three months after the check's date shall be deemed an undeliverable distribution under this Plan.

Any Holder of an Allowed Claim who does not assert a Claim in writing for an undeliverable distribution within one year after the date such distribution was due shall no longer have any Claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan, or from asserting a Claim against the Debtors or their property, or the GUC Distribution Trust and its assets, and the Claim giving rise to the undeliverable distribution will be discharged.

Nothing contained in the Plan shall require the Distributing Party to attempt to locate any Holder of an Allowed Claim.

### V.    Estimation of Disputed Claims for Distribution Purposes

On and after the Effective Date, the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee), may move for a Court order estimating any Disputed Claim. The estimated amount of any Disputed Claim so determined by the Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Disputed Claim, irrespective of the actual amount ultimately Allowed

- 45 -

US_Active\116219861\V-9

### W. Minimum Distributions

If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than fifty dollars ($50) on a particular distribution date, the Distributing Party may hold the Cash distributions to be made to such Holders until the aggregate amount of Cash to be distributed to each applicable Holder is in an amount equal to or greater than fifty dollars ($50). Notwithstanding the preceding sentence, if the aggregate amount of Cash distributions owed to any Holder of an Allowed Claim under the Plan never equals or exceeds fifty dollars ($50), then the Distributing Party shall not be required to distribute Cash to any such Holder.

### X. Rounding

Whenever any payment of a fraction of a cent would otherwise be called for under the Plan, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

### Y. Full Satisfaction

The Distributing Party shall make, and each Holder of a Claim shall receive, the distributions provided for in the Plan for full satisfaction and discharge of such Claim.

### Z. Distributions Free and Clear

Except as otherwise provided in this Plan, any distributions under the Plan shall be free and clear of any Liens, Claims, and encumbrances, and no Entity other than the Entity receiving the distribution, including any Debtor, shall have any interest (legal, beneficial, or otherwise) in any property distributed.

### AA. Conditions Precedent to Plan Confirmation

The conditions precedent to confirmation of the Plan shall include: (a) a final order, finding that the Disclosure Statement contains adequate information pursuant to § 1125, shall have been entered by the Court; (b) the proposed Confirmation Order will be in form and substance satisfactory to the Lapis Parties, the Committee and Multicare; (c) the Plan, including any amendments, modifications or supplements thereto, and all documentation contemplated by the Plan and the terms set forth in any Plan Supplement and the Definitive Documentation, shall be in form and substance satisfactory to the Lapis Parties (and, with respect to any portion of the Plan Supplement relating to the Committee Plan Settlement, including, *inter alia*, the GUC Distribution Trust, the Committee); (e) and any order authorizing the DIP Agreement shall be in full force and effect and shall not have been terminated, provided however that in the event (x) the Multicare Credit Agreement has been executed by Multicare as the Lender thereunder and (y) the Multicare Funding Deadline has not expired, then (z) the DIP Lender shall not be entitled to exercise remedies under the DIP Agreement without authorization of the Bankruptcy Court prior to January 16, 2021; and (f) the Exchange Debt Documents shall be in a form acceptable to the Plan Proponents, provided, that if the Multicare Transaction Payment has been funded and irrevocably released to the Lapis Parties on or before the Effective Date, then the Exchange Debt Documents shall not be executed.

US_Active\116219861\V-9

## BB. Conditions to Effectiveness

The Plan shall not become binding unless and until the Effective Date occurs. The Effective Date is the first Business Day (a) that is at least fourteen days after the Confirmation Date; (b) on which no stay of the Confirmation Order is in effect; and (c) on which all of the following conditions have been satisfied as set forth below or waived:

### 1. Conditions

(a) The Confirmation Order shall be entered no later than December 31, 2020 and shall have become a Final Order;

(b) Either (i) execution of the Definitive Documents, including the Exchange Debt Documents or (ii) the funding and irrevocable release of the Multicare Transaction Payment to the Lapis Parties has occurred;

(c) The actual and anticipated Allowed Administrative, Professional and Priority Claims do not exceed the Allowed Administrative, Professional and Priority Claims Cap;

(d) There has been compliance with the terms specified in Section III.E of this Plan;

(e) Unless the funding and irrevocable release of the Multicare Transaction Payment to the Lapis Parties has occurred, the bylaws of AH System, AH NP2, the Debtors and their affiliates shall be acceptable to the Lapis Parties; and

(f) All such other actions, documents, and agreements the Debtors, Lapis Parties, and the Committee determine are necessary to implement the Plan shall have been effected or executed.

The Debtors shall file and serve a "Notice of Occurrence of Effective Date" to all Holders of record of Claims and Interests as of the date of entry of the Confirmation Order.

### 2. Waiver of Conditions

Except as otherwise specified herein, the requirement that the conditions to the occurrence of the Effective Date be satisfied may be waived in whole or in part, and the time within which any such conditions must be satisfied may be extended, by the Debtors with the prior written consent of the Lapis Parties and the Committee. The failure to timely satisfy or waive any of such conditions may be asserted regardless of the circumstances giving rise to the failure of such condition to be satisfied, including any action or inaction by the Debtors. The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed ongoing and subject to assertion at any time.

- 47 -

US_Active\116219861\V-9

### CC.    Authorization of Entity Action

Each of the matters provided for under this Plan involving the Entity structure of Debtors or Entity action to be taken by or required of Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by creditors or Board Trustees of the Debtors.

### DD.    Reservation of Fair and Equitable (Cram Down) Power

Debtors reserve the right to confirm this Plan as to any impaired Class that does not accept the Plan by the requisite number of votes pursuant to the fair and equitable power of § 1129(b).

## SECTION IV.    TREATMENT OF MISCELLANEOUS ITEMS

### A.    Assumption of Executory Contracts

#### 1.    Assumptions

On or before the Voting Deadline, AH System will File the "Schedule of Assumed Agreements" and serve it on the parties to agreements listed on the schedule. AH System reserves the right to amend the Schedule of Assumed Agreements at any time prior to the Voting Deadline to: (a) delete any Executory Contract from the Schedule of Assumed Agreements and provide for its rejection under the Plan or (b) add any Executory Contract and provide for its assumption under the Plan or otherwise, subject to the right of the counterparty to object to such transfer within ten (10) Business Days after notice with a right to a hearing thereon, and subject to the requirement that Debtor must reserve amounts for Disputed Cure Payments in the full amounts claimed by objecting contract counterparties.  On the Effective Date, Debtors will assume all Executory Contracts set forth on the Schedule of Assumed Agreements. The Confirmation Order will constitute a Court order approving the assumption, as of the Effective Date, of the Executory Contracts not rejected under the Plan, subject to the requirement that Debtors must reserve amounts for Disputed Cure Payments in the full amounts claimed by objecting contract counterparties to contracts to be assumed.

#### 2.    Cure Payments

Any monetary amounts by which each Executory Contract to be assumed is in default shall be satisfied, pursuant to § 365(b)(l), by payment from the Administrative and Priority Claims Reserve, of the default amount (as set forth in the Debtors' books and records), a schedule of which will be Filed and served by the Voting Deadline, in full in Cash on the later of the Effective Date or when such Cure Claim is Allowed, or on such other terms as the parties to each such Executory Contract may otherwise agree. In these Chapter 11 Cases, prior to Confirmation of the Plan, some known Cure Payments will have already been paid or resolved by stipulation or agreement. In the event of a dispute regarding (a) the amount of any Cure Payments, (b) the ability of Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of § 365) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by § 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Court's ruling on such motion, the

US_Active\116219861\V-9

Executory Contract at issue shall be deemed assumed by Reorganized Debtors as of the Effective Date, unless otherwise ordered by the Court on a motion to reject the agreement, and the Debtors will reserve amounts for Disputed Cure Payments in the full amounts claimed by objecting counterparties. In no event shall the GUC Distribution Trust be liable or otherwise responsible for any Cure Payment. Further, the GUC Distribution Trustee shall have no authority to direct or otherwise oppose any assumption or rejection of an Executory Contract.

### 3. Objections to Assumption

Any Entity who is a party to an Executory Contract that will be assumed under the Plan must File with the Court and serve upon interested parties a written statement and supporting declaration stating the basis for any objection to assumption by no later than seven (7) days after the filing of the Schedule of Assumed Agreements ("Assumption Objections"). Any Entity that fails to timely File and serve such a statement and declaration will be deemed to waive any and all objections to the proposed assumption of its contract or lease. Debtors must file and serve its reply with respect to any Assumption Objections by no later than five (5) days after the filing of an Assumption Objection. A hearing on the Assumption Objections will take place at the Confirmation Hearing, or as soon thereafter as the Court is available.

In the absence of a timely objection by an Entity who is a party to an Executory Contract, the Confirmation Order shall constitute a conclusive determination as to the amount of any cure and compensation due under the Executory Contract, and that Reorganized Debtors have demonstrated adequate assurance of future performance with respect to such Executory Contract.

### 4. Resolution of Claims Relating to Assumed Agreements

In accordance with the procedures set forth in Section IV.A relating to the Cure Payments and objections to assumption, payment of the Cure Payments with respect to Executory Contracts that will be assumed under the Plan shall be deemed to satisfy, in full, any prepetition or post-petition arrearage or other Claim asserted in a Filed proof of Claim or listed in the Schedules, irrespective of whether the Cure Payment is less than the amount set forth in such proof of Claim or the Schedules. Upon the tendering of the Cure Payment, such Claim shall be Disallowed, without further order of the Court or action by any party.

### B. Rejection of Executory Contracts

### 1. Rejected Agreements

Immediately prior to the Effective Date, all Executory Contracts of the Debtors will be deemed rejected in accordance with the provisions and requirements of §§ 365 and 1123 except those Executory Contracts that (i) have been assumed by order of the Court, (ii) are subject to a motion to assume pending on the Effective Date, or (iii) have been identified on a list of assumed contracts to be filed with the Court prior to the Voting Deadline, which shall be a date prior to the Effective Date of the Plan. The Confirmation Order will constitute a Court order approving such rejections of Executory Contracts as of the Effective Date pursuant to §§ 365 and 1123.

US_Active\116219861\V-9

### 2. Bar Date for Rejection Damage Claims

Any Claim for damages arising from the rejection under the Plan of an Executory Contract must be Filed and served upon counsel to the Debtors within 30 days after the entry of an order (including the Confirmation Order) approving such rejection. Any such Claims that are not timely Filed and served will be forever barred and unenforceable against Debtors, the Estate, Reorganized Debtors, the GUC Distribution Trust, and their respective property, and Entities holding these Claims will be barred from receiving any distribution under the Plan on account of such untimely claims.

### 3. Post-Petition Contracts and Leases

Except as set forth in the Schedule of Assumed Agreements or as otherwise expressly provided in the Plan or the Confirmation Order, all contracts, leases, and other agreements that Debtors entered into after Petition Date will be rejected by Reorganized Debtors.

### C. Indemnification Obligations

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of employees, attorneys, other professionals and agents of the Debtors, and such current and former employees', attorneys', other professionals' and agents' of the Debtors, and such current respective Affiliates, respectively, against any Claims or Causes of Action under the Indemnification Provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtors and assigned to the Reorganized Debtors and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date; provided, however, that, notwithstanding anything herein to the contrary, the obligation of the Reorganized Debtors to fund such Indemnification Provisions shall be limited to the extent of coverage available under any Reorganized Debtor Insurance Policies.

### D. Lapis Parties Fees and Expenses

As an integral component of the Senior Debt 9019 Settlement, to the extent not previously paid prior to the Effective Date or in connection with this Plan, the fees and expenses of each of the Lapis Parties shall be deemed Allowed Administrative Claims and shall be paid in Cash on the Effective Date.

### E. Changes in Rates Subject to Regulatory Commission Approval

Debtors are not subject to governmental regulatory commission approval of their rates.

- 50 -

US_Active\116219861\V-9

## SECTION V.  PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

### A.  Joint Pursuit of Reconciliation, Objections to, and/or Settlement of Asserted General Unsecured Claims

The GUC Distribution Trustee and the Debtors will jointly pursue the reconciliation, objections to, and/or settlement of asserted General Unsecured Claims consistent with the terms of this Section V.  To the extent a dispute arises between the GUC Distribution Trustee and the Debtors as to the proposed treatment of an asserted General Unsecured Claim, either party shall have standing and the right to submit the matter to the Court for a determination, subject to the other party's right to oppose the requested relief.

Reasonable attorneys' fees and expenses and other professional fees and expenses (including the GUC Distribution Trustee's fees and expenses) incurred by the GUC Distribution Trust attributable to services rendered in connection with the General Unsecured Claim reconciliation process will be paid by the Reorganized Debtors.

The Debtors and Reorganized Debtors, as applicable, will cooperate with and provide reasonable assistance the GUC Distribution Trustee, as applicable, including reasonable access to information and personnel, in connection with the General Unsecured Claim reconciliation process.

### B.  Resolution of Disputed Claims

### 1.  Allowance of Claims and Interests

On and after the Effective Date, the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee), shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest, except with respect to any Claim or Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

### 2.  Prosecution of Objections to Claims

On or after the Effective Date, the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee), shall have the authority to File objections to Claims, and the exclusive authority, subject to Section V.A of this Plan, to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all Claims, except with respect to any Claim or Interest deemed Allowed as of the Effective Date. From and after the Effective Date, the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee) shall have the sole authority, subject to Section V.A of this Plan, to administer and adjust the Claims Register with respect to Claims to reflect any such settlements or compromises and no further notice to or action, order, or approval of the Court with respect to such settlements or compromises shall be required.

- 51 -

US_Active\116219861\V-9

### 3. Claims Estimation

On and after the Effective Date, the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee) may, at any time, request that the Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, in each case regardless of whether the Debtors, the Reorganized Debtors, or any other party have previously objected to such Claim or whether the Court has ruled against the objecting party on any such objection, and the Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Court to estimate any such Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.

Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Court. In the event that the Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Reorganized Debtors (or the GUC Distribution Trustee, as applicable) may elect to pursue additional objections to the ultimate distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtors (or the GUC Distribution Trustee, as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding § 502(j), in no event shall any Holder of a Claim that has been estimated pursuant to § 502(c) or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

### 4. Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee) or the Claims and Noticing Agent at the Reorganized Debtors' (and with respect to General Unsecured Claims, the GUC Distribution Trustee's) direction, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtors (and with respect to General Unsecured Claims, by the GUC Distribution Trustee) without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Court.

### 5. Deadline to File Objections to Claims or Interests

Any objections to Claims or Interests shall be Filed no later than the Claims Objection Bar Date.

- 52 -

US_Active\116219861\V-9

## C.     Disallowance of Claims

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is Disallowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or Order of the Court.

To the maximum extent provided by § 502(d), except as otherwise provided in this Plan, all Claims of any Entity from which property is recoverable by the GUC Distribution Trustee under §§ 542, 543, 550, or 553 or that the GUC Distribution Trustee alleges is a transferee of a transfer that is avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) shall be Disallowed if (a) the Entity, on the one hand, and the GUC Distribution Trustee, on the other hand, agree or it has been determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code, and (b) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

## D.     Disallowance of Untimely Claims

Except as expressly provided in this Plan or otherwise agreed by the Reorganized Debtors (and with respect to General Unsecured Claims, the GUC Distribution Trustee) on and after the Petition Date, any and all Holders of proofs of Claim filed after the applicable bar date (including the Administrative Claims Bar Date, the Claims Bar Date, the Governmental Bar Date, and the Supplemental Bar Date) shall not be treated as creditors or claimants for purposes of voting or distribution under this Plan unless, on or before the Voting Deadline or the Confirmation Date, as applicable, such untimely proofs of Claim are deemed timely filed by a Final Order of the Court.

Claims for which proofs of Claim or requests for Allowance were required to be filed by a bar date occurring before the Effective Date, and with respect to which no proof of Claim or request for Allowance was filed before the applicable bar date, shall be forever Disallowed, barred, and discharged in their entirety as of the Effective Date, and shall not be enforceable against the Debtors, their Estates, the Reorganized Debtors, or the GUC Distribution Trust, unless such proofs of Claim or requests for Allowance are deemed timely filed by a Final Order of the Court before the Effective Date.

Claims for which proofs of Claim or requests for Allowance are required to be filed after the Effective Date pursuant to this Plan, and with respect to which no proof of Claim or request for Allowance is filed by the applicable deadline, shall be forever Disallowed, barred, and discharged in their entirety as of the applicable deadline, and shall not be enforceable against the Debtors, their Estates, the Reorganized Debtors, or the GUC Distribution Trust.

## E.     Amendments to Claims

After the Confirmation Date, a Claim or Interest may not be filed or amended without the authorization of the Court and any such new or amended Claim or Interest Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Court; provided, that such Holder may amend the Claim or Interest Filed solely to decrease, but not to

- 53 -

increase, the amount, number, or priority of such Claim or Interest, unless otherwise provided by the Court.

### F. No Interest

Unless otherwise specifically provided for in the Plan, by applicable law (including, without limitation, § 506(b)), or agreed to by, as applicable, the Debtors, the Committee, the Reorganized Debtors, or the GUC Distribution Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim. Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final distribution paid on account of such Claim occurs after the Effective Date.

## SECTION VI. RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1. Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or Allowance of Claims; provided that, for the avoidance of doubt, the Court's retention of jurisdiction with respect to such matters shall not preclude the Debtors or the Reorganized Debtors, as applicable, from seeking relief from any other court, tribunal, or other legal forum of competent jurisdiction with respect to such matters;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to (i) the assumption or assumption and assignment of any Executory Contract to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract, cure costs pursuant to § 365, or any other matter related to such Executory Contract; and (ii) any dispute regarding whether a contract or lease is or was executory or unexpired;

4. adjudicate, decide, or resolve any controversies, if any, with respect to distributions to Holders of Allowed Claims;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. adjudicate, decide, or resolve any and all matters related to Causes of Action;

- 54 -

US_Active\116219861\V-9

7. adjudicate, decide, or resolve any and all matters related to § 1141;

8. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9. enforce any order for the sale of property pursuant to §§ 363, 1123, or 1146(a);

10. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in <u>Section VII</u> and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement, including any matter arising in connection with or otherwise relating to the Liquidation Trust or GUC Distribution Trust;

15. adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective date, including *Washington State Nurses Association v. SHC Medical Center - Yakima and Astria Health*, Adv. Pro. No. 20-80005 (Bankr. E.D. Wa.); *Astria Health, et al. v. United States Small Business Administration and Jovita Carranza*, Adv. Pro. No. 20-80016 (Bankr. E.D. Wa.); and *Yakima HMA, LLC and Yakima HMA Physician Management, LLC v. SHC Medical Center - Yakima and SHC Medical Center - Toppenish*, Adv. Pro. No. 20-80018 (Bankr. E.D. Wa.);

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18. determine requests for the payment of Claims entitled to priority pursuant to § 507;

19. hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 (including the expedited determination of taxes under § 505(b));

US_Active\116219861\V-9

20. hear and determine matters concerning exemptions from state and federal registration requirements in accordance with § 1145;

21. hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

22. enforce all orders previously entered by the Court;

23. hear any other matter not inconsistent with the Bankruptcy Code;

24. enter an order concluding or closing the Chapter 11 Cases; and

25. enforce the compromise, settlement, injunction, release, and exculpation provisions set forth in Section VII.

## SECTION VII.    EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

This is a reorganization plan. The rights afforded in the Plan and the treatment of all Claims shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever arising prior to the Effective Date, including any interest accrued on such Claims from and after the Petition Date (except as otherwise ordered by the Court), against the Debtors, the Estates and their property.

Except as otherwise provided in the Plan or the Confirmation Order or in any Executory Contract assumed by Debtors during the Chapter 11 Cases (including, without limitation, the Debtors' indemnification obligations thereunder), the Plan and Confirmation Order shall: (a) on the Effective Date, discharge and release the Debtors, the Estate, the Reorganized Debtors, and their property to the fullest extent permitted by §§ 524 and 1141 from all Claims, including all debts, obligations, demands, liabilities, and Claims that arose before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i), regardless of whether or not (i) a proof of Claim based on such debt is Filed or deemed Filed, (ii) a Claim based on such debt is allowed pursuant to § 502, or (iii) the Holder of a Claim based on such debt or Interest has or has not accepted the Plan; (b) void any judgment underlying a Claim discharged hereunder; and (c) preclude all Entities from asserting against the Debtors, the Estate, the Reorganized Debtors, or their respective property any Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. To the extent any Claim is paid other than under the Plan, Debtors will be deemed discharged and released with respect to such Claim and such Claim and shall not receive a distribution under the Plan.

Except as otherwise provided in the Plan or the Confirmation Order, or as provided in contracts assumed during the Case and Debtor's indemnification obligations thereunder, on and after the Effective Date, all Entities who have held, currently hold, or may hold a debt or Claim against the Debtors, the Estate, the Reorganized Debtors, or their respective property that is based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to

- 56 -

the Effective Date, that otherwise arose or accrued prior to the Effective Date (other than any act or omission, transaction, or other activity of any kind or nature related to or arising from the Exit Loan), or that is otherwise discharged pursuant to the Plan, shall be permanently enjoined from taking any of the following actions on account of any such discharged debt, Claim, or Interest (the "Permanent Injunction"): (a) commencing or continuing in any manner any action or other proceeding against the Debtors, the Estates, the Reorganized Debtors, or their respective property that is inconsistent with the Plan or the Confirmation Order; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtors, the Estate, the Reorganized Debtors, or their respective property other than as specifically permitted under the Plan, as approved by the Confirmation Order; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtors, the Estate, the Reorganized Debtors, or their respective property; and (d) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan, the Confirmation Order, or the discharge provisions of § 1141. Any Entity injured by any willful violation of such Permanent Injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

### B. Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, including, but not limited to, all known or unknown liabilities, of Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i), in each case whether or not: (a) a Proof of Claim or proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to § 501; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to § 502; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtor or its Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests, subject to the Effective Date occurring.

### C. Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim,

- 57 -

satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised. For the avoidance of doubt, this Section shall not apply to DIP Claims, Senior Secured Bond Claims or Senior Secured Credit Agreement Claims unless the Multicare Transaction Payment is funded and irrevocably released to Lapis Parties by the Multicare Funding Deadline.

### D. Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, § 510(b), or otherwise. Except with respect to Allowed Claims, pursuant to § 510, the Court shall retain jurisdiction to re-classify, upon proper application, any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### E. Exculpation

The Exculpated Parties shall neither have, nor incur any liability to any Entity for any postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Reorganized Debtors, liquidation of the Liquidating Debtors, or administration of the GUC Distribution Trust. Without limiting the foregoing "Exculpation" provided under this Section, the rights of any Holder of a Claim or Interest to enforce rights arising under the Plan shall be preserved, including the right to compel payment of distributions in accordance with the Plan; provided, that the foregoing "Exculpation" shall have no effect on the liability of any Entity for liability solely to the extent resulting from any such act or omission taken after the Effective Date or of any Entity solely to the extent resulting from any act or omission that is determined in a final order to have constituted gross negligence or willful misconduct; provided, further, that, subject to the foregoing exclusions, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement. The exculpation of the Lapis Parties is an integral component of the Senior Debt 9019 Settlement.

### F. Releases

#### 1. Debtors' Releases

ON THE EFFECTIVE DATE OF THE PLAN AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY WILL BE EXPRESSLY, UNCONDITIONALLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY RELEASED, ACQUITTED AND

DISCHARGED BY THE DEBTORS ON BEHALF OF THEMSELVES, THEIR ESTATES, THE REORGANIZED DEBTORS, THE GUC DISTRIBUTION TRUST AND THE LIQUIDATION TRUST (SUCH THAT THE REORGANIZED DEBTORS, THE GUC DISTRIBUTION TRUST AND THE LIQUIDATION TRUST WILL NOT HOLD ANY CLAIMS OR CAUSES OF ACTION RELEASED PURSUANT TO THIS PLAN), FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, FROM ANY AND ALL ACTIONS, CLAIMS, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, ANY OF THE DEBTORS' PRESENT OR FORMER ASSETS, THE RELEASED PARTIES' INTERESTS IN OR MANAGEMENT OF THE DEBTORS, THE PLAN, THE DISCLOSURE STATEMENT, THIS CHAPTER 11 CASE, OR ANY RESTRUCTURING OF CLAIMS OR INTERESTS UNDERTAKEN PRIOR TO THE EFFECTIVE DATE, INCLUDING THOSE THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE GUC DISTRIBUTION TRUST, OR THE LIQUIDATION TRUST WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT OR THAT ANY HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTOR OR ANY OTHER ENTITY COULD HAVE BEEN LEGALLY ENTITLED TO ASSERT DERIVATIVELY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES INCLUDING WITH RESPECT TO THE LAPIS PARTIES ANY CHALLENGE TO CLAIMS AND RIGHTS OF THE LAPIS PARTIES UNDER THE BOND DOCUMENTS AND CREDIT AGREEMENT DOCUMENTS; *PROVIDED, HOWEVER,* THAT THE FOREGOING "DEBTORS' RELEASES" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR CAUSES OF ACTION OF THE DEBTORS OR THEIR ESTATES AGAINST A RELEASED PARTY ARISING UNDER ANY CONTRACTUAL OBLIGATION OWED TO THE DEBTORS THAT IS ENTERED INTO OR ASSUMED PURSUANT TO THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTORS' RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE COURT'S FINDING THAT THE DEBTORS' RELEASES ARE: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTORS' RELEASES; (3) IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR AGAINST ANY OF THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, THE GUC DISTRIBUTION TRUST, OR THE LIQUIDATION TRUST, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTORS' RELEASES.

US_Active\116219861\V-9

THE FOREGOING RELEASE AS TO THE LAPIS PARTIES IS AN INTEGRAL COMPONENT OF THE SENIOR DEBT 9019 SETTLEMENT.

**2.** **Third Party Releases**

ON THE EFFECTIVE DATE OF THE PLAN AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASING PARTIES SHALL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY, RELEASED AND ACQUITTED THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL ACTIONS, CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, THAT SUCH HOLDER (WHETHER INDIVIDUALLY OR COLLECTIVELY) EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, ANY OF THE DEBTORS' PRESENT OR FORMER ASSETS, THE RELEASED PARTIES' INTERESTS IN OR MANAGEMENT OF THE DEBTORS, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE PLAN, THE DISCLOSURE STATEMENT, THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING OF CLAIMS OR INTERESTS UNDERTAKEN PRIOR TO THE EFFECTIVE DATE, INCLUDING THOSE THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE GUC DISTRIBUTION TRUST, OR THE LIQUIDATION TRUST WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT OR THAT ANY HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTORS OR ANY OTHER ENTITY COULD HAVE BEEN LEGALLY ENTITLED TO ASSERT DERIVATIVELY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES, EXCEPT FOR (I) ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AND (II) THE RIGHT TO RECEIVE DISTRIBUTIONS FROM THE DEBTORS, THE REORGANIZED DEBTORS, THE GUC DISTRIBUTION TRUST, OR THE LIQUIDATION TRUST ON ACCOUNT OF AN ALLOWED CLAIM AGAINST THE DEBTORS PURSUANT TO THE PLAN. FOR THE AVOIDANCE OF DOUBT, THE RELEASING PARTIES SHALL INCLUDE (A) THE RELEASED PARTIES, AND (B) ALL HOLDERS OF CLAIMS THAT (I) VOTE TO ACCEPT THE PLAN, AND (II) DO NOT AFFIRMATIVELY OPT OUT OF THE THIRD PARTY RELEASE PROVIDED BY THIS SECTION PURSUANT TO A DULY EXECUTED BALLOT. NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, IN NO EVENT SHALL AN ENTITY THAT (X) DOES NOT VOTE TO ACCEPT OR REJECT THE PLAN, (Y) VOTES TO REJECT THE PLAN, OR (Z) APPROPRIATELY MARKS THE BALLOT TO OPT OUT OF THE THIRD PARTY RELEASE PROVIDED IN THIS SECTION AND RETURNS SUCH BALLOT IN ACCORDANCE WITH THE SOLICITATION PROCEDURES ORDER, BE A RELEASING PARTY.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS

US_Active\116219861\V-9

AND DEFINITIONS CONTAINED IN THE PLAN, *AND*, *FURTHER*, SHALL CONSTITUTE THE COURT'S FINDING THAT THE THIRD PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM RELEASED PURSUANT TO THE THIRD PARTY RELEASE.

NOTWITHSTANDING ANY PROVISION HEREIN, THERE SHALL BE NO RELEASE OR EXCULPATION BY OR INJUNCTION AGAINST ANY COMMITTEE MEMBER HOLDING A CLAIM OR REPRESENTING A CLAIMANT THAT HAS OPTED OUT OF THE THIRD PARTY RELEASE OR HAS NOT VOTED ON THE PLAN, EXCEPT SOLELY IN SUCH COMMITTEE MEMBER'S CAPACITY AS SUCH.

THE FOREGOING RELEASE AS TO THE LAPIS PARTIES IS AN INTEGRAL COMPONENT OF THE SENIOR DEBT 9019 SETTLEMENT. PURSUANT TO § 1123(B)(3)(A) AND THE SENIOR DEBT 9019 SETTLEMENT, AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH HOLDER OF ANY CLAIM SHALL BE DEEMED TO FOREVER RELEASE, WAIVE, AND DISCHARGE ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES WHATSOEVER, AGAINST THE LAPIS PARTIES ARISING FROM OR RELATED TO THE LAPIS PARTIES' PRE- AND/OR POST-PETITION ACTIONS, OMISSIONS OR LIABILITIES, TRANSACTION, OCCURRENCE, OR OTHER ACTIVITY OF ANY NATURE EXCEPT FOR AS PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER.

### G. Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO SECTION VII.F.1 HEREOF; (3) HAVE BEEN RELEASED PURSUANT TO SECTION VII.F.2 HEREOF; (4) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION VII.E HEREOF; OR (5) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE GUC DISTRIBUTION TRUST, THE LIQUIDATION TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT

US_Active\116219861\V-9

TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, CAUSES OF ACTION, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE GUC DISTRIBUTION TRUST, THE LIQUIDATION TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, CAUSES OF ACTION, OR LIABILITIES; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE GUC DISTRIBUTION TRUST, THE LIQUIDATION TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, CAUSES OF ACTION, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATES OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF OR SUBROGATION RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE GUC DISTRIBUTION TRUST, THE LIQUIDATION TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; *PROVIDED THAT* NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; *PROVIDED, FURTHER, THAT* NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

### H. Waiver of Statutory Limitations on Releases

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER THIS SECTION) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS

US_Active\116219861\V-9

SETTLEMENT WITH THE PARTY RELEASED, IT HAVING CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY. THE RELEASES CONTAINED IN THIS SECTION ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

## I. Limitation on Liability of Liquidation Trustee and GUC Distribution Trustee

The GUC Distribution Trustee will not be liable for any act it may do or omit to do as GUC Distribution Trustee under the Plan and GUC Distribution Trust Agreement, as applicable, while acting in good faith and in the exercise of his or her reasonable business judgment; nor will the GUC Distribution Trustee be liable in any event except for gross negligence, fraud, or willful misconduct. The foregoing limitation on liability will also apply to any Person or Entity (including any attorney or other professional) employed by the GUC Distribution Trustee and acting on behalf of the GUC Distribution Trustee in the fulfillment of the GUC Distribution Trustee's duties under the Plan or the GUC Distribution Trust Agreement. Also, the GUC Distribution Trustee and any Person or Entity (including any attorney or other professional) employed by the GUC Distribution Trustee and acting on behalf of the GUC Distribution Trustee shall be entitled to indemnification out of the assets of the GUC Distribution Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being or having been employed by, the GUC Distribution Trustee, or for performing any function incidental to such service.

The Liquidation Trustee will not be liable for any act it may do or omit to do as Liquidation Trustee under the Plan and Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of its reasonable business judgment; nor will the Liquidation Trustee be liable in any event except for gross negligence, fraud, or willful misconduct. The foregoing limitation on liability will also apply to any Person or Entity (including any attorney or other professional) employed by the Liquidation Trustee and acting on behalf of the Liquidation Trustee in the fulfillment of the Liquidation Trustee's duties under the Plan or the Liquidation Trust Agreement. Also, the Liquidation Trustee and any Person or Entity (including any attorney or other professional) employed by the Liquidation Trustee and acting on behalf of the Liquidation Trustee shall be entitled to indemnification out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being or having been employed by, the Liquidation Trustee, or for performing any function incidental to such service.

US_Active\116219861\V-9

## J.    Setoffs

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Reorganized Debtors, the GUC Distribution Trustee or the Liquidation Trustee, as applicable, pursuant to the Bankruptcy Code (including §§ 553 and 558), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest on account of any Proof of Claim or proof of Interest or other pleading Filed with respect thereto prior to the Confirmation Hearing and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any claims, rights, and Causes of Action of any nature that the Debtor's Estate may hold against the Holder of such Allowed Claim or Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtors, the GUC Distribution Trustee or the Liquidation Trustee, as applicable, of any such claims, rights, and Causes of Action that the Debtors' Estates may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right, or Cause of Action of the Debtor's Estate unless such Holder has timely Filed a Proof of Claim (including any Proof of Claim timely Filed by the Governmental Bar Date) with the Court expressly preserving such setoff; provided that nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtors', the Reorganized Debtors', the GUC Distribution Trustee's or the Liquidation Trustee's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Court prior to the Effective Date, or any such Holder's right to assert that there was no such requirement.

## K.    Revesting of Property in Debtors

Except as provided elsewhere in the Plan or in the Exchange Debt Documents, the Effective Date of the Plan revests the assets of the Estate in the Reorganized Debtors, free and clear of all Claims, liens, encumbrances, and Interests, except as expressly provided in the Plan. From and after the Effective Date, Reorganized Debtors may operate their business and use, acquire and dispose of property without supervision by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

## L.    Preservation of Restricted Funds for Charitable Purposes

Pursuant to § 1123(b) and all other applicable law and subject to consent of the Washington Attorney General, Reorganized Debtors shall be vested with and shall retain any and all restricted funds, if any, formerly held by Debtors. All such funds shall be held in charitable trust and may be used only for the restricted purposes permitted under applicable law. Debtors are not aware of any restricted funds.

- 64 -

19-01189-WLH11    Doc 2196    Filed 12/22/20    Entered 12/22/20 11:13:29    Pg 65 of 67

### M.    Modification of Plan

Subject to such notice as the Court may require, the Debtors may, with the prior written consent of the Lapis Parties and the Committee, or as otherwise approved by the Court, modify the Plan at any time before Confirmation, if circumstances develop that warrant modification or amendment to the Plan. For the avoidance of doubt, the Debtors will not modify any term of the Plan constituting the Committee Plan Settlement without the prior consent of the Committee

However, the Court may require a new disclosure statement and/or re-voting on the Plan if the Debtors materially modify the Plan before Confirmation. The Debtors may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated and (2) if the Court authorizes the proposed modifications after notice and a hearing.

### N.    Termination of the Patient Care Ombudsman

Upon the Effective Date, the responsibilities of the PCO will be terminated and she may dispose of any documents provided to her in the course of her reporting.

### O.    Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, Debtors (if the Effective Date has not occurred) or Reorganized Debtors (if it has) shall file a status report with the Court explaining what progress has been made toward Consummation of the confirmed Plan. The status report shall be served on the U.S. Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same Entities.

### P.    Quarterly Fees

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of Confirmation shall be paid to the U.S. Trustee on or before the Effective Date of the Plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after Confirmation shall be paid by the Liquidation Trust to the U.S. Trustee in accordance with 28 U.S.C. § 1930(a)(6) and the Liquidation Trust Agreement until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7. If the Liquidation Trust fails to timely pay the quarterly fees that come due after Confirmation, the Reorganized Debtors shall remain obligated to pay the fees and may seek indemnification from the Liquidation Trust.

### Q.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Cases under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders the Chapter 11 Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 Estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during these Chapter 11 Cases.

US_Active\116219861\V-9

The Confirmation Order may also be revoked under very limited circumstances. The Court may revoke the order if the Confirmation Order was procured by fraud and if the party in interest brings an adversary proceeding to revoke Confirmation within 180 days after the entry of the Confirmation Order.

### R. Final Decree

Once the Estates have been fully administered as referred to in Bankruptcy Rule 3022, Reorganized Debtors, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the Chapter 11 Cases.

Dated: December 22, 2020      DENTONS US LLP

By:    _/s/ Samuel R. Maizel_
        Samuel R. Maizel
        Sam J. Alberts
        Geoffrey M. Miller

        Counsel to the _Debtors and Debtors In Possession_

Dated: December 22, 2020      MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

By:    _/s/ William Kannel_
        William Kannel
        Ian A. Hammel

        Counsel to the _Lapis Parties_

- 66 -

US_Active\116219861\V-9